## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

UNITED STATES OF AMERICA,
*ex rel.* ROBERT V. SMITH,

      Plaintiff,

v.                                                                Case No. 3:20cv3678/MCR/EMT

JAY A. ODOM and OKALOOSA COUNTY,
BOARD OF COMMISSIONERS,

      Defendants.

_____/

### DEFENDANT JAY A. ODOM'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COMES NOW, Defendant Jay A. Odom ("Odom"), by and through counsel, and moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for dismissal of Relator's Complaint, ECF No. 1, with prejudice, and respectfully requests an award of attorneys' fees in favor of Odom. In support of this Motion, Odom states the following:

## I.    INTRODUCTION

Okaloosa County ("County") is the airport sponsor of Destin Executive Airport ("DTS"), a federally regulated airport. ECF No. 1, ¶¶ 2, 17. Like most federally regulated airports, annually, the County enters into an agreement with the Federal Aviation Administration ("FAA") to receive a grant for capital projects at

DTS.  The annual grant agreement contains a series of standard conditions known as "grant assurances," which pervasively regulate how the County can spend grant monies and how the County operates DTS.  Among these grant assurances is a commitment that the County will not grant an "exclusive right" to any airport user that provides aeronautical services to the public, known as a fixed base operator (FBO).[1]  ECF No. 1, ¶¶ 2-3, 17, 28.

Relator Robert Smith ("Relator") claims that Odom and the County (collectively, "Defendants") have violated this prohibition on exclusive rights and thereby have violated the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, ("FCA") and the Florida False Claims Act, Fla. Stat. §§ 68.081, *et seq.*, ("Florida FCA'").  As is required by the unique procedures mandated by the FCA, the Relator offered the United States the opportunity to prosecute this litigation.  When the United States declined to do so, Relator chose to proceed with this litigation on his own.

Relator's Complaint should be dismissed for five discrete reasons:

1.  The FCA's public disclosure bar prohibits these claims, because Relator relies solely on publicly disclosed information and is not an original source.

---

[1] An FBO is a business at an airport that provides all the essential services that are required by private aircraft operators, such as fuel, maintenance, servicing, and other ancillary services.  FBOs are highly regulated enterprises.

2.    The submissions to the United States were not false or material as a matter of law, and the United States knew or should have known of the facts underlying Relator's Complaint prior to approving the grants at issue.

3.    Relator failed to state a claim with particularity, including failing to state how the United States was misled by any alleged false claim or submission.

4.    Relator's Complaint is an impermissible shotgun pleading that fails to properly state which allegations of fact support each FCA claim against each Defendant.

5.    As to violation of the Florida FCA, neither Relator nor the United States has standing to bring the claim, without notice to or naming the State of Florida as the party in interest.

Each of these deficiencies is fatal to Relator's causes of action, and dismissal of all counts with prejudice is warranted.

## II.    ARGUMENT

### A.    DISMISSAL FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and raises "a right to relief above the speculative level." *Speaker v. U.S. Dep't. of Health & Human*

*Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2020). A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege sufficient facts to nudge his "claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleader's obligation to provide the grounds upon which the pleader is entitled to relief requires more than labels and conclusions, and a mere formulaic recitation of the elements is insufficient. *See id.*

## 1.    The FCA Public Disclosure Provision Bars These Claims

The "scheme" imagined by Relator – while not fraudulent in the first place – was well publicized at all relevant times. While the FCA imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for government payment or approval; or who knowingly makes, uses, or causes to be made a false record or statement material to a false or fraudulent claim, the statute prohibits FCA causes of action where the information is obtained through public disclosure.[2]   31 U.S.C. § 3729(a)(1)(A-B); *United States ex rel. McCullough v.*

---

[2] "The Florida False Claims Act mirrors the federal False Claims Act and is subject to the same pleading standard." *United States ex rel. Schultz v. Naples Heart Rhythm Specialists, P.A.,* No. 217CV237FTM29MRM, 2020 WL 2473456, at *3 (M.D. Fla.

*Colasante*, No. 1:10cv126/MCR/GRJ, 2014 WL 12873165, at *2 (N.D. Fla. Mar. 31, 2014); 31 U.S.C. § 3730(e)(4)(A).  "The purpose of the FCA is to encourage private citizens who are aware of fraud against the government to expose the fraud, while preventing opportunistic suits by individuals who hear of fraud publicly but play no part in exposing it."  *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).

A threshold question in *qui tam* actions is therefore whether the Court must dismiss the action pursuant to the public disclosure bar in 31 U.S.C. § 3730(e). The FCA provides:

(A) The court ***shall*** dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

  (i) in a Federal criminal, civil, or administrative hearing, in which the Government or its agent is a party;

  (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

  (iii) from the news media,

(B) unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

---

May 13, 2020).  The arguments for dismissal of the FCA claim apply equally to the Florida False Claims Act.   Therefore, Count II should be dismissed with prejudice for the same reasons that the federal claim should be dismissed.

31 U.S.C. § 3730(e)(4)(A) (emphasis supplied).  "Original source" under the statute "means an individual who either (1) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."  31 U.S.C. § 3730(e)(4)(B).

In applying the public disclosure bar, courts consider: (1) whether the allegations made by the relator have been publicly disclosed; (2) if so, whether the allegations in the complaint are substantially the same as allegations or transactions contained in the public disclosures; and (3) if yes, whether the relator is an original source of that information.  *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015).  "A relator bears the burden of proving that the public disclosure bar does not preclude his FCA action." *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016).  The Eleventh Circuit continues to recognize that § 3730(e)(4) "creates grounds for dismissal for failure to state a claim . . . [and] it instructs courts to dismiss an action when the public disclosure provision applies."  *Osheroff*, 776 F.3d at 810.

For purposes of Rule 12(b)(6) review in the FCA context, and particularly relevant to the public disclosure analysis, a district court may consider extrinsic

documents that are central to the plaintiff's claim and documents that are judicially noticed.[3]  *Osheroff., 776 F.3d at 811; see also Jacobs v. Bank of Am. Corp.,* No. 1:15-CV-24585-UU, 2017 WL 2361943, at *4 (S.D. Fla. Mar. 21, 2017), *on reconsideration*, No. 1:15-CV-24585-UU, 2017 WL 2361944 (S.D. Fla. Apr. 27, 2017) (noting that Rule 12(b)(6) review may take "judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1291 (M.D. Fla. 2018) (*Bernier I*) (stating, in FCA cases, "courts may take judicial notice of documents such as newspaper articles and information on publicly available websites").

### a.    Relator's Allegations Have Been Publicly Disclosed

The public disclosure bar requires dismissal of this case.  Because the Relator's allegations stem exclusively from publicly disclosed information, namely news media publications, emails, and information found on the Internet, Relator is left with a high burden to avoid dismissal.  The scope of "news media" in §3730(e)(4) has a broad sweep and includes information found on publicly available

---

[3]  Odom is filing a Request for Judicial Notice with Exhibits A through J, which consist of the publicly disclosed documents that form the basis of Relator's allegations, for the Court's consideration.  Those exhibits are identified herein as "Defs.' Ex.__."

websites.  *Osheroff,* 776 F.3d at 813.  Additionally, Freedom of Information Act ("FOIA") requests and materials obtained through discovery qualify as public disclosures under the FCA.  *United States ex rel. Brown v. BankUnited Tr. 2005-1*, 235 F. Supp. 3d 1343, 1359 (S.D. Fla. 2017); *see also Schindler Elevator Corp. v. United States ex rel. Kirk,* 563 U.S. 401, 411 (2011).

Here, the publicly available information referred to in the Complaint includes: newspaper articles; public emails; public documents from the Florida Secretary of State; publicly disclosed annual reports and financial statements; publicly available County agendas and grant applications; publicly available manuals, advisory opinions, and Q&As on the FAA website; and public records pursuant to Florida's public records laws.  *See* ECF No. 1, ¶¶ 25, 37-39, 52, 55-57, 59, 60-61, 67-69, 74, 77, 80, 83, 86.  Indeed, most of Relator's allegations against Defendants are derived from, and mirror, a March 2014 Northwest Florida Daily News article.  *See* Defs.' Ex. A, *Turbulence at Destin Airport: County looks at possible 'anti-trust violations,'* ("NWF News Article").

Additionally, the transactions that are the subject of the Complaint are described in public documents found in Okaloosa County's public records and newspaper articles.  *See* Defs.' Exs. A, G, I, J.  The County Agenda request, March 3, 2015, and accompanying amended lease agreements are available to the public through the Okaloosa County website at https://onbase.okaloosaclerk.com/.  *See*

Defs.' Ex. D. Notably, the publicly available First Amendment to Amended and Restated Lease Agreement for Fixed Base Operator, March 3, 2015, explicitly proscribes an exclusive right, stating: "[n]othing contained herein shall be construed as permission to conduct any commercial activity or venture exclusive of other operators."  *See* Defs.' Ex. H.

### b.  Relator's Allegations are Substantially the Same as the Public Disclosures

Relator fails to differentiate the Complaint's allegations from the information found in these public disclosures, which are substantially the same.  As stated by the Eleventh Circuit, this second prong of the test is a "quick trigger" to get to the more exacting original source inquiry.  *Osheroff*, 776 F.3d at 814.  The significant overlap between Relator's allegations and the public disclosures alone "is sufficient to show that the disclosed information . . . is substantially similar to the allegations in the complaint."  *Id.*; *see United States ex rel. Brown v. Walt Disney World Co.,* 361 F. App'x 66, 68 (11th Cir. 2010) ("Plaintiff relied on publicly disclosed information to support all of her allegations; thus, it follows that the disclosed information formed the basis of Plaintiff's complaint.").

Here, the allegations in Relator's Complaint rely on publicly disclosed information.  For example:

- Paragraph 46, Compl.: "Odom opened a second FBO, Destin Jet, in 2009."

9

- NWF News Article: "Destin Jet opened in 2009 and began competing with Miracle Strip Aviation."

- Paragraph 48, Compl.: "Regal Air's acquisition of Miracle [Strip Aviation], later operated as Regal Air Destin, combined with Odom's Destin Jet gave Odom an exclusive right . . . ."

  - NWF News Article: "Regal Capital bought out a struggling Miracle Strip Aviation in March of 2013 and opened Regal Jet."

- Paragraph 49, Compl.: "Sterling Diversified, LLC . . . became the owner of Regal Capital, and therefore controlled Regal Air."

  - NWF News Article: "Sterling Diversified LLC, a company managed by Odom and two partners, had bought out Regal Air."

- Paragraph 54, Compl.: "Okaloosa County gave Odom the approval to merge Destin Jet with Regal Air."

  - March 3, 2015 County Agenda Request: "County agrees to authorize Destin Jet and Regal Air to operate under common ownership."

- Paragraph 69, Compl.: "The 2013 annual report filed with the Florida Secretary of State for Sterling Diversified listed Jay Odom, Chester Kroeger and Timothy Edwards as managers and Jay Odom as the Registered Agent."

  - NWF News Article: "Jay Odom was listed as [Sterling Diversified, LLC's] registered agent and manager on 'articles of organization' filed with the Florida Division of Corporation. Chester Kroeger and Tim Edwards . . . are listed in the original documents as Odom's co-managers."

- Paragraph 77, Compl.: "Odom publicly admitted that he still holds a one-third ownership interest in Sterling Diversified."

- NWF News Article: "At the meeting Mr. Odom also informed the director and deputies, that as of Dec. 31, 2013, the Sterling Group LLC., of which he was a one-third equity partner, has acquired ownership of Regal Air Destin LLC."

- Paragraph 81, Compl.: "When Odom purchased Miracle Strip Aviation, which he later operated as Regal Air Destin[,] Odom had obtained an 'Exclusive Right' for FBO services. Odom's Destin Jet was the only other FBO at the airport."

- NWF News Article: "Harman said he is 'fairly confident if Destin Jet does the right things the case is compelling enough to point to a single fixed base operator' at the airport."

Clearly, the Complaint is based on publicly available information, which defeats any attempt to assert these FCA claims.

### c.  Relator is not an Original Source

Because the information contained in the Complaint has been previously disclosed to the public, Relator may only proceed with his cause of action if he is able to demonstrate that he is an original source of the information. A relator can meet the original source requirement in two possible ways: (1) disclosure to the government prior to public disclosure; or (2) disclosure to the government of knowledge that is independent of and materially adds to the publicly disclosed information prior to filing an FCA action. 31 U.S.C. § 3730(e)(4)(B). Neither exception to the public disclosure bar is established by this Complaint.

i.     **The Complaint Fails to Allege or Establish a Disclosure to the United States Prior to the Publicly Disclosed Information**

A relator may be an original source "by voluntarily disclosing information to the Government that forms the basis of an FCA claim *prior to* a public disclosure." *See Bernier I,* 311 F. Supp. 3d at 1297 (emphasis in original).  However, the original source exception to the public disclosure bar is inapplicable based on the face of the Complaint.   The Complaint merely makes a bare allegation that Relator "is an original source of the straw buyer scheme executed by Defendants" and then alleges that Relator provided, as he was required by statute to do, a written disclosure to the United States sometime prior to filing the *qui tam* action, which would have been approximately February 2020.  ECF No. 1, ¶ 15; 31 U.S.C § 3730(b)(2).  Yet, the public disclosures acknowledged in the Complaint date back and run from 2012 through 2019.  ECF No. 1, ¶¶ 12, 47-52, 55-59, 67-69, 74, 77, 80, 83, 86-87, 91, 93. There is no indication from or allegation in the Complaint that Relator provided information to the United States prior to the public disclosures spanning at least eight years.

ii.     **The Complaint Fails to Allege or Establish Disclosure of Independent Knowledge that Materially Adds to Publicly Disclosed Information**

A relator may still qualify as an original source where the relator possesses "knowledge that is independent of and materially adds to the publicly disclosed

12

allegations or transactions."   31 U.S.C. § 3730(e)(4)(B).   However, Relator's Complaint does nothing to show that Relator possesses this requisite independent and material knowledge.

"'To establish original source status knowledge, a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof.'" *Brown,* 235 F. Supp. 3d at 1358 (quoting *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)). "Secondhand information, speculation, background information, or collateral research do not satisfy a relator's burden of establishing the requisite knowledge." *Id.*

"[B]ackground information that helps one understand or contextualize a public disclosure is insufficient to grant original source status." *Osheroff,* 776 F.3d at 815; *see also United States ex rel. Saldivar v. Fresenius Med. Care Holdings*, 841 F.3d 927, 936 (11th Cir. 2016) ("The phrase 'direct and independent' is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an 'original source.'").   Furthermore, knowledge based on research into or review of public records or materials, or some combination thereof, such as the research and review that Relator has apparently engaged in to bring these

baseless claims, does not suffice. *Brown,* 235 F. Supp. 3d at 1359; *see also United States ex rel. Lewis v. Walker*, 438 Fed. App'x 885, 888 (11th Cir. 2011) (holding relator was not original source where compilation of information relator used to reconstruct grant application was publicly available to anyone).

Relator does not present a single, concrete allegation, let alone competent alleged evidence, indicating his information is direct and independent of the public information. Even a generous review of the Complaint shows that Relator's information is nothing more than a generic summary of publicly disclosed background information over the prior eight years cobbled together in an attempt to infer a violation. Relator's attempt to describe alleged "independent knowledge" relies entirely on a vague reference to "prior business dealings" with Odom. ECF No. 1, ¶ 15. Tellingly, because Relator has no direct and independent knowledge of the airport transactions or the grant application process, he then tenuously concludes that he obtained such knowledge based on his "unique familiarity" with Defendants. *Id*. These allegations do not meet the specificity requirements mandated by the FCA. None of the allegations in Relator's Complaint pertaining to Defendants contain specific facts as to how or when he obtained any direct or independent knowledge of the allegedly fraudulent acts. In fact, Relator's past business relationship with

Odom ended in 2009 and had nothing to do with any Okaloosa County Airport or the County.[4]

In short, "Relator's Complaint is littered with public disclosures and publicly available information," and such information available to anyone does not qualify Relator as an original source. *Brown,* 235 F. Supp. 3d at 1359. The purpose of the public disclosure bar is "'to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits.'" *Schindler Elevator Corp.*, 563 U.S. 401 at 413 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010)). Relator's Complaint is the latter.

The public disclosure bar warrants dismissal of the Complaint with prejudice.

## 2.   The Complaint Fails to State a Claim Under the FCA as a Matter of Law

On its face, Relator's Complaint does not allege a violation of the FCA. The Supreme Court made clear that "[the] False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs. v. United States ex rel. Escobar*,

---

[4] While Relator claims a "unique familiarity" with Odom, Relator deliberately fails to disclose that he had no involvement of any kind with Odom related to DTS, any FBO, or the County. Relator, individually, has initiated two lawsuits against Odom stemming from their prior business relationship in an unrelated real estate development, one of which is still pending. Odom respectfully requests the Court take judicial notice of *Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069 pending in the First Judicial Circuit in and for Okaloosa County, Florida.

136 S. Ct. 1989, 2003 (2016).  Nor does it permit harassing or frivolous litigation. Though Relator attempts in a meandering 32-page Complaint to bootstrap his grievances against Defendants into an actionable claim, he fails to properly state a claim under the FCA.

While not entirely clear, the Complaint appears to tie Count I to subsection (A) of § 3729(a)(1), and possibly subsection (B), of the FCA.  ECF No. 1, ¶¶ 96, 97. To state a claim under § 3729(a)(1)(A), "a plaintiff must plausibly allege that a defendant: (1) presented a false claim; (2) with knowledge that the claim was false; and (3) that the false claim was material to the Government's decision to pay the claim."  *Jacobs*, 2016 WL 11653744, at *5. "Under subsection (B) of the False Claims Act, a plaintiff must allege that: (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the false record or statement was 'material to a false or fraudulent claim.'"  *Id.* at *7 (quoting 31 U.S.C. § 3729(a)(1)(B)).  Nevertheless, under either prong, a requisite element is that the defendant "knowingly" took action. Because the Complaint fails to allege an actual violation of federal regulations, the Complaint does not meet the required standard for materiality with respect to the false claims, and it does not sufficiently allege that Defendants knew their conduct was false or fraudulent, particularly given that the government had knowledge of the underlying facts.  The Complaint should therefore be dismissed.

16

### a.    The Complaint Fails to Allege That the County  was Not in Compliance with Nonexclusivity Regulations

Relator's Complaint relies on baseless and conclusory allegations pertaining to the lawful acquisition of an FBO as an alleged violation of FAA nonexclusivity regulations.  These allegations are premised on a misunderstanding of the meaning of, and an improper application of, an "exclusive right" in federal regulations.

A violation of the prohibition on "exclusive rights" at an airport "is the denial by the airport or sponsor to afford other qualified parties an opportunity to be an on-airport service provider."  Defs.' Ex. B, FAA, Order 5190.6B, *Airport Compliance Manual*, ¶ 8.9(b) (Sept. 30, 2009).  "The fact that a single business or enterprise may provide most or all of the on-airport aeronautical services is not, in itself, evidence of an exclusive rights violation."  *Id*.  "A single enterprise may expand as needed, even if its growth ultimately results in the occupancy of all available space."  *Id.* at ¶ 8.9(d).  An exclusive rights violation may occur when an airport sponsor takes action that "*unreasonably excludes a qualified applicant* from engaging in an on-airport aeronautical activity without just cause or fails to provide an opportunity for qualified applicants to be an aeronautical service provider."  *Id*. (emphasis added).

The existence of a single FBO is not in itself a violation of the exclusive rights prohibition.  The *Airport Compliance Manual* explicitly confirms this: "Where a sponsor has not entered into an express agreement, commitment, understanding, or an apparent intent to exclude other reasonably qualified enterprises, *the FAA does*

*not consider the presence of only one provider engaged in an aeronautical activity as a violation or the exclusive rights prohibition*." *Id.* at ¶ 8.2 (emphasis added).

The allegations in the Complaint do not, as a matter of law, allege a violation of nonexclusivity regulations. Though Relator alleges his erroneous belief as to the law surrounding exclusive rights, ECF No. 1, ¶¶ 30-32, the Complaint is devoid of any allegations establishing a violation of the regulations—including that (a) another qualified applicant sought to engage in on-airport aeronautical activity; (b) the County took separate actions to exclude any other applicant; or (c) any such actions as to any other applicants were unreasonable. The County's approval of the FBO and lease, as alleged in the Complaint, is not a violation so long as the County did not take future action to prevent competition. Nothing in Relator's Complaint alleges that the County prevented another competitor from establishing an FBO. Similarly, Odom's alleged actions to consolidate the FBOs at DTS cannot be said to have caused the County to submit a false certification of compliance where noncompliance did not occur. Thus, based on Relator's allegations, there was no violation of nonexclusivity regulations to form the basis for any allegedly false statements or claims.

Relator fails to allege any facts to plausibly show how any grant applications claiming that the County was in compliance with federal and state laws constitute a false claim. Relator does not, and cannot, present such allegations because the

County has not submitted false statements or claims to the United States, nor has the United States approved its grant applications based on any false or misleading statements.

### b.   Any Alleged Representation was not Material to a Government Payment Decision by the United States

"A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the government's payment decision in order to be actionable under the False Claims Act." *Escobar,* 136 S. Ct. at 2002. The standard for showing materiality is demanding, and "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id*. (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)).  Key to the present case, the Supreme Court held, "if the Government regularly pays a particular type of claim in full *despite actual knowledge that certain requirements were violated*, and has signaled no change in position, that is strong evidence that the [statutory or regulatory compliance] requirements are not material."  *Id.* at 2003-04 (emphasis added).  An alleged representation to the government cannot be material under the FCA, where the government was not only aware of, but approved, such action.

Here, the allegations in the Complaint establish that, since at least 2013, the government regularly approved the County's grant applications with knowledge of the alleged exclusive right issue alleged in the Complaint.  ECF No. 1, ¶ 52, 93.

19

Thus, even if the Defendants' representations were inaccurate as to DTS grants, which they were not, the County's certifications regarding nonexclusive rights were immaterial to the award of grant funds because of the government's continued payment of funds with knowledge of any such issue.

The Complaint fails to provide sufficient and specific detail as to how Odom caused the County to present a false claim that was material to the government's payment of the grant funds. The Complaint and the public records demonstrate Defendants' transparency with respect to the acquisition and merger of the two FBOs. Indeed, the Complaint admits that the FAA was fully aware an "exclusive right" issue *could arise in the future* but continued to bestow grants even with this knowledge. ECF No. 1, ¶¶ 6, 52; *see also* Defs.' Exs. E, F. The government cannot be defrauded by that about which the government is fully aware. *See United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.,* No. 8:06-CV-40-T-33MAP, 2009 WL 1148632, at \*5 (M.D. Fla. Apr. 28, 2009) (noting that action may constitute vexatious and harassing litigation "where the government's undisputed prior knowledge of information alleged to constitute fraud defeated any inference of a false claim").

                **c.**     **Relator Has Not Pled Sufficient Allegations Showing That Defendants Acted Knowingly, Particularly Where the United States Had Knowledge of the Conduct Alleged in the Complaint**

While evidence of specific intent to defraud is not required, "[with] regard to scienter, a relator must show that the defendant acted 'knowingly,' which the FCA defines as either 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard.'" *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) (quoting 31 U.S.C. § 3729(b)).  Where a relator alleges a defendant has falsely certified compliance with a government regulation, the court must "determine whether the defendant actually knew or should have known that its conduct violated a regulation in light of any ambiguity at the time of the alleged violation." *Id*. at 857 F.3d 1148, 1155.  "Liability attaches to only those who act in gross negligence— those who fail to make such inquiry as would be reasonable and prudent to conduct under the circumstances." *Id*.

Further, government knowledge may negate scienter in addition to materiality, requiring a relator's claim to be dismissed.  *United States ex rel. Hunt v. Chochise Consultancy, Inc.*, 887 F.3d 1081, 1092 n. 10 (11th Cir. 2018).  To the same extent that government knowledge may disprove materiality because "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material . . . [e]vidence that the government knew the relevant facts at the time that the defendant submitted its claim may also show that the defendant understood its conduct to be lawful." *Id*. (internal quotation and citation omitted).

21

Relator's Complaint does not meet any of the burdens imposed above. Relator alleges that Defendants submitted or caused to be submitted purported false certifications that the County had complied with its grant assurances. ECF No. 1, ¶¶ 96-97. However, Relator's own allegations, as well as public documents, show that the County was in communication with and sought an opinion from the FAA – the agency tasked with interpreting and enforcing the relevant federal regulations with which the County was certifying compliance – during all times Relator alleges fraudulent conduct was occurring. *See* ECF No. 1, ¶¶ 6, 52. Neither actual knowledge nor deliberate knowledge can be attributed to Defendants under these circumstances. Further, the "reckless disregard" scienter was intended to capture the "ostrich type situation," where a defendant has "buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted." *Phalp*, 857 F.3d at 1155 (internal quotations omitted). Clearly, no such situation exists here, where the Complaint shows that active steps were taken by Defendants to ensure that the County's certifications to the FAA would be considered lawful.

The Complaint also establishes that the FAA continued to award federal grants to the County "with full knowledge of [Relator's] claims" about the alleged exclusivity issue. *United States ex rel. Harman v. Trinity Indus.,* 872 F.3d 645, 668 (5th Cir. 2017); ECF No. 1, ¶¶ 52, 93. Relator points to a County Agenda Request

from March 3, 2015, which states that "concerns regarding compliance with the grant assurances . . . were all raised to the FAA, however in each instance the FAA determined that this is a lease administration issue and that the acquisition of an FBO provider – a prevalent practice, does not in itself constitute as a violation of grant assurances."  ECF No. 1, ¶ 57; *see also* Defs.' Ex. D.

This level of interaction with the FAA regarding the conduct at issue, which is pled in the Complaint, eliminates the possibility of FCA liability on the part of Defendants.  *See Harman,* 872 F.3d at 668 (noting record "[left] no question about 'what the government knew and when'" but instead demonstrated that the government continued to make payments despite full knowledge of the relator's allegations).  Because the FAA knew or should have known of the underlying facts alleged in the Complaint, and Defendants knew that the FAA knew, Relator has not pled materiality or scienter.

### 3.   The Complaint Fails to Plead Fraud with Sufficient Particularity

Relator's Complaint also fails to satisfy the well-established heightened pleading requirements imposed when a plaintiff alleges fraud.  "When a claim arises under the FCA, 'Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b).'"  *United States ex rel. Bernier v. Infilaw Corp.,* 347 F. Supp. 3d 1075, 1084 (M.D. Fla. 2018) (*Bernier II*) (quoting *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015)).  "Rule 9(b) imposes a

heightened pleading standard for allegations of fraud, requiring a party to 'state with particularity the circumstances constituting fraud or mistake.'"   *Id.* at 1084-85 (quoting Fed. R. Civ. P. 9(b)).   This heightened pleading standard prevents speculative suits against innocent actors, by requiring allegations of fraud to "'include facts as to time, place, and substance of the defendant's alleged fraud.'" *United States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 566-67 (11the Cir. 1994)).

A complaint under the FCA satisfies Rule 9(b) if it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made,
>
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same,
>
> (3) the content of such statements and the manner in which they misled the plaintiff, and
>
> (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Boros v. Health Mgmt. Assocs., Inc.,* No. 4:10-CV-10013-KMM, 2012 WL 5304172, at *1–2 (S.D. Fla. Oct. 25, 2012). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables [him] to learn the complaint's bare essentials through discovery and may needlessly harm a

defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." *Clausen,* 290 F.3d at 1313 n.24.

Though the 109-paragraph Complaint attempts to plead an alleged scheme, it does so only in the broadest terms and is completely devoid of the specific people, places, dates, content, and manner required for an FCA claim. *See United States v. Health First, Inc.,* No. 6:14-cv-501-Orl-37DAB, 2016 WL 3959343, at *4 (M.D. Fla. July 22, 2016), *as amended* (July 27, 2016) (dismissing complaint for failure to adequately plead fraud). Rather than providing specifics about the alleged scheme and how exactly it constituted fraud, Relator makes conclusory (and incorrect) allegations about the law surrounding exclusive rights at the airport and how the FAA should have reacted to its knowledge of the facts (rather than how it did). ECF No. 1, ¶¶ 30-39. Once these "[mere] legal conclusions" are disregarded, as is required at this stage, the Complaint is without well-pleaded factual allegations to give rise to a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

Notably, Relator failed to make any allegations as to *how* the United States, through the FAA, was misled by the alleged claims. A proper FCA complaint must describe with particularity the "who, what, where, when, and how" of the alleged fraudulent scheme. *United States ex rel. Paul v. Biotronik, Inc.*, No. 8:18-cv-396-T-36JSS, 2020 WL 191146, at *5 (M.D. Fla. Apr. 20, 2020). Here, as alleged by

Relator, the FAA was well-aware of the circumstances underlying Relator's grievances. ECF No. 1, ¶¶ 52, 57. It is impossible for a County submission, that it was in compliance with its grant assurances, to be misleading, when the FAA had earlier been apprised of the County's concerns that the circumstances surrounding the FBOs may or may not have given rise to potential violations of those grant assurances. Relator fails to draw a connection between the conduct by Defendants with which he takes issue and how any claims the County submitted were false or fraudulent.

## B.     Relator's Complaint Should be Dismissed as an Impermissible Shotgun Pleading

The Complaint also is an impermissible shotgun pleading that "is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-22 (11th Cir. 2015). Relator incorporates by reference into Counts I and II, 93 separate paragraphs haphazardly strewn together to form a vague and imaginary scheme. Many of the paragraphs are lengthy, convoluted, and contain multiple circumstances in violation of the Federal Rules of

Civil Procedure.  *See* Fed. R. Civ. P. 10(b).  Dismissal of such pleadings is appropriate.

The Complaint lumps together two distinct claims in a single count.  "The elements that a plaintiff must allege under each subsection [of 31 U.S.C. § 3729(a)] differ."  *United States ex rel. Westlund v. Lab. Corp. of Am. Holdings,* No. 8:10-cv-2882-T-23TGW, 2011 WL 6846748, at *1 (M.D. Fla. Dec. 29, 2011).  Here, Relator sets forth allegations under subsections (A) and (B) of § 3729(a)(1) against Defendants without specifying which alleged act or defendant violated which subsection.  ECF No. 1, ¶¶ 96, 97.  Instead, in a single count, Relator unintelligibly claims "[b]y virtue of the acts described above" both named defendants violated two separate subsections of § 3729.  *Id.*  Relator's shotgun pleading makes it impossible for Defendants to know which allegations of fact purportedly support each alleged FCA violation.

Further, solely to harass Odom with spurious allegations, the Complaint is replete with conclusory, immaterial, and inflammatory jargon unrelated to any cause of action against Odom under the FCA.  *See, e.g.*, ECF No. 1, ¶ 46 n.2.  Indeed, much of the Complaint involves neither Odom nor the Airport at issue.  *See, e.g.,* ECF No. 1, ¶¶ 66-79 (related to Ward, Kroeger, Edwards, Simmons, and Chestnut Hill Tree Farm, LLC).  Those irrelevant allegations demonstrate Relator's true objective to coerce a settlement in an unrelated lawsuit with Odom.

The Court should dismiss the Complaint as an impermissible shotgun pleading. *See Lawrie v. The Ginn Cos., LLC*, No. 3:09-cv-446-J-32JBT, 2010 WL 3746725, at *3 n.12 (M.D. Fla. Sept. 21, 2010) (dismissing complaint as shotgun pleading).

## C.    COUNT II – FLORIDA FCA CLAIM – SHOULD BE DISMISSED FOR LACK OF JURISDICTION

A motion to dismiss for lack of standing may be brought under Rule 12(b)(1), because standing is a threshold jurisdictional determination. *See Jallali,* 2015 WL 10687577, at *10. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may present either a facial or factual challenge to the complaint. *Blessey v. Walton Cnty.*, No. 3:18cv1415/MCR/CJK, 2018 WL 4291735, at *2 (N.D. Fla. Sept. 7, 2018). In a facial challenge, a court "construes the allegations of the complaint as true and considers only whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id*. A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the court may consider matters outside the pleadings. *See Brown*, 235 F. Supp. 3d at 1359. "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI Inc. v. United States,* 285 F.3d 947, 951 (11th Cir. 2002).

There is no common-law right to bring a *qui tam* action. Thus, a relator must allege standing under a *qui tam* statute. *See Stalley v. Orlando Reg'l Healthcare*

*Sys., Inc.,* 524 F.3d 1229, 1233-34 (11th Cir. 2008).  As to the Florida FCA claim, both factually and on its face, Relator and the United States lack the requisite standing.  Thus, dismissal for lack of subject matter jurisdiction over Count II, the Florida FCA claim, is appropriate.

Dismissal of Count II is necessary because: (1) the Complaint fails to name the State of Florida as the true party in interest; and (2) the Complaint fails to certify that the Attorney General of the State of Florida was served with a copy of the Complaint and written disclosure of the material evidence and information Relator alleges to possess.  Relator's failures deprive this Court of jurisdiction over Count II, and dismissal is proper.  *See Stalley,* 524 F.3d at 1234-35 (dismissing complaint for lack of subject matter jurisdiction where relator lacked standing).

### 1.    The Complaint Fails to Name the State of Florida as a Party

"The Florida False Claims Act authorizes a private person or the State to initiate a civil action against a person or company who knowingly presents a false claim to the State for payment."  *Barati v. State*, 198 So. 3d 69, 72 (Fla. 1st DCA 2016).  All civil actions under the Florida FCA, whether brought by a private person or the State itself, "shall be brought in the name of the State of Florida."  *See* Fla. Stat. § 68.083(2).  Relator, individually, has not and cannot allege an injury in fact to establish standing for a Florida FCA claim.  "An interest unrelated to injury in fact is insufficient to give a plaintiff standing."  *Vt. Agency of Natural Res. v. United*

*States ex rel. Stevens*, 529 U.S. 765, 772 (2000); *see also United States ex rel. Bibby v. Mortg. Inv'rs Corp.,* 985 F.3d 825, No. 19-12736, 2021 WL 137739, at *10 (11th Cir. Jan. 15, 2021) (noting that "relator does not have standing to pursue a *qui tam* action based on his *own* injury in fact"). Federal courts "have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government, if the action arises from the same transaction or occurrence as an action brought under section 3730." 31 U.S.C. § 3732(b). However, the State government must be named as a co-plaintiff with the United States. 31 U.S.C. § 3732(c).

"Under the Florida FCA, the Attorney General is the real party in interest." *Barati*, 198 So. 3d at 81. "[T]he relator is and always remains an assignee of the State's substantive right to prosecute a *qui tam* action." *Id.* Indeed, the action must be brought on behalf of the State itself, not on behalf of the federal government. *See id.* at 84 ("Conducting and terminating legal actions brought in the name of and for the benefit of the State is the *sine qua non* of the State's chief legal officer."); *United States ex rel. Koch v. Gulf Region Radiation Oncology Centers, Inc.,* No. 3:12CV504/RV-CJK, 2013 WL 12328938, at *2 (N.D. Fla. Jan. 30, 2013) (noting that United States, as intervenor, pursued its federal FCA claim while the relator pursued case on behalf of the State of Florida, which explicitly declined to intervene).

Here, there is no indication that the State of Florida is even aware of this action, much less that the action is filed on behalf of the State. The Complaint is brought solely in the name of the United States. While the Complaint alleges that Relator brings the claims on behalf of the United States as a party, there are no similar allegations as to the State. Nothing in the FCA or Florida FCA allows the United States to bring a claim or otherwise proceed with a *qui tam* action in the name of a State. *See United States ex rel. Stop Illinois Marketing Fraud, LLC, v. Addus Homecare Corp.,* No. 13 C 9059, 2018 WL 1411124, at *7 (N.D. Ill. Mar. 21, 2018) ("The notice and opportunity that Relator afforded the federal government does not absolve Relator of its duties to the State of Illinois"). Indeed, paragraphs 102 through 109 of Count II can only be interpreted as brought by the Relator on behalf of the United States alone. As such, Count II must be dismissed.

### 2. The Complaint Fails to Certify Disclosure of Material Evidence to the State.

The Florida FCA requires that the complaint "and written disclosure of substantially all material evidence and information the person possesses shall be served on the Attorney General." *See* Fla. Stat. § 68.083(3). The Attorney General then has 60 days to elect to intervene and proceed with the action on behalf of Florida. *Id.* This requirement amounts to a jurisdictional prerequisite to filing a FCA claim. *See, e.g., United States ex rel. Anderson v. ITT Indus. Corp.,* No. 1:05CV720, 2006 WL 4117030, at *3 (E.D. Va. 2006) (dismissing complaint

"because Plaintiff's failures to comply with the jurisdictional service and filing requirements of the FCA frustrated the congressional goals underlying those provisions, and the failures cannot be cured or remedied").  The same reasoning as to the federal government should necessarily apply to the failure to afford the State with statutorily required disclosure.

Here, the absence of certification with this statutory requirement amounts to a concession that Relator has not followed the procedure in Fla. Stat. § 68.083. The Complaint references only providing the federal government with evidence and information in accordance with 31 U.S.C. § 3730(b)(2).  ECF No. 1, ¶ 15.  Thus, Relator knew of the obligation to provide this information to the federal government and must have known of the same obligation under the Florida FCA.  The failure to comply with the Florida FCA's requirements warrants dismissal of Count II.

## III.    COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Dismissal of the Complaint with prejudice is proper because there is no realistic prospect that amendment will cure the deficiencies contained therein. "Although a district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), it may deny leave, *sua sponte* or on motion, if amendment would be futile." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).  Leave to amend would be futile if an amended complaint would still fail on a motion to dismiss.  *See id.*  Here, the underlying facts of this

case cannot support any claim for relief against Defendants, such that dismissal with prejudice is proper. *See e.g. United States ex rel. Smith v. N.Y. Presbyterian Hosp.,* No. 06 CIV 4056 NRB, 2007 WL 2142312, at *7 (S.D.N.Y. July 18, 2007) (dismissing FCA fraud claim with prejudice).

## IV.   THE COURT SHOULD AWARD ATTORNEYS' FEES

Under 31 U.S.C. § 3730, a prevailing defendant is entitled to attorneys' fees where a relator's claim is "clearly frivolous, clearly vexatious, [and] brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4); *see United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 356–57 (4th Cir. 2009) (finding relator had no reasonable chance of success and awarding $68,228.75 in attorneys' fees to defendant); *United States ex rel. Bain v. Georgia Gulf Corp.,* 208 F. App'x 280, 283–84 (5th Cir. 2006) (affirming $65,000 award of attorney fees where relator failed to comply with FCA requirements, failed to establish original source, and failed to plead with particularity); *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.,* No. 12CV275 DLC, 2015 WL 1726474, at *1, 4 (S.D.N.Y. Apr. 15, 2015) (granting $168,967.61 in attorneys' fees for frivolous FCA claims).

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant respectfully requests the Court dismiss Relator's Complaint, with prejudice, and for such other relief as the Court may deem appropriate.

Dated: February 12, 2021.

Respectfully Submitted,
*Counsel for Jay A. Odom*

<u>*A. Benjamin Gordon*</u>
**A. Benjamin Gordon, III**
Florida Bar No. 528617
AnchorsGordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, Florida 32547
Phone: (850) 863-1974
Fax: (850) 863-1591
Email:   bgordon@anchorsgordon.com
         cyndi@anchorsgordon.com

and

<u>*By: /s/ Nathaniel Hunt*</u>
Peter J. Kirsch
Nathaniel Hunt
Sarah Wilbanks
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 Facsimile
pkirsch@kaplankirsch.com
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
*Co-counsel for Defendant Jay Odom*
*Appearing Pro Hac Vice*

## **LOCAL RULE 7.1(F) CERTIFICATION**

Pursuant to Local Rule 7.1(F), the instant Memorandum contains 7,819 words.

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a that a true and correct copy of the foregoing has been electronically filed on the CM/ECF system for the Northern District of Florida, which will send notification of such filing to the following attorneys of record: Michael Schofield and Amelia Beard, Clark Partington, 125 East Intendencia Street, Pensacola, Florida 32591-3010, and Elizabeth Billhimer, Clark Partington, 4100 Legendary Drive, Suite 200, Destin, Florida 32541, attorneys for Relator; and to Lynn Hoshihara, Nabors Giblin & Nickerson, P.A., 1500 Mahan Drive, Suite 200, Tallahassee, Florida 32308, attorneys for Okaloosa County, and to David M. Sobotkin, U.S. Department of Justice, Commercial Litigation Branch, 175 N. Street, NE, Washington, DC 20002, attorney for the United States of America,  this 12th day of February, 2021.

*A. Benjamin Gordon*
**A. Benjamin Gordon, III**
Florida Bar No. 528617
AnchorsGordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, Florida 32547
Phone: (850) 863-1974
Fax: (850) 863-1591
Email:        bgordon@anchorsgordon.com
              cyndi@anchorsgordon.com

and

*By: /s/ Nathaniel Hunt*
Peter J. Kirsch
Nathaniel Hunt
Sarah Wilbanks
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 Facsimile
pkirsch@kaplankirsch.com
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
*Co-counsel for Defendant Jay Odom*
