**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

UNITED STATES OF AMERICA,
*ex rel.* ROBERT V. SMITH,

      Plaintiff,

v.                                                    Case No. 3:20cv3678/MCR/EMT

JAY A. ODOM and OKALOOSA COUNTY,
BOARD OF COMMISSIONERS,

      Defendants.
_____/

## <u>DEFENDANT JAY A. ODOM'S MEMORANDUM IN SUPPORT OF</u> <u>MOTION TO DISMISS</u>

COMES NOW, Defendant Jay A. Odom ("Odom"), by and through counsel, and moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for dismissal of Relator's Amended Complaint, ECF No. 33, with prejudice, and respectfully requests an award of attorneys' fees in favor of Odom. In support of this Motion, Odom states the following:

## I.     INTRODUCTION

This is Relator Robert V. Smith's second attempt to bring a False Claims Act cause of action against Odom.  Relator filed his first Complaint under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, ("Federal FCA") and the Florida False

Claims Act, Fla. Stat. §§ 68.081, *et seq.*, ("Florida FCA") (collectively "FCA")[1] on February 26, 2020. In response, Odom filed a Motion to Dismiss the Complaint outlining numerous grounds as to why Relator's claims failed. Rather than proceed with the first facially defective Complaint, Relator filed this Amended Complaint filled with many of the same irrelevant, conclusory statements that fail to correct the defects in his first Complaint.

Defendant Okaloosa County ("County") is the airport sponsor of Destin Executive Airport ("DTS"), a federally obligated airport. ECF No. 33, ¶¶ 2, 17. Like most federally obligated airports, annually, the County enters into an agreement with the Federal Aviation Administration ("FAA") to receive a grant for capital projects at DTS. The annual grant agreement contains a series of standard conditions known as "grant assurances," which comprehensively regulate how the County operates DTS. Among these grant assurances is a commitment that the County will not grant an "exclusive right" to any airport user that provides aeronautical services to the public, known as a fixed base operator (FBO).[2] ECF No. 33, ¶¶ 2-3, 17, 28.

---

[1] Because "the Florida FCA mirrors the federal FCA," Odom will refer to them collectively as the "FCA" unless otherwise noted. *See United States ex rel. Pepio v. Prometheus Lab'ys, Inc.,* No. 8:18-CV-2931-T-33AAS, 2020 WL 6203527, at *8 (M.D. Fla. Oct. 22, 2020).

[2] An FBO is a business at an airport that provides all the essential services required by private aircraft operators, such as fuel, maintenance, servicing, and other ancillary services. FBOs are highly regulated enterprises.

The grant assurance prohibition on exclusive rights echoes similar language in federal law. 49 U.S.C. § 40103(e).   Further, the Florida Department of Transportation ("FDOT") Aviation Office has developed an Aviation Grant Program that provides state financial assistance to Florida's airports, also requiring certain grant assurances.  *See* Section 322, *et seq.*, Florida Statutes.

In his Amended Complaint, Relator claims that Odom and the County violated the prohibition on granting an exclusive right, thereby violating the FCA.  Under the unique procedures mandated by the FCA, Relator offered the United States and the State of Florida (collectively "Government") the opportunity to prosecute this litigation.  When both declined to do so, Relator chose to proceed with this litigation on his own.

Relator's Amended Complaint should be dismissed for five reasons:

1.   The FCA's public disclosure bar prohibits these claims because Relator relies on publicly disclosed information and is not an original source.

2.   The submissions to the Government were not false or material as a matter of law, and the Government knew or should have known of the facts underlying Relator's Amended Complaint prior to approving the grants.

3.      Relator failed to state a claim with particularity, including failing to state how the Government was misled by any alleged false claim or submission.

4.      Relator's claims, which are premised on events prior to February 24, 2014, are barred by the statute of limitations.

5.      Relator's Florida FCA claim is barred by the public disclosure provision for the separate reason that Relator failed to disclose the information to the State of Florida *prior* to its public disclosure in the original Complaint.

Each of these deficiencies is fatal to Relator's causes of action, and dismissal of all counts against Defendant Odom with prejudice is warranted.

## II.     ARGUMENT

### A.     DISMISSAL FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and raises "a right to relief above the speculative level." *Speaker v. U.S. Dep't. of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2020). A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plaintiff must allege sufficient facts to nudge

his "claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Further, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleader's obligation to provide the grounds upon which the pleader is entitled to relief requires more than labels and conclusions, and a mere formulaic recitation of the elements is insufficient.  *See id*.

### 1.    The FCA's Public Disclosure Provision Bars These Claims

The alleged "scheme" imagined by Relator – while not fraudulent in the first place – was well publicized at all relevant times and years before this action was filed.  Relator's attempts in the Amended Complaint to create the illusion that Relator has "unique and independent knowledge" fails to overcome the public disclosure bar.  The FCA prohibits causes of action where the information is obtained through public disclosure.[3]  31 U.S.C. § 3729(a)(1)(A-B); *United States ex rel. McCullough v. Colasante*, No. 1:10cv126/MCR/GRJ, 2014 WL 12873165, at *2 (N.D. Fla. Mar. 31, 2014); 31 U.S.C. § 3730(e)(4)(A).  "The purpose of the FCA

---

[3] In line with the federal statute, the Florida FCA prohibits *qui tam* suits based on publicly disclosed information. Fla. Stat. § 68.087(3).  The arguments for dismissal of the FCA claim apply equally to the Florida FCA.  *See United States ex rel. Schultz v. Naples Heart Rhythm Specialists, P.A.,* No. 217CV237FTM29MRM, 2020 WL 2473456, at *3 (M.D. Fla. May 13, 2020).  Therefore, Counts IV and V, under the Florida FCA, should be dismissed with prejudice for the same reasons as the federal claims.

is to encourage private citizens who are aware of fraud against the government to expose the fraud, while preventing opportunistic suits by individuals who hear of fraud publicly but play no part in exposing it." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).

A threshold question in *qui tam* actions is whether the Court must dismiss the action pursuant to the public disclosure bar in 31 U.S.C. § 3730(e). The FCA provides:

> (A)   The court **shall** dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> * * *
>
> (iii)   from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (emphasis supplied).  "Original source" under the statute "means an individual who either (1) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."  31 U.S.C. § 3730(e)(4)(B).

In applying the public disclosure bar, courts consider: (1) whether the allegations made by the relator have been publicly disclosed; (2) if so, whether the allegations in the complaint are substantially the same as allegations or transactions contained in the public disclosures; and (3) if yes, whether the relator is an original source of that information. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015). "A relator bears the burden of proving that the public disclosure bar does not preclude his FCA action." *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016). The Eleventh Circuit continues to recognize that § 3730(e)(4) "creates grounds for dismissal for failure to state a claim . . . [and] it instructs courts to dismiss an action when the public disclosure provision applies." *Osheroff*, 776 F.3d at 810.

For purposes of Rule 12(b)(6) review in the FCA context, and particularly relevant to the public disclosure analysis, a district court may consider extrinsic documents that are central to the Relator's claim and documents that are judicially noticed.[4] *Osheroff,* 776 F.3d at 811; *see also Jacobs v. Bank of Am. Corp.,* No. 1:15-CV-24585-UU, 2017 WL 2361943, at *4 (S.D. Fla. Mar. 21, 2017), *on reconsideration*, No. 1:15-CV-24585-UU, 2017 WL 2361944 (S.D. Fla. Apr. 27,

---

[4] Odom is filing a Request for Judicial Notice with Exhibits A through K, which consist of the publicly disclosed documents that form the basis of Relator's allegations, for the Court's consideration. Those exhibits are identified herein as "Defs.' Ex.__."

2017) (noting Rule 12(b)(6) review may take "judicial notice of facts that are not subject to reasonable dispute"); *United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1291 (M.D. Fla. 2018) (*Bernier I*) (stating, in FCA cases, "courts may take judicial notice of documents such as newspaper articles and information on publicly available websites").

### a.    Relator's Allegations Have Been Publicly Disclosed

The public disclosure bar requires dismissal of this case.  The scope of "news media" in §3730(e)(4) has a broad sweep and includes information found on publicly available websites.  *Osheroff,* 776 F.3d at 813.  Additionally, public record and Freedom of Information Act ("FOIA") requests and materials obtained through discovery qualify as public disclosures under the FCA.  *United States ex rel. Brown v. Bank United Tr. 2005-1*, 235 F. Supp. 3d 1343, 1359 (S.D. Fla. 2017).

Here, the Amended Complaint expressly relies upon publicly available information including newspaper articles; public emails; public documents from the Florida Secretary of State; publicly disclosed annual reports and financial statements; publicly available County agendas and grant applications; publicly available manuals, advisory opinions, and Q&As on the FAA website; and public records pursuant to Florida's public records laws.  *See* ECF No. 33, ¶¶ 25, 37-39, 52, 55-57, 59, 60-61, 67-69, 74, 77, 80, 83, 86.  Indeed, most of Relator's allegations against Odom are derived from, and mirror, a March 2014 Northwest Florida Daily

News article.  *See* Def.'s Ex. A, *Turbulence at Destin Airport: County looks at possible 'anti-trust violations,'* ("NWF News Article").[5]

Additionally, the transactions alleged in the Amended Complaint are described in Okaloosa County's public records and newspaper articles.  *See* Defs.' Exs. A, G, I, J.  The County Agenda request, March 3, 2015, and accompanying amended lease agreements are publicly available through the Okaloosa County website at https://onbase.okaloosaclerk.com/.   *See* Defs.' Ex. D. Notably, the publicly available First Amendment to Amended and Restated Lease Agreement for Fixed Base Operator, March 3, 2015, explicitly proscribes an exclusive right, stating: "[n]othing contained herein shall be construed as permission to conduct any commercial activity or venture exclusive of other operators."  *See* Defs.' Ex. H.

> **b.   Relator's Allegations are Substantially the Same as the Public Disclosures**

Relator fails to differentiate the Amended Complaint's allegations from

---

[5]  Curiously, in the Amended Complaint, Relator alleges that he was the source of the **2014** newspaper article; yet, he did not file the original lawsuit until six years later in **2020**.  ECF No. 33 at ¶ 134. This fact alone flies in the face of the purpose of the FCA pre-filing disclosure requirement, which is to encourage private individuals to come forward with their information **at the earliest possible time**. *See* ECF No. 33, ¶ 15; *see also United States ex rel. v. CSL Behring, LLC*, 158 F. Supp. 3d 782, 792–93 (E.D. Mo. 2016).  Indeed, Relator's Amended Complaint should be dismissed based on his own admission that he knew of, and publicly disclosed, the alleged fraud to the media years before the action was filed.

information found in these public disclosures, which are substantially the same.  As stated by the Eleventh Circuit, this second prong of the test is a "quick trigger" to get to the more exacting original source inquiry.  *Osheroff*, 776 F.3d at 814.  The significant overlap between Relator's allegations and the public disclosures alone "is sufficient to show that the disclosed information . . . is substantially similar to the allegations in the complaint."  *Id.*; *see United States ex rel. Brown v. Walt Disney World Co.,* 361 F. App'x 66, 68 (11th Cir. 2010) ("Plaintiff relied on publicly disclosed information to support all of her allegations; thus, it follows that the disclosed information formed the basis of Plaintiff's complaint.").

Here, the allegations in Relator's Amended Complaint rely on publicly disclosed information.  For example:

- Paragraph 51, Am. Compl.: "Odom opened a second FBO, Destin Jet, in 2009."

  o NWF News Article: "Destin Jet opened in 2009 and began competing with Miracle Strip Aviation."

- Paragraph 56, Am. Compl.: "Regal Capital's acquisition of Miracle Strip Aviation, later operated as Regal Air Destin, combined with Odom's Destin Jet, gave Odom an . . . exclusive right . . . ."

  o NWF News Article: "Regal Capital bought out a struggling Miracle Strip Aviation in March of 2013 and opened Regal Jet."

- Paragraph 67, Am. Compl.: "Sterling Diversified, LLC . . . became the owner of Regal Capital, and therefore controlled Regal Air."

  o NWF News Article: "Sterling Diversified LLC, a company managed by Odom and two partners, had bought out Regal Air."

10

- Paragraph 90, Am. Compl.: "Okaloosa County gave Odom the approval to merge Destin Jet with Regal Air."

  o March 3, 2015 County Agenda Request: "County agrees to authorize Destin Jet and Regal Air to operate under common ownership."

- Paragraph 104, Am. Compl.: "The 2013 annual report filed with the Florida Secretary of State for Sterling Diversified listed Jay Odom, Chester Kroeger and Timothy Edwards as managers and Jay Odom as the Registered Agent."

  o NWF News Article: "Jay Odom was listed as [Sterling Diversified, LLC's] registered agent and manager on 'articles of organization' filed with the Florida Division of Corporation. Chester Kroeger and Tim Edwards . . . are listed in the original documents as Odom's co-managers."

- Paragraph 113, Am. Compl.: "Odom publicly admitted that he still holds a one-third ownership interest in Sterling Diversified."

  o NWF News Article: "At the meeting Mr. Odom also informed the director and deputies, that as of Dec. 31, 2013, the Sterling Group LLC., of which he was a one-third equity partner, has acquired ownership of Regal Air Destin LLC."

- Paragraph 118, Am. Compl.: "When Odom purchased Miracle Strip Aviation, which he later operated as Regal Air Destin[,] Odom had obtained an 'Exclusive Right' for FBO services.  Odom's Destin Jet was the only other FBO at the airport."

  o NWF News Article: "Harman said he is 'fairly confident if Destin Jet does the right things the case is compelling enough to point to a single fixed base operator' at the airport."

Relator's allegations are also based on public records requests Relator sent and information received by the County between April and December 2019. *See*

Composite of Requests, Exhibit K.  The instant case was filed, February 26, 2020, within 60 days of his last records request and are clearly based on information provided from these requests.  *See* ECF No. 33, at ¶¶ 47-53, 80-93.

The Amended Complaint is based on publicly available information, which defeats any attempt to assert these FCA claims.

### c.     Relator is not an Original Source

Because the information contained in the Amended Complaint was previously disclosed to the public, Relator may only proceed by demonstrating that he is an original source of the information *to the Government* (not the news media).  A relator can meet the original source requirement in two possible ways: (1) disclosure to the government prior to public disclosure; or (2) disclosure to the government of knowledge that is independent of and materially adds to the publicly disclosed information prior to filing an FCA action.  31 U.S.C. § 3730(e)(4)(B).  The Amended Complaint fails to establish either exception.

### i.     The Amended Complaint Fails to Allege or Establish a Disclosure to the United States or State of Florida Prior to the Publicly Disclosed Information

A relator may be an original source "by voluntarily disclosing information to the Government that forms the basis of an FCA claim *prior to* a public disclosure." *See Bernier I,* 311 F. Supp. 3d at 1297 (emphasis in original).  However, the original source exception is inapplicable based on the face of the Amended Complaint.  The

Amended Complaint asserts a bare allegation that Relator "is an original source of the straw buyer scheme executed by Defendants." In support, Relator only alleges that he provided, as the statute required, a written disclosure to the United States sometime prior to filing the *qui tam* action, which would have been approximately February 2020.  ECF No. 33, ¶ 15; 31 U.S.C § 3730(b)(2).  Yet, the public disclosures expressly relied upon in the Amended Complaint date back and run from 2012 through 2019.  ECF No. 33, ¶¶ 12, 47-52, 55-59, 67-69, 74, 77, 80, 83, 86-87, 91, 93.  Relator even alleges that he himself publicly disclosed the information to the news media years before initiating the False Claims process with the U.S. Government.  ECF No. 33 at ¶ 134.  Thus, Relator must allege and demonstrate (which he has not) that he disclosed this information to the Government prior to 2012.

Relator attempts to overcome these public disclosures by claiming he was the original source of *one of the news articles* in 2014.[6]  *Id.* at ¶ 134.  This allegation does not support, and actually refutes, Relator being an original source under the statute, as he did not reveal the information to the Government *prior* to publicly disclosing it to the media.  31 U.S.C. § 3730(e)(4)(B).  Similarly, Relator makes vague allegations that he discussed "problematic changes at DTS" with Sunil

---

[6] Notably, the news article of which Relator suggests he is an original source contains numerous quotes from other individuals, which further suggests the alleged facts were already in the public domain.  *See* Def.'s Ex. A.

Harman, the Airport Director for co-Defendant Okaloosa County.  ECF No. 33 at ¶ 135.  Relator fails to state what was discussed, when it was discussed, or how it was discussed.  These vague allegations fail to establish Relator as an original source to the Government.  The vague disclosures to the news media or to county employee Harman cannot constitute disclosures to the Government because the news media and Harman were neither employees nor officials of the United States Government or the State of Florida.

The Amended Complaint contains no allegation that Relator provided information to the Government prior to the public disclosures spanning at least eight years.  Indeed, the few specific allegations refute any claim by Relator that he was the original source of the information.

ii.  **The Amended Complaint Fails to Allege or Establish Disclosure of Independent Knowledge that Materially Adds to Publicly Disclosed Information**

A relator may still qualify as an original source where the relator possesses "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."  31 U.S.C. § 3730(e)(4)(B).  However, the new allegations presented in Relator's Amended Complaint fail to show that Relator possesses this requisite independent and material knowledge.

"To establish original source status knowledge, a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions—*showing exactly how and when he*

*or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof*." *Brown,* 235 F. Supp. 3d at 1358 (emphasis supplied) (quoting *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1162 (10th Cir. 1999)). "Secondhand information, speculation, background information, or collateral research do not satisfy a relator's burden of establishing the requisite knowledge." *Id.* "[B]ackground information that helps one understand or contextualize a public disclosure is insufficient to grant original source status." *Osheroff,* 776 F.3d at 815; *see also United States ex rel. Saldivar v. Fresenius Med. Care Holdings*, 841 F.3d 927, 936 (11th Cir. 2016) ("The phrase 'direct and independent' is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an 'original source.'"). Furthermore, knowledge based on research into or review of public records or materials, or some combination thereof, does not suffice. *Brown,* 235 F. Supp. 3d at 1359; *see also United States ex rel. Lewis v. Walker*, 438 Fed. App'x 885, 888 (11th Cir. 2011) (holding relator was not original source where compilation of information relator used was publicly available to anyone).

Even with a second bite of the apple, Relator does not present a single, concrete allegation, let alone competent evidence, indicating his information is direct and independent of the public information. A generous review of the Amended

Complaint shows that Relator's information is nothing more than a generic summary of publicly disclosed background information over the prior eight years cobbled together to imply a violation.   Relator's attempt to describe alleged "independent knowledge" relies entirely on vague references to interactions with DTS, vague "prior business dealings" with Odom, and vague knowledge of unnamed employees and unspecified "operations" at DTS.  ECF No. 33, ¶¶ 15, 133.  Tellingly, because Relator has no direct and independent knowledge of the airport transactions or the grant application process, he then tenuously concludes that he obtained such knowledge based on his "unique familiarity" with Defendants.  *Id*.  These allegations do not meet the specificity requirements mandated by the FCA.

None of the allegations in Relator's Amended Complaint pertaining to Odom contain specific facts as to how or when Relator purportedly obtained any direct or independent knowledge of the allegedly fraudulent acts.  By his own admission, Relator did not maintain an aircraft at DTS after the early 2000s.  ECF No. 33 at ¶ 45.  Yet, in his Amended Complaint, Relator now alleges that he had regular interactions and communications with FBO employees at DTS without any details or specifics as to how such vague "communications" related to these claims.  *Id*. at ¶¶ 46, 47.  Even if Relator continued to interact with the "airport community," this allegation is insufficient to meet the standard of original source.  As stated above, secondhand information, speculation, background information, and collateral

research do not satisfy Relator's burden of establishing independent knowledge. *Brown,* 235 F. Supp. 3d at 1358.  The additional "facts" presented by Relator in the Amended Complaint amount to nothing more than gossip about an alleged "scam," and "provide[] no more than a bare 'scintilla' of evidence in support of relator['s] allegations.  An FCA claim must be made of sterner stuff than this."  *United States ex rel. Davis v. Prince*, No. 1:08CV1244, 2011 WL 13092084, at *5 (E.D. Va. June 13, 2011).

Further, the Amended Complaint alleges a basis for Relator's independent knowledge derives from his previously filed civil action against Odom pending in state court since 2017.  *See Bay Loop, et al., v. Odom, et al.*, Case No. 2017-CA-002069, Okaloosa County, Florida;[7] *see also* ECF No. 33, FN 5.  Discovery materials from a separate lawsuit may not form the basis of a *qui tam* cause of action.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.,* 501 F.3d 1244, 1252-53 (11th Cir. 2007); *see also United States ex rel. Butler v. Magellan Health Servs., Inc.,* 74 F. Supp. 2d 1201, 1208 (M.D. Fla. 1999) (noting that discovery material constitutes publicly disclosed information).  Thus, Relator's purported independent knowledge is derived from his own publicly disclosed lawsuit and the discovery provided therein cannot be a basis for this action.

---

[7] Odom requests the Court take judicial notice of *Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069, Okaloosa County, Florida.

In short, the purpose of the public disclosure bar is "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Schindler Elevator Corp.*, 563 U.S. 401 at 413 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010)). Relator's Amended Complaint is the latter.

The public disclosure bar warrants dismissal of the Amended Complaint with prejudice.

### 2.    The Amended Complaint Fails to State a Claim

On its face, Relator's Amended Complaint fails to allege a violation of the FCA. The Supreme Court made clear that "[the] False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). Nor does it permit harassing or frivolous litigation. While Relator attempts in a meandering 47-page Amended Complaint to bootstrap his grievances against Odom into an actionable claim, he fails to properly state a claim under the FCA.

While not entirely clear, the Amended Complaint appears to tie Counts I and II to both subsections (A) and (B) of § 3729(a)(1). ECF No. 33, ¶¶ 96, 97. To state a claim under § 3729(a)(1)(A), "a plaintiff must plausibly allege that a defendant: (1) presented a false claim; (2) with knowledge that the claim was false; and (3) that

the false claim was material to the Government's decision to pay the claim." *Jacobs*, 2016 WL 11653744, at *5.  "Under subsection (B) of the False Claims Act, a plaintiff must allege that: (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the false record or statement was 'material to a false or fraudulent claim." *Id.* at *7 (quoting 31 U.S.C. § 3729(a)(1)(B)).  Under either prong, a requisite element is that the defendant "knowingly" took action.  Because the Amended Complaint fails to allege an actual violation of federal regulations, the Amended Complaint does not meet the required standard for materiality with respect to the false claims.  In short, the Amended Complaint does not sufficiently allege that Odom knew his conduct was false or fraudulent, particularly because the Government had knowledge of the underlying facts.  The Amended Complaint should therefore be dismissed.

a.   **The Amended Complaint Fails to Allege That the County was Not in Compliance with Non-exclusivity Regulations**

Relator's Amended Complaint relies on baseless and conclusory allegations pertaining to the lawful acquisition of an FBO as an alleged violation of FAA non-exclusivity regulations.  ECF No. 33 at ¶¶ 7-11.  These allegations are premised on Relator's misunderstanding of the meaning of, and an improper application of, an "exclusive right" in the grant assurances and federal law.

A violation of the prohibition on "exclusive rights" at an airport "is the denial by the airport or sponsor to afford other *qualified parties* an opportunity to be an on-site airport service provider." Defs.' Ex. B, FAA, Order 5190.6B, Change 1, *Airport Compliance Manual*, ¶ 8.9(b) (Nov. 22, 2021) ("FAA Order 5190.6B").[8] "The fact that a single business or enterprise may provide most or all of the on-airport aeronautical services is not, in itself, evidence of an exclusive rights violation." *Id*. "A single enterprise may expand as needed, even if its growth ultimately results in the occupancy of all available space." *Id.* at ¶ 8.9(d). An exclusive rights violation may occur when an airport sponsor takes action that "*unreasonably excludes a qualified applicant* from engaging in an on-airport aeronautical activity without just cause or fails to provide an opportunity for qualified applicants to be an aeronautical service provider." *Id*. (emphasis added).

Contrary to the premise of the Amended Complaint, the existence of a single FBO is not in itself a violation of the exclusive rights prohibition. The *Airport Compliance Manual* explicitly confirms this: "Where a sponsor has not entered into

---

[8] The *Airport Compliance Manual* is officially an internal FAA guidance document, meant to assist FAA staff in determining whether an airport sponsor is in compliance with the grant assurances, various laws and FAA regulations and policies. *Compliance Manual* at ¶ 1.1. However, the FAA regularly cites the Compliance Manual when adjudicating allegations of sponsors' regulatory noncompliance, giving the document a quasi-regulatory status. *See, e.g.*, *Minch v. Cottonwood Mun. Airport*, FAA Dkt. No. 16-17-05, Director's Determination, 2019 FAA LEXIS 112 (Jan. 18, 2019), at *8–9 ("FAA Order 5190.6B … sets the policies and procedures for the FAA Airport Compliance Program.").

an express agreement, commitment, understanding, or an apparent intent to exclude other reasonably qualified enterprises, *the FAA does not consider the presence of only one provider engaged in an aeronautical activity as a violation or the exclusive rights prohibition*." *Id*. at ¶ 8.2 (emphasis added).

The allegations in the Amended Complaint do not, as a matter of law, allege a violation of the exclusive rights prohibition. Relator's Amended Complaint, with no specifics or factual support, alleges that he is an aeronautical service provider and that (at some unspecific time) the County denied his "request" to lease an existing FBO or develop a new FBO. ECF No. 33, ¶ 91. Relator fails to acknowledge that a violation occurs only when an airport sponsor unreasonably excludes a ***qualified*** applicant. Okaloosa County Airports, Florida, *Minimum Standards for Full-Service Fixed Based Operations and Specialty Service Operations*, May 30, 2008; *see* Def. Ex. B, FAA Order 5190.6B, at ¶ 8.7. Under the law, a ***qualified applicant*** is a corporation or person who has complied with the lengthy requirements of the application process under Okaloosa County's Minimum Standards including, but not limited to: (1) providing a written letter to the Board's Airport Director detailing the nature of the proposed activity as well as all supporting documentation detailing personal information, description of proposed operation, professional qualifications of the personnel who will manage or operate the service, description of the costs and proposed capital improvements, and pro forma statement for the first year's activity;

(2) providing a current financial statement prepared and certified by a public accountant; (3) providing a written list of all assets owned, leased or being purchased to be used in the FBO; (4) providing a current credit report covering all areas in which the applicant has done business in the past ten years; and (5) providing written authorization from the FAA and all aviation or aeronautical commissions of all states in which the applicant has engaged in aviation business to release files related to the applicant. Okaloosa County Airports, Florida, *Minimum Standards for Full-Service Fixed Based Operations and Specialty Service Operations*, May 30, 2008; *see* FAA Order 5190.6B, at ¶ 8.7. Notably, *nothing* in the Amended Complaint alleges, or even implies, that Relator sought to satisfy or ever satisfied the County's standards of what constitutes a "qualified applicant."

As in the original Complaint, the Amended Complaint is devoid of any allegations establishing a violation of the prohibition on granting exclusive rights— including that (a) another ***qualified applicant*** sought to engage in on-airport aeronautical activity; (b) the County took separate actions to exclude any other qualified applicant; or (c) any such actions as to any other qualified applicants were unreasonable. The County's approval of the FBO lease, as alleged in the Amended Complaint, is not a violation so long as the County did not take future action to prevent competition at DTS. While Relator's Amended Complaint alleges that the County did not accept Relator's "request" for an FBO, the Amended Complaint fails

to allege any facts indicating that Relator or any "qualified applicant" submitted a proper application that was denied.  Similarly, Odom's alleged actions to consolidate the FBOs at DTS cannot cause the County to submit a false certification of compliance with all regulations because such actions *were in compliance with* the regulations.

Relator fails to allege facts to plausibly show how any grant applications claiming that the County was in compliance with federal and state laws constitute a false claim.  Relator does not, and cannot, present such allegations because the County has not submitted false statements or claims to the Government, nor has the Government approved its grant applications based on any false or misleading statements.

> **b.    Any Alleged Representation was not Material to a Government Payment Decision**

"A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the government's payment decision in order to be actionable under the False Claims Act."  *Escobar,* 136 S. Ct. at 2002. The standard for showing materiality is demanding, and "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id*. (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)).  Key to the present case, the Supreme Court held, "if the Government regularly pays a particular type of claim in full

*despite actual knowledge that certain requirements were violated*, and has signaled no change in position, that is strong evidence that the [statutory or regulatory compliance] requirements are not material." *Id.* at 2003-04 (emphasis added).  An alleged representation to the Government cannot be material under the FCA, where the Government was not only aware of, but approved, such action.

Here, on its face, the Amended Complaint establishes that, since at least 2013, the Government regularly approved the County's grant applications with knowledge of the FBO arrangements alleged by Relator.  ECF No. 33, ¶ 78-79.  Thus, even if the representations were inaccurate when the County sought grants, the County's certifications regarding nonexclusive rights were immaterial to the award of grant funds because the Government knowingly continued paying funds.  Indeed, the Amended Complaint concedes that the Government made payments with knowledge of the FBO acquisition at DTS.  *See* ECF No. 33, ¶¶ 77, 138.

Similarly, the Amended Complaint fails to provide sufficient and specific detail as to how Odom caused the County to present a false claim that was material to the Government's payment of the grant funds. The Amended Complaint and public records, incorporated therein, demonstrate Defendants' transparency with respect to the acquisition and merger of the two FBOs.  Indeed, the Amended Complaint admits that the FAA was fully aware an "exclusive right" issue *could arise in the future* but continued to bestow grants even with this knowledge.  ECF

No. 33, ¶¶ 78-79; *see also* Defs.' Exs. E, F.  The Government cannot be defrauded by that about which the Government is fully aware.  *See United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.,* No. 8:06-CV-40-T-33MAP, 2009 WL 1148632, at *5 (M.D. Fla. Apr. 28, 2009) (noting that action may constitute vexatious and harassing litigation "where the government's undisputed prior knowledge of information alleged to constitute fraud defeated any inference of a false claim").

### c.    Relator Has Not Pled Sufficient Allegations Showing That Odom Acted Knowingly, Particularly Where the Government Had Knowledge of the Conduct Alleged

While evidence of specific intent to defraud is not required, "[with] regard to scienter, a relator must show that the defendant acted 'knowingly,' which the FCA defines as either 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard.'" *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) (quoting 31 U.S.C. § 3729(b)).  Where a relator alleges a defendant has falsely certified compliance with a government regulation, the court must "determine whether the defendant actually knew or should have known that its conduct violated a regulation in light of any ambiguity at the time of the alleged violation."  *Id*. at 857 F.3d 1148, 1155.  "Liability attaches to only those who act in gross negligence—those who fail to make such inquiry as would be reasonable and prudent to conduct under the circumstances."  *Id*.  Government knowledge may negate the necessary

scienter and, thus, require a relator's claim to be dismissed. *United States ex rel. Hunt v. Chochise Consultancy, Inc.*, 887 F.3d 1081, 1092 n. 10 (11th Cir. 2018). "If the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material . . . ." *Id.* "[E]vidence that the government knew the relevant facts at the time that the defendant submitted its claim may also show that the defendant understood its conduct to be lawful." *Id.* (internal quotation and citation omitted).

While Relator's latest iteration of his Complaint adds conjecture and inuendo, nothing in the Amended Complaint plausibly alleges that Odom submitted or caused to be submitted purported false certifications that the County complied with its grant assurances. ECF No. 33, ¶¶ 96-97. Indeed, Relator's own allegations, as well as public documents, show that the County was in communication with and sought an opinion from the FAA – the agency tasked with interpreting and enforcing the relevant federal requirements with which the County certified. *See* ECF No. 33, ¶¶ 78-79. Neither actual knowledge nor deliberate knowledge can be attributed to Odom under these circumstances.

Further, the "reckless disregard" scienter was intended to capture the "ostrich type situation," where a defendant has "buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted."

*Phalp,* 857 F.3d at 1155 (internal quotations omitted).  Clearly, no such situation exists here, where the Amended Complaint and documents necessarily embraced by the Amended Complaint show that Defendants took active steps to ensure that the County's certifications to the FAA would be considered truthful.

The Amended Complaint also establishes that the FAA continued to award federal grants to the County with full knowledge of the alleged exclusivity issue. *United States ex rel. Harman v. Trinity Indus.,* 872 F.3d 645, 668 (5th Cir. 2017); ECF No. 33, ¶ 78.  Relator points to a County Agenda Request from March 3, 2015, which states that "concerns regarding compliance with the grant assurances . . . were all raised to the FAA, however in each instance the FAA determined that this is a lease administration issue and that the acquisition of an FBO provider – a prevalent practice, does not in itself constitute as a violation of grant assurances."  ECF No. 33, ¶ 85; *see also* Defs.' Ex. D.

This level of interaction with the FAA regarding the conduct at issue, pled in the Amended Complaint, eliminates the possibility of FCA liability on the part of Defendants.  *See Harman,* 872 F.3d at 668 (noting record "[left] no question about 'what the government knew and when'" but instead demonstrated that the government continued to make payments despite full knowledge of the relator's allegations).  Based upon allegations conceding the FAA's knowledge, the Amended Complaint fails to plead the requisite materiality or scienter to survive dismissal.

### 3.    Failure to Plead Fraud with Particularity

Relator's Amended Complaint also fails to satisfy the well-established heightened pleading requirements imposed when a plaintiff alleges fraud.  "When a claim arises under the FCA, 'Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b).'"  *United States ex rel. Bernier v. Infilaw Corp.,* 347 F. Supp. 3d 1075, 1084 (M.D. Fla. 2018) (*Bernier II*) (quoting *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015)).  "Rule 9(b) imposes a heightened pleading standard for allegations of fraud, requiring a party to 'state with particularity the circumstances constituting fraud or mistake.'"  *Id.* at 1084-85 (quoting Fed. R. Civ. P. 9(b)).  This heightened pleading standard prevents speculative suits against innocent actors, by requiring allegations of fraud to "include facts as to time, place, and substance of the defendant's alleged fraud."  *United States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002).

A complaint under the FCA satisfies Rule 9(b) if it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made,

> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same,

> (3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants obtained as a consequence of the
fraud.

*United States ex rel. Boros v. Health Mgmt. Assocs., Inc.,* No. 4:10-CV-10013-KMM, 2012 WL 5304172, at *1–2 (S.D. Fla. Oct. 25, 2012). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables [him] to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." *Clausen,* 290 F.3d at 1313 n.24.

While the 173-paragraph Amended Complaint attempts to plead an alleged scheme, it does so only in the broadest terms and is completely devoid of the specific people, places, dates, content, and manner required for an FCA claim. *See United States v. Health First, Inc.,* No. 6:14-cv-501-Orl-37DAB, 2016 WL 3959343, at *4 (M.D. Fla. July 22, 2016), *as amended* (July 27, 2016) (dismissing complaint for failure to adequately plead fraud). The Amended Complaint merely adds rambling statements that Relator received information about a vague alleged scheme from unidentified employees at DTS at undisclosed dates or times. ECF No. 33, ¶¶ 53, 76, 105, 107, 116, 131. Relator's attempt to provide allegations about the alleged scheme and how exactly it constituted fraud amount to nothing more than conclusory (and incorrect) assumptions about the law surrounding exclusive rights at the airport

and how Relator believes the FAA *should have* reacted to its knowledge of the facts (rather than how it actually did).  ECF No. 33, ¶¶ 30-39.  Once these "[mere] legal conclusions" are disregarded, as is required at this stage, the Amended Complaint is without well-pleaded factual allegations to give rise to a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

Notably, Relator failed to allege *how* the United States, through the FAA, was misled by the alleged claims.  A proper FCA complaint must describe with particularity the "who, what, where, when, and how" of the alleged fraudulent scheme. *United States ex rel. Paul v. Biotronik, Inc.*, No. 8:18-cv-396-T-36JSS, 2020 WL 191146, at *5 (M.D. Fla. Apr. 20, 2020).  Here, as alleged by Relator, the FAA was well-aware of the circumstances underlying Relator's grievances.  ECF No. 33, ¶¶ 52, 57.  It is impossible for a County submission to be fraudulent when the FAA had earlier been apprised of the situation concerning the FBOs at DTS.

## B.    THE CLAIMS ARE BARRED BY THE FCA'S STATUTE OF LIMITATIONS

Relator's claims are premised on activities from as far back as 2012 and seeks damages for the period of 2012 to 2014.  ECF No. 33, ¶¶ 138, 160. "The statute of limitations under the FCA is no 'more than 6 years after the date' on which violations of the statute are committed." *Burkes v. Dylewski*, No. 1:14-CV-22079-UU, 2016 WL 9526692, at *6–7 (S.D. Fla. May 3, 2016) (quoting 31 U.S.C. § 3731(b)(1)).  A party may raise failure to comply with the statute of limitations in

a motion to dismiss under Fed. R. Civ. P. 12(b)(6), when that failure is "plain on the face of the complaint." *Id.*

Here, Relator intentionally attempts to avoid the statute of limitations by obscuring the specific dates on which he bases his claims. Yet, the allegations, when read in context with the documents incorporated in the Amended Complaint, clearly demonstrate that the claims are based on events that occurred six years prior to the filing date of Relator's original *qui tam* Complaint of February 24, 2020, or this Amended Complaint. *See* ECF No. 33, ¶¶ 1-14, 138. Thus, the claims are barred by the statute of limitations and should be dismissed.

## C.   FLORIDA FCA CLAIM SHOULD BE DISMISSED UNDER THE PUBLIC DISCLOSURE BAR

As noted in Odom's original Motion to Dismiss, Relator failed to properly disclose all material evidence and information to the State of Florida before filing his Complaint asserting claims on behalf of the State. *See* Fla. Stat. § 68.083(3). That Complaint was unsealed and *made public*. Relator's attempt to cure this glaring defect, after the allegations were made *public*, by belatedly disclosing it to the State still requires dismissal. Under the Florida FCA, a court "shall dismiss an action brought under this act . . . , if substantially the same allegations or transactions as

alleged in the action were publicly disclosed . . . [i]n a . . . civil . . . hearing in which the state is a party." Fla. Stat. § 68.087 (3)(a).   That is precisely what occurred.

Here, prior to disclosure to the State of Florida, the original Complaint, brought on behalf of the State of Florida as a named party, was unsealed on December 2, 2020 and served on Odom on December 12, 2020.  Not until March of 2021, after both Defendants moved for dismissal, did Relator seek to file an Amended Complaint and only then submit the information to the State. The proverbial cat was out of the bag and in the public arena at that point. Any attempt to circumvent Florida law by bringing a claim under the Florida FCA after disclosure is clearly prohibited by the statute.   Fla. Stat. 68.087(3) (prohibiting publicly disclosed claims).   Therefore, Relator's Florida FCA claims against Odom should be dismissed.

## III.   DISMISSAL WITH PREJUDICE

Dismissal with prejudice is proper because there is no realistic prospect that amendment will cure the deficiencies contained therein. "Although a district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), it may deny leave, *sua sponte* or on motion, if amendment would be futile." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).  Leave to amend would be futile if an amended complaint would still fail on a motion to dismiss.  *See id.*  Here, the underlying facts of this case cannot support any claim for

relief against Defendants, such that dismissal with prejudice is proper.  *See e.g., United States ex rel. Smith v. N.Y. Presbyterian Hosp.,* No. 06 CIV 4056 NRB, 2007 WL 2142312, at *7 (S.D.N.Y. July 18, 2007) (dismissing FCA fraud claim with prejudice).

## IV.    THE COURT SHOULD AWARD ATTORNEYS' FEES

Under 31 U.S.C. § 3730, a prevailing defendant is entitled to attorneys' fees where a relator's claim is "clearly frivolous, clearly vexatious, [and] brought primarily for purposes of harassment."  31 U.S.C. § 3730(d)(4); *see United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 356–57 (4th Cir. 2009).

## V.    CONCLUSION

For the reasons set forth above, Defendant Odom respectfully requests the Court dismiss Relator's Amended Complaint, with prejudice, and for such other relief as the Court may deem appropriate, including an award of attorney's fees.

Dated: September 28, 2022.

Respectfully Submitted,
*Counsel for Jay A. Odom*

*A. Benjamin Gordon*
**A. Benjamin Gordon, III**
Florida Bar No. 528617
AnchorsGordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, Florida 32547
Phone: (850) 863-1974
Fax: (850) 863-1591
bgordon@anchorsgordon.com
cyndi@anchorsgordon.com

and

*By: /s/ Nathaniel Hunt*
Peter J. Kirsch
Nathaniel Hunt
Sarah Wilbanks
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO 80202
Phone: (303) 825-7000
Fax: (303) 825-7005
pkirsch@kaplankirsch.com
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com

*Co-counsel for Defendant Jay Odom*
*Appearing Pro Hac Vice*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the instant Memorandum contains 7,768 words.

## CERTIFICATE OF SERVICE

I CERTIFY that a that a true and correct copy of the foregoing has been electronically filed on the CM/ECF system for the Northern District of Florida, which will send notification of such filing to the following attorneys of record: Mark Davis, Clark Partington, 125 East Intendencia Street, Pensacola, Florida 32591-3010, and Elizabeth Billhimer, Clark Partington, 4100 Legendary Drive, Suite 200, Destin, Florida 32541, attorneys for Relator; and to Lynn Hoshihara, Nabors Giblin & Nickerson, P.A., 1500 Mahan Drive, Suite 200, Tallahassee, Florida 32308, attorneys for Okaloosa County, and to David M. Sobotkin, U.S. Department of Justice, Commercial Litigation Branch, 175 N. Street, NE, Washington, DC 20002, attorney for the United States of America,  this 28th day of September, 2022.

*A. Benjamin Gordon*
**A. Benjamin Gordon, III**
Florida Bar No. 528617

AnchorsGordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, Florida 32547
Phone: (850) 863-1974
Fax: (850) 863-1591
bgordon@anchorsgordon.com
cyndi@anchorsgordon.com

and

*By: /s/ Nathaniel Hunt*
Peter J. Kirsch
Nathaniel Hunt
Sarah Wilbanks
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO 80202
Phone: (303) 825-7000
Fax: (303) 825-7005
pkirsch@kaplankirsch.com
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com

*Co-counsel for Defendant Jay Odom*