## Chapter 8.  Exclusive Rights

**8.1. Introduction.**  This chapter describes the sponsor's federal obligations under Grant Assurance 23, *Exclusive Rights*, which prohibits an airport sponsor from granting an exclusive right for the use of the airport, including granting an exclusive right to any person or entity providing or intending to provide aeronautical services to the public.

In particular, the sponsor may not grant a special privilege or a monopoly to anyone providing aeronautical services on the airport or engaging in an aeronautical use.  The intent of this restriction is to promote aeronautical activity and protect fair competition at federally obligated airports.

It is the responsibility of the FAA airports district offices (ADOs) and regional airports divisions to ensure that the sponsor has not extended any exclusive right to any airport operator or user.

**8.2. Definition of an Exclusive Right.** An exclusive right is defined as a power, privilege, or other right excluding or debarring another from enjoying or exercising a like power, privilege or right. An exclusive right may be conferred either by express agreement, by imposition of unreasonable standards or requirements or by another means.  Such a right conferred on one or more parties, but excluding others from enjoying or exercising a similar right or right, would be an exclusive right.[16]

**8.3. Legislative and Statutory History.**

**a. General.** Through the years, the exclusive rights provision has become a federal obligation that applies in cases involving airport development grants, and surplus and nonsurplus conveyances of federal property.[17]

> *The prohibition against exclusive rights is contained in section 303 of the Civil Aeronautics Act of 1938 (P.L. No. 75-706, 52 Stat. 973) and applies to any airport upon which any federal funds have been expended.*

**b. 1938 to Date.** The exclusive rights provision is the oldest federal obligation affecting federally funded airports.  The legislative background for the exclusive rights provisions began in l938. The prohibition against exclusive rights was first contained in section 303 of the Civil Aeronautics Act of 1938 (Public Law (P.L.) No. 75-706, 52 Stat. 973 recodified at 49 United States Code (U.S.C.) 40103(e) ) and applies to any airport upon which any federal funds have been expended.

---

[16] 30 Fed. Reg. 13661, see also AC 150/5190.6, Appendix 1.
[17] The applicable grant programs were the Federal Aid to Airports Program (FAAP), Airport Development Aid Program (ADAP), and Airport Improvement Program (AIP).

To develop and improve airports between 1939 and 1944, Congress authorized the *Development of Landing Areas National Defense* (DLAND) and the *Development of Civil Landing Areas* (DCLA) programs. In accordance with these programs, the federal government and the sponsor entered into an agreement, called an AP-4 Agreement, by which the sponsor provided the land and the federal government developed the airport. AP-4 Agreements contained a covenant stating that the sponsor would operate the airport without the grant or exercise of any exclusive right for the use of the airport within the meaning of section 303 of the Civil Aeronautics Act of 1938. Although the useful life of all AP-4 improvements expired by 1969, the airports that entered into these agreements continue to be subject to the exclusive rights prohibition. An airport remains federally obligated as long as the airport continues to be operated as an airport – regardless of whether it remains under the same sponsor or not.

Following World War II, under the provisions of the Surplus Property Act of 1944 (section 13(g)) (as codified and amended by 49 U.S.C. §§ 47151-47153), large numbers of military installations were conveyed without monetary consideration to public agencies. However, in 1947, Congress amended the Surplus Property Act (Public Law (P.L.) No. 80-289) to require the following language:

"No exclusive right for the use of the airport at which the property disposed of is located shall be vested (either directly or indirectly) in any person or persons to the exclusion of others in the same class. For the purpose of this condition, an exclusive right is defined to mean: (1) any exclusive right to use the airport for conducting any particular aeronautical activity requiring the operation of aircraft; (2) any exclusive right to engage in the sale of supplying of aircraft, aircraft accessories, equipment or supplies (excluding the sale of gasoline or oil), aircraft services necessary for the operation of aircraft (including the maintenance and repair of aircraft, aircraft engines, and propellers appliances)."



*Following World War II, under the provisions of the Surplus Property Act of 1944 (section 13(g)) (as amended by 49 U.S.C. §§ 47151-47153), large numbers of military installations were conveyed without monetary consideration to public agencies. (Photo: US Navy)*

In accordance with the Airport and Airway Improvement Act of 1982 (AAIA), 49 U.S.C. § 47101, et seq., the Federal Aviation Act of 1958 (FAA Act) 49 U.S.C. § 40103(e), and the Airport Improvement Program (AIP) grant assurances, the owner or operator of any airport that has been developed or improved with federal grant assistance is required to operate the airport for the use and benefit of the

public and to make it available for all types, kinds, and classes of aeronautical activity and without granting an exclusive right. The same obligation was required in previous grant programs such as the Federal Aid to Airports Program (FAAP), in effect between 1946 and 1970, and the Airport Development Aid Program (ADAP), which was in use between 1970 and 1982.

Finally, the exclusive rights obligation also exists for airports that have received nonsurplus government property under 49 U.S.C. § 47125 and previous corresponding statutes.

**c. Governing Statutes.** Today, Title 49 U.S.C. subtitle VII, *Aviation Programs*, contains the prohibition against exclusive rights in three locations:

**(1).** 49 U.S.C. § 40103(e), *No Exclusive Rights at Certain Facilities.*

**(2).** 49 U.S.C. § 47107(a), *General Written Assurances.*

**(3).** 49 U.S.C. § 47152, *Terms of Conveyances.*

***An airport remains federally obligated as long as the airport continues to be operated as an airport – regardless of whether it remains under the same sponsor.***

**d. Prohibition Applies Only to Aeronautical Activities.** When called upon to interpret the application of section 303, the Attorney General of the United States affirmed the prohibition against exclusive rights. In an opinion dated June 4, 1941, the Attorney General stated "…it is my opinion that the grant of an exclusive right to use an airport for a particular aeronautical activity, such as an air carrier, falls within the provision of section 303 of the Civil Aeronautics Act precluding any exclusive right for the use of any landing area."

If an airport sponsor prohibits an aeronautical activity without a commercial component, coordination with ACO-1 and the Office of Chief Counsel is necessary.

**8.4. Development of the Exclusive Rights Prohibition into FAA Policy.**

**a. Implementation of the Federal Airport Act.** During the immediate post-war years, the Civil Aeronautics Board (CAB) was simultaneously engaged in processing the first Federal Aid to Airports Program (FAAP) development projects and working with the military to convey former military installations to public entities.

**b. Interpretations of Aeronautical Activity.**

**(1). Airfield.** When approving grants for airport development, the CAB (and later the FAA) interpreted the exclusive rights prohibition principally in terms of the airfield. Accordingly, they considered activities that used the airfield (e.g., air carriers, flight schools, and charter service) as subject to the prohibition. All nonaeronautical activities, such as restaurants and other terminal concessions, ground transportation, and car rentals are excluded from the prohibition.



*Granting options or preferences on future airport lease sites to a single service provider may be construed as the intent to grant an exclusive right. Therefore, the use of leases with options or future preferences, such as rights of first refusal, must generally be avoided. This is because a right of first refusal could allow an existing tenant to hold a claim on airport land at little or no cost that could be used by a competing aeronautical entity. It could then exercise the option when there is a prospect of competition. (Photo: FAA)*

**(2). Inclusion of Aeronautical Supporting Activities.** In 1962, the FAA published its *Policy on Exclusive Rights* in the *Federal Register*. The policy extended the prohibition to all aeronautical activities. Such aeronautical activities are those that involve, make possible, or are required for the operation of aircraft; or that contribute to, or are required for the safety of such operations.[18] The FAA further clarified the application of the prohibition in FAA Order 5190.1, *Exclusive Rights*, on October 12, 1965.

**c. Current Agency Policy.** The FAA has taken the position that the existence of an exclusive right to conduct any aeronautical activity at an airport limits the usefulness of the airport and deprives the public of the benefits of competitive enterprise. The FAA considers it inappropriate to provide federal funds for improvements to airports where the benefits of such improvements will not be fully realized by all users due to the inherent restrictions of an exclusive monopoly on aeronautical activities.

Advisory Circular (AC) 150/5190-6, *Exclusive Rights at Federally Obligated Airports*, provides airport sponsors with the information they need to comply with their federal obligation regarding exclusive rights.

---

[18] AC 150/5190-6, Appendix 1, § 1.1(a).

**d. Effect of the Prohibition on Airport Improvement Program (AIP) Grants.** Federal statutory law prohibits sponsors from granting an exclusive right. Consequently, it does not matter how the sponsor granted the exclusive right (e.g., express agreement, unreasonable minimum standards, action of a former sponsor, or other means). The FAA will not award a sponsor an Airport Improvement Program (AIP) grant until that exclusive right is removed from the sponsor's airport. The FAA may also take other actions to return the sponsor to compliance with its federal obligations.

> *Federal statutory law prohibits sponsors from granting an exclusive right. Consequently, it does not matter how the sponsor granted the exclusive right – express agreement, unreasonable minimum standards, action of a former sponsor, or other means.*

**e. Duration of Prohibition Against Exclusive Rights.** Once federal funds have been expended at an airport, including through a surplus property conveyance, the exclusive rights prohibition is applicable to that airport for as long as it is operated as an airport. In other words, it runs in perpetuity at the airport even though 20 years may have passed since the airport received its last AIP grant. In fact, there are airports today where the only federal obligation is the exclusive rights prohibition.

**f. Grant Assurance 23, *Exclusive Rights*.** Since enactment of the AAIA, sponsor grant agreements have included the exclusive rights assurance. The grant assurance applies to public and private airport sponsors alike for as long as the airport remains an airport. It also applies to sponsor airport development and noise mitigation projects. The assurance does not extend to planning projects or to nonsponsor noise mitigation projects.

**8.5. Aeronautical Operations of the Sponsor.** The exclusive rights prohibition does not apply to services provided by the sponsor itself. The airport sponsor may elect to provide any or all of the aeronautical services at its airport, and to be the exclusive provider of those services. A sponsor may exercise – but may not grant – the exclusive right to provide any aeronautical service. This exception is known as the airport's "proprietary exclusive" right.[19] See paragraph 8.9.a of this chapter.

The sponsor may exercise a proprietary exclusive right provided the sponsor engages in the aeronautical activity as a principal using its own employees and resources. The sponsor may not designate an independent commercial enterprise as its agent. In other words, the sponsor may not rely on a third party or a management company to provide the services under its proprietary

---

[19] The airport's proprietary exclusive right, however, may not interfere with an aeronautical users' right to self-service or self-fuel. (AC 150/5190-6, paragraph 1.3(a)(2).) Such activity must conform to an airport's minimum standards or reasonable rules and regulations.

exclusive right. These airport sponsors must engage in such activities using their own employees.[20]

**8.6. Airports Having a Single Aeronautical Service Provider**. Where the sponsor has not entered into an express agreement, commitment, understanding, or an apparent intent to exclude other reasonably qualified enterprises, the FAA does not consider the presence of only one provider engaged in an aeronautical activity as a violation of the exclusive rights prohibition.[21] The FAA will consider the sponsor's willingness to make the airport available to additional reasonably qualified providers. (See paragraph 8.9.b of this chapter.)

**8.7. Denying Requests by Qualified Providers.**

**a. Conditions for Denial.** The assurance prohibiting the granting of an exclusive right does not penalize a sponsor for continuing an existing single provider when <u>both</u> of the following conditions exist:

**(1).** It can be demonstrated that it would be unreasonably costly, burdensome, or impractical for more than one entity to provide the service, and

**(2).** The sponsor would have to reduce the leased space that is currently being used for an aeronautical purpose by the existing provider in order to accommodate a second provider. In the case of denying additional providers, the sponsor must have adequate justification and documentation of the facts supporting its decision acceptable to the FAA.

Both conditions must be met. (See 49 U.S.C. § 47107(a)(4)(A and B).)

**b. Demonstrable Need.** When the service provider has space in excess of its *reasonable* needs and the sponsor claims it is justified based on the service provider's *future* needs, the FAA may find the sponsor in violation of the exclusive rights prohibition if the service provider is banking land and/or facilities that it cannot put to gainful aeronautical use in a reasonable period of time and/or the vacant property controlled by the service provider denies a competitor from gaining entry onto the airport.

> *A sponsor may exclude an incumbent on-airport service provider from responding to a request for proposals based on the sponsor's desire to increase competition in airport services. That action is not a violation of Grant Assurance 22, Economic Nondiscrimination, since the sponsor is taking a necessary step to preclude the granting of an exclusive right.*

---

[20] An aeronautical user exercising its right to self-service or self-fuel is also required to use its own employees and equipment.
[21] See 49 U.S.C. §§ 40103(e) and 47107(a)(4).



*An airport sponsor is under no obligation to permit aircraft owners or operators to introduce fueling equipment or practices on the airport that would be unsafe or detrimental to the public welfare or that would affect the efficient use of airport facilities by the public. An aircraft hangar is to house an aircraft and related equipment, not to be used as general storage space. (Photo: FAA)*

**(1).** Granting options or preferences on future airport lease sites to a single service provider may be construed as intent to grant an exclusive right. Therefore, the use of leases with options or future preferences, such as rights of first refusal, must generally be avoided. This is because a right of first refusal could allow an existing tenant to hold a claim on airport land at little or not cost. Then, when faced with the prospect of competition, that leaseholder could exercise its option to inhibit access by others and limit or prevent competition.

**(2).** A sponsor may exclude an incumbent on-airport service provider from responding to a Request for Proposal (RFP) by eliminating the provider from eligibility for the RFP based on the sponsor's desire to increase competition in airport services. The FAA will not consider that action a violation of Grant Assurance 22, *Economic Nondiscrimination,* since the sponsor is taking a necessary step to preclude granting of an exclusive right.

**(3).** When a sponsor denies a request by a service provider to conduct business on the airport based on the lack of available space, the ADO or regional airports division should conduct a site visit to confirm that the space and/or facilities leased to service providers only represent their reasonable demonstrable need and are not being banked for the long-term future.

**8.8. Exclusive Rights Violations.**

**a. Restrictions Based on Safety and Efficiency.** An airport sponsor can deny an individual or prospective aeronautical service provider the right to engage in an on-airport aeronautical activity for reasons of safety and efficiency if the kind of activity (e.g., skydiving, sailplanes, ultralights) would adversely impact the safety and efficiency of another aeronautical activity at the airport, typically fixed-wing operations. An aeronautical operator holding an FAA certificate is presumed to be a safe operator, and the airport sponsor may not deny access to an individual certificated operator on the basis of safety of its aeronautical operations. Any safety concerns with an operator would need to be brought to the attention of the FAA. However, the airport sponsor may find that an aeronautical activity as a whole is inconsistent with the safety and efficiency of the airport and may, therefore, not permit that activity at all, subject to concurrence by the FAA. The airport sponsor may also prohibit access by an individual or individual service provider that has not complied with the airport's minimum standards or operations rules for safe use of airport property.

Any denial based on safety must be based on reasonable evidence demonstrating that airport safety will be compromised if the applicant or individual is allowed to engage in the proposed aeronautical activity. Airport sponsors should carefully consider the safety reasons for denying an aeronautical service provider or individual the opportunity to engage in an aeronautical activity if the denial has the possible effect of limiting competition or access.

The FAA is the final authority in determining what, in fact, constitutes a compromise of safety. As such, an airport sponsor that is contemplating the denial of a proposed on-airport aeronautical activity or access is encouraged to contact the local ADO or regional airports division. Those offices will then seek assistance from FAA Flight Standards (FS) and Air Traffic (AT) to assess the reasonableness of the proposed action because of safety and efficiency, and to determine whether unjust discrimination or an exclusive rights violation results from the proposed restrictions.

Safety concerns are not limited to aeronautical activities but may include Occupational Safety and Health Administration (OSHA) standards, fire safety standards, building codes, or sanitation considerations. Restrictions on aeronautical operators by airport sponsors for safety must be reasonable. Examples of reasonable restrictions include, but are not limited to: (1) restrictions placed on the handling of aviation fuel and other flammable products, including aircraft paint and thinners; (2) requirements to keep fire lanes open; and (3) weight limitations placed on vehicles and aircraft to protect pavement from damage.[22] (See Chapter 14 of this Order, *Restrictions Based on Safety and Efficiency Procedures and Organization*.)

**b. Restrictions on Self-service.** An aircraft owner or operator[23] may tie down, adjust, repair, refuel, clean, and otherwise service his/her own aircraft, provided the service is performed by the

---

[22] See FAA proposed policy at 68 Fed. Reg. 39176 (July 01, 2003), *Weight-Based Restrictions at Airports*. (See Appendix S of this Order).

[23] For many purposes, the FAA has interpreted an aircraft owner's right to self-service to include operators with long-term possession rights. For example, a significant number of aircraft operated by airlines are not owned, but

aircraft owner/operator or his/her employees with resources supplied by the aircraft owner or operator.

Moreover, the service must be conducted in accordance with reasonable rules, regulations or standards established by the airport sponsor. Any unreasonable restriction imposed on the owners or operators of aircraft regarding the servicing of their own aircraft may be construed as an exclusive rights violation. In accordance with the federal grant assurances:

**(1).** An airport sponsor may not prevent an owner or operator of an aircraft from performing services on his/her own aircraft with his/her own employees and equipment. Restrictions imposed by an airport sponsor that have the effect of channeling self-service activities to a commercial aeronautical service provider may be an exclusive rights violation.

> *An airport sponsor may not prevent an owner or operator of an aircraft from performing services on his/her own aircraft with his/her own employees and equipment.*



**(2).** An airport sponsor must reasonably provide for self-servicing activity, but is not obligated to lease airport facilities and land for such activity. That is, the airport sponsor is not required to encumber the airport with leases and facilities for self-servicing activity.

*The fact that a single business or enterprise may provide most or all of the on-airport aeronautical services is not, in itself, evidence of an exclusive rights violation. An exclusive rights violation is the denial by the airport sponsor to afford other qualified parties an opportunity to be an on-airport aeronautical service provider. The airport sponsor may issue a Request for Proposal (RFP)in a competitive offering for all qualified parties to compete for the right to be an on-airport service provider. (Photo: FAA)*

**(3).** An airport sponsor is under no obligation to permit aircraft owners or operators to introduce

---

are leased under terms that give the operator airline owner-like powers. This includes operational control, exclusive use, and long-term lease terms. The same is true for other aeronautical operators such as charter companies, flight schools, and flying clubs, all of which may very well lease aircraft under terms that result in owner-like powers. If doubt exists on whether a particular "operator" can be considered as the owner for the purpose of this guidance, the ADO will make the determination. (A listing of ADOs can be found on the FAA web site.)

fueling equipment or practices on the airport that would be unsafe or detrimental to the public welfare or that would affect the efficient use of airport facilities by the public.

**NOTE:** Fueling from a pull-up commercial fuel pump is not considered self-fueling under the federal grant assurances since it involves fueling from a self-service pump made available by the airport or a commercial aeronautical service provider.

**8.9. Exceptions to the General Rule.**

**a. Aeronautical Activities Provided by the Airport Sponsor (Proprietary Exclusive Right).** The owner of a public use airport may elect to provide any or all of the aeronautical services needed by the public at the airport. The airport sponsor may exercise, but not grant, an exclusive right to provide aeronautical services to the public. If the airport sponsor opts to provide an aeronautical service exclusively, it must use its own employees and resources. Thus, an airport owner or sponsor cannot exercise a proprietary exclusive right through a management contract. Note that while the policy technically extends to private owners of public use airports, private owners may not have the same immunity from antitrust laws as public agencies. A proprietary exclusive can be exercised only for fuel sales and support services, not for use of the landing area itself.

As a practical matter, most airport sponsors recognize that aeronautical services are best provided by profit-motivated, private enterprises. However, there may be situations that the airport sponsor believes would justify providing aeronautical services itself. For example, in a situation where the revenue potential is insufficient to attract private enterprise, it may be necessary for the airport sponsor to provide the aeronautical service. The reverse may also be true. The revenue potential might be so significant that the airport sponsor chooses to perform the aeronautical activity itself in order to become more financially self-sustaining. Aircraft fueling is a prime example of an aeronautical service an airport sponsor may choose to provide itself. While the airport sponsor may exercise its proprietary exclusive to provide fueling services, aircraft owners may still assert the right to obtain their own fuel and bring it onto the airport to service their own aircraft, but only with their own employees and equipment and in conformance with reasonable airport rules, regulations, and minimum standards.

**b. Single Activity.** The fact that a single business or enterprise may provide most or all of the on-airport aeronautical services is not, in itself, evidence of an exclusive rights violation. An exclusive rights violation is the denial by the airport sponsor to afford other qualified parties an opportunity to be an on-airport aeronautical service provider. The airport sponsor may issue a competitive offering for all qualified parties to compete for the right to be an on-airport service provider.[24] The airport sponsor is not required to accept all qualified service providers without limitation. The fact that only one qualified party pursued an opportunity in a competitive

---

[24] The grant assurances do not prohibit an airport sponsor from entering into long-term leases with commercial entities, by negotiation, solicitation, or other means. An airport sponsor may choose to select fixed-base operators (FBOs) or other aeronautical service providers through a request for proposals (RFP) process. If it chooses to do so, the airport sponsor may use this process each time a new applicant is considered. This action, in and by itself, is not unreasonable or contrary to the federal obligations.

offering would not subject the airport sponsor to an exclusive rights violation. However, the airport sponsor cannot, as a matter of convenience, choose to have only one fixed-base operator (FBO)[25] to provide services at the airport regardless of the circumstances at the airport.

**c. Statutory Requirement Relating to Single Activities.** Since 1938, there has been a statutory prohibition on exclusive rights (49 U.S.C. § 40103(e)) [independent of the parallel grant assurance requirement at 49 U.S.C. § 47107(a)(4)]. It currently states, "A person does not have an exclusive right to use an air navigation facility on which Government money has been expended." (An "air navigation facility" includes, among other things, an airport. *See* "Definitions" at 49 U.S.C. § 40102.)

This prohibition predates the parallel statutory grant assurance requirement enacted as part of the AAIA. It is independent of the grant assurance requirement.

Both statutory prohibitions contain an exception to permit single FBOs if it is unreasonably costly, burdensome, or impractical for more than one FBO to provide services, <u>and</u> allowing more than one FBO to provide services would reduce the space leased under an existing agreement between the airport and single FBO. Both conditions must be met for the exception to apply.

**d. Space Limitation.** A single enterprise may expand as needed, even if its growth ultimately results in the occupancy of all available space. However, an exclusive rights violation occurs when an airport sponsor unreasonably excludes a qualified applicant from engaging in an on-airport aeronautical activity without just cause or fails to provide an opportunity for qualified applicants to be an aeronautical service provider. An exclusive rights violation can occur through the use of leases where, for example, all the available airport land and/or facilities suitable for aeronautical activities are leased to a single aeronautical service provider who cannot put it into productive use within a reasonable period of time, thereby denying other qualified parties the opportunity to compete to be an aeronautical service provider at the airport. An airport sponsor's refusal to permit a single FBO to expand based on the sponsor's desire to open the airport to competition is not a violation of the grant assurances. Additionally, an airport sponsor may exclude an incumbent FBO from participating under a competitive solicitation in order to bring a second FBO onto the airport to create a more competitive environment.

A lease that confers an exclusive right will be construed as having the intent to do so and, therefore, constitute an exclusive rights violation. Airport sponsors are better served by requiring that leases to a single aeronautical service provider be limited to the amount of land the service provider can demonstrate it actually needs and can be put to immediate productive use. In the event that additional space is required later, the airport sponsor may require the incumbent service provider to compete along with all other qualified service providers for the available airport land.

---

25 A fixed-base operator (FBO) is a commercial entity providing aeronautical services such as fueling, maintenance, storage, ground and flight instruction, etc. to the public.

> ***The grant of options or preferences on future airport lease sites to a single service provider may be construed as intent to grant an exclusive right. Leases with options or future preferences, such as rights of first refusal, should generally be avoided.***

The grant of options or preferences on future airport lease sites to a single service provider may be construed as intent to grant an exclusive right. Therefore, leases with options or future preferences, such as rights of first refusal, should generally be avoided.

**8.10. UNICOM.**

The Federal Communications Commission (FCC) authorizes use of special UNICOM[26] frequencies for air-to-ground communication at airports. The primary purpose of the communications station is to disseminate aeronautical data, such as weather, wind direction, and runway information. They are used by aircraft in the air and on the ground for both preflight and post flight activities. Since UNICOM is supposed to be subject to the airport owner's control, its use by the airport, and the airport only, does not constitute a grant of exclusive rights to which the statutory prohibition of section 40103(e) would apply.



Since most federally owned airports are maintained and operated with federal funds appropriated for purposes other than the support of civil aviation (usually to accommodate a military or defense mission), the federal government is not subject to the exclusive rights prohibition. Such airports do not receive AIP funds and are not subject to grant assurances. Consequently, when the base commanders (or other federal government entities) grant operating rights to airlines and other aeronautical activities to meet their own transportation and civil aviation requirements (such as moving personnel and equipment), they are not subject to sponsor federal obligations. Similarly, the base commander of an active military base has no federal obligation to permit civilian operations at the air base. (Photo: USAF)

---

[26] UNICOM is a nongovernment air/ground radio communication station. It may provide airport information at public use airports where there is neither a tower nor a Flight Service Station (FSS).

To prevent conflicting reports, the FCC will not license more than one UNICOM station at the same airport. However, unless properly controlled, allowing an aeronautical service provider to operate the sponsor's UNICOM station on behalf of the airport sponsor could result in an advantage over competitors in attracting aeronautical users. When the sponsor fails to retain the station license in its own name and turns control of the license to a single service provider, the FAA may find the sponsor in violation of the prohibition against exclusive rights.

*The FAA will not license more than one UNICOM station at the same airport.*

**8.11. Implementation of Policy.**

**a. Voluntary Compliance.** When the sponsor engages in – or fails to extinguish – an exclusive right voluntarily, the FAA will find the sponsor in violation of the prohibition against exclusive rights and its federal obligations.

**b. Remedies**. When the FAA finds the sponsor in violation of the exclusive rights provision, and the situation remains uncorrected, FAA may withhold AIP grant assistance. In addition, FAA may withhold Facilities and Equipment (F&E) funding, except for equipment needed for safety or, generally as a last resort, seek reversion of the airport under the Surplus Property Act. (Chapter 2 of this Order, *Compliance Program*, discusses handling of grant assurance violations.)

Under certain circumstances, the FAA may also issue any orders it deems necessary. These orders are enforced through the federal courts.

**c. FAA Exception**. Where required for the national defense or deemed essential to national interest, the FAA may grant an exception to the remedies above.

**8.12. Military and Special Purpose Airports.**

**a. Applicability to the Federal Government.** The federal government is not subject to the exclusive rights prohibition. Since most federally owned airports are maintained and operated with federal funds appropriated for purposes other than the support of civil aviation (usually to accommodate a military or defense mission), such airports do not receive AIP funds and are not subject to grant assurances.

Consequently, when the federal government entity that owns the facility allows operating rights to airlines and other aeronautical activities to meet the government's own transportation and civil aviation requirements (such as moving personnel and equipment), the government is not subject to sponsor federal obligations. Similarly, the base commander of an active military base has no federal obligation to permit civilian operations at the air base.

**b. Joint Use Airports.** When a civilian airport sponsor obligates itself under FAA grant agreements or property conveyance agreements, that entity becomes subject to the same federal obligations as other sponsors regardless of whether the facilities are located on federal installations or whether they are operated under joint-use agreements with the Department of Defense (DoD) or other federal agencies. At joint-use airports, federal grant assurance obligations do not apply to areas within exclusive DoD control.

**8.13. through 8.18. reserved.**