

**FAA Airports**

# Q&As – FBO Industry Consolidation and Pricing Practices

*ACO-100, December 7, 2017*

## Background

Over the past several months, the FAA has received a number of complaints about fixed base operator (FBO) services at Federally obligated airports. Some users have voiced concerns over the rising costs of FBO services, including fueling costs, ramp fees, parking fees, and handling fees. Concerns have also been raised over significant, if not exclusive, FBO control over airport ramp parking and associated fees. Pricing practices could, in some cases, preclude reasonable access to public-use airports. Changes in the FBO industry in recent years have presented challenges for airport sponsors, FBOs, and their customers. The continuing consolidation of the FBO industry, the post-9/11 security demands placed on the airport and FBO, the lack of traffic volume to support FBOs, and airport sponsors' need to operate self-sustaining enterprises along with other variables have been factors that have put the FBO business under stress. Airport sponsors have no control over industry consolidation or local market forces, and the Federal government does not regulate the pricing of FBOs.

The FAA has prepared these Questions and Answers (Q&As) as a basis for discussion between the airport sponsor, the FBO, and aeronautical users on the issue of reasonable access, without unjust discrimination, at Federally obligated public-use airports.  These Q&As are based on existing statutes, guidance, precedent, and industry practices and are not an attempt to impose new regulations or policies on airports. It is acknowledged that not every concern raised by an aeronautical user is a violation of a Federal grant obligation and that variables may exist that impact how airport sponsors exercise their discretion in managing their facilities and operations. Aeronautical users should consult with their respective airport managers and local FAA field offices for further clarification.

## Question 1 - Which Federal Requirements Are Applicable to Matters Involving FBOs?

Federally obligated airport sponsors have a responsibility to ensure that FBO services and pricing practices are reasonable and applied in a non-unjustly discriminatory manner (Grant Assurance 22, *Economic Nondiscrimination*).  In any agreement, contract, lease, or other arrangement that grant a right to conduct aeronautical services to the public at the airport, the sponsor must *insert and enforce provisions* requiring the contractor to (1) furnish services on a reasonable, and not unjustly discriminatory, basis to all users and (2) charge reasonable, and not unjustly discriminatory, prices for services. See the FAA's *Policy Regarding Airport Rates and Charges* for additional information about the requirement that rates and fees imposed on aeronautical uses of the airport must be fair and reasonable and pricing methodologies with regards to setting fees, rates, and charges imposed.

Airport sponsors are prohibited from granting an exclusive right for the use of the airport, including granting an exclusive right to an FBO providing or intending to provide aeronautical services to the public (Grant Assurance 23, *Exclusive Rights*). In addition, airport sponsors are required to retain all rights and powers necessary to comply with Federal obligations (Grant Assurance 5, *Rights and Powers).* Airport sponsors are required to maintain a fee and rental structure for the facilities and services at the airport that will make the airport as self-sustaining as possible (Grant Assurance 24, *Fee and Rental Structure).*

The FAA recognizes that each airport is different and airport sponsors have discretion in managing their own facilities and procuring FBOs.   Many airport sponsors procure FBOs through a competitive bid process in an effort to augment and maximize investment and service offerings at a particular airport. Business realities and other factors can influence the terms of the agreements between airport sponsors and FBOs. However, Federal obligations are not met merely through competitive process. The quality and affordability of the services being provided to airport users may be factors in determining the reasonableness of airport access and related fees. Airport-specific circumstances, including funding and investment levels, are additional integral factors in determining whether certain fees are reasonable or unjustly discriminatory.

In summary, while seeking self-sustainability to the extent reasonable under the particular circumstances at the airport, airport sponsors have to make the airport available to users and service providers (1) on reasonable terms and without unjust discrimination, (2) without granting exclusive rights, and (3) while retaining the ability (Right and Powers) to comply with those obligations.

## Question 2 - What is the FAA's Role in Matters Involving FBOs?

The FAA has a statutory mandate to ensure that airport sponsors comply with their Federal obligations. To accomplish this, the FAA issues policies and guidance and investigates complaints, both informal [14 Code of Federal Regulations (CFR) Part 13] and formal (14 CFR Part 16). The FAA provides additional guidance and interpretations if requested. The FAA does not directly regulate the FBO industry at Federally obligated airports, except for some limited aspects of these operations that are subject to FAA safety regulations. Nor does the FAA approve airport leases with FBOs or regulate FBO market entry or exit conditions, investment or business models, cost-based rates, net operating revenues, adequate rates of return, mergers, and rates and charges schedules. However, if requested or if part of a complaint or compliance review, the FAA may review FBO leases or agreements to determine if they are consistent with the airport sponsor's Federal obligations. The FAA may also investigate an airport sponsor's alleged failure to enforce lease provisions that require FBOs to charge only reasonable, and not unjustly discriminatory, prices for services.

In cases in which airport users have concerns about rates and charges at a particular airport, it is incumbent on users to informally address these issues locally with the FBO first and then, when necessary, with the airport sponsor. Depending on the nature of the issues and the specifics of the case, the appropriate FAA Airport District Office (ADO) may be able to assist the parties in reaching a resolution. The FAA supports direct communication between airport users, airport sponsors, and FBOs, especially in matters involving airport access, fees, and rates and charges. Airport tenants and users

should engage in a dialogue with airport sponsors about tenant and user concerns before resorting to informal or formal actions under Part 13 or Part 16. These discussions may allow the unique circumstances at each airport to be considered and often allow all parties to reach a mutually satisfactory resolution of the issues raised.

## Question 3 - What is the Nature of the Airport Sponsor-FBO Relationship in Regard to Airport Fees and Reasonableness?

Generally, an airport sponsor-FBO relationship is a landlord/tenant relationship, governed by the contractual terms of a lease agreement. The terms of that relationship, to the extent necessary for the airport to remain in compliance with its grants, may be subordinated to the grant assurances. There is discretion on how these fees are assessed and collected.  Some airport sponsors assess and collect fees, while others assess and permit the FBO to collect the fees on its behalf.

Airport sponsors are obligated per Grant Assurance 22 to ensure the fees imposed upon users are reasonable and non-discriminatory. Airport sponsors cannot waive their Federal obligations via terms in their FBO leases or agreements. Airport sponsors should be prepared to consider claims of unreasonable and discriminatory service and unreasonable and discriminatory prices by FBOs.

Airport sponsors can manage and may affect the quality and pricing of services on the airport through a competitive procurement process and open communications with proposed or selected FBOs. Additionally, periodic review of FBO fee schedules may be an effective way to ascertain the levels and pricing of services being provided at the airport. However, it is important to keep in mind that airport sponsors may take into account additional factors that can influence pricing, including (1) capital investment of the FBO in physical facilities; (2) long-term financial commitment to operate an FBO; (3) positive economic impacts the FBO may have at the airport; (4) prevailing labor supply and corresponding rates, fuel inventory levels, and costs; (5) Federal and local policy requirements; (6) insurance requirements; (7) safety and related technical training initiatives; and (8) increases in rents and other fees paid by the FBO.

These factors may impact the economic vitality of an FBO.  When setting and monitoring rates, airport sponsors must give consideration to airport development policies and priorities.  For example, in cases where the airport sponsor requires FBOs to offer certain services, make improvements, and/or maintain facilities, the airport sponsor must consider these requirements when evaluating if airport fees are reasonable.

## Question 4 - What Is an Airport Sponsor's Role Concerning Exclusive Rights, Monopoly Powers, and FBO Consolidations?

An airport sponsor is prohibited from granting an exclusive right for the use of the airport.  Nor may an airport sponsor grant a special privilege to anyone providing aeronautical services on the airport or engaging in an aeronautical use. The intent of these restrictions is to promote aeronautical activity and protect fair competition at Federally obligated airports.

The existence of a single FBO at an airport does not necessarily mean the airport sponsor has granted an exclusive right or that an illegal monopoly exists. The FAA recognizes there are many reasons why there might only be a single FBO at an airport, including space limitations and the realities of market demand. Additionally, the airport sponsor has the right to establish itself as the sole FBO provider (Proprietary Exclusive Right) using its own employees.

While FBO acquisitions or mergers may trigger anticompetitive concerns, the FAA has no role to play in these matters except in the very limited circumstance when the acquisition conflicts with the airport sponsor's Federal obligations.

## Question 5 - How Do Airport Sponsors Control the Reasonableness of FBO Services at the Airport?

Airport sponsors are obligated to make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds, and classes of aeronautical activities, including commercial aeronautical activities offering services to the public. This responsibility includes the sponsor's own charges and those charges handled by a third party such as an FBO. Airport sponsors usually pass part of this obligation on to the airport's commercial tenants furnishing services to the public at the airport via the lease or use agreement. Using a third party FBO to provide services to the airport does not relieve the sponsor of its underlying duty to retain control per Grant Assurance 5.

A sponsor's reliance on FBOs, to a significant extent or not, does not diminish the sponsor's obligation to comply with its Federal obligations. These obligations cannot be contracted away. In accordance with Grant Assurance 22, airport sponsors are required to insert and enforce provisions into their contracts with FBOs requiring services on a reasonable and not-unjustly discriminatory basis to all users and reasonable and not-unjustly discriminatory prices for service.

In accordance with the Rates and Charges Policy, airport sponsors must employ a reasonable, consistent, and transparent method of establishing a rate base. Preferably, there should also be transparency in the development of airport user fees imposed by airport sponsors, including an explanation of how fees are developed and what operating costs are being recovered. In order to confirm whether airport fees are reasonable and not unjust discriminatory, the fees, rates, and charges should be disclosed and made publicly available. Airport sponsors may impose lease terms requiring an FBO to comply with certain service levels and pricing policies. Airport sponsors can also include provisions requiring an FBO to provide services that meet or exceed specified standards. Airport sponsors can periodically evaluate the charges and take appropriate steps to increase competition, which could include permitting a second FBO or providing an alternative transient ramp at a reasonable price commensurate with the use being made.

An airport sponsor's duty to ensure reasonable prices must account for the ever-evolving realities of the particular market and particular types of users of the airport where the FBO is located. These circumstances may impact an FBO's ability to operate. For example, capital expenditures required by the lease; regulatory compliance; procurement, storage, and distribution of fuel; and labor costs may all impact the cost of an FBO operation. FBO charges may vary depending on the type of customer and may

be based on aircraft size, operator activity level, applicable discount programs, and volume of sales. Simply having different charges for different users by itself does not constitute unjust discrimination. Moreover, it may not be appropriate to compare the prices at one airport's FBO to the pricing of an FBO located at a different airport because there may be different factors at play, including space limitations, location, or required capital expenditures. FBO pricing practices are very dependent on the specific aspects of any particular airport and may vary based on factors outside of the FBO's control.

### Question 6 - What Can an Airport Sponsor Do About High Pricing, Including Fuel and High Ramp Fees?

There are certain steps an airport sponsor can take to address pricing and other related FBO concerns. The following are some examples of some of the steps and actions that an airport sponsor can take:

1. Consider the relevant sections of FAA's *Policy Regarding Airport Rates and Charges* to the situation at the airport with regards to setting fees, rates, and charges;
2. Establish different classes of FBOs with different levels of service, that may include ancillary and support services;
3. Take over FBO services to address a shortcoming;
4. Establish self-service fueling;
5. Clarify the scope and detail of the right to self-service operations;
6. Adjust rules, regulations, leases, and minimum standards and review periodically;
7. Publicly disclose rates and charges for airport access and service;
8. Retain exclusive control over ramp areas;
9. Outline and address restrictions on exclusive leasing of Federally funded infrastructure, such as ramps;
10. In Requests for Proposals, require fuel pricing policies in agreement/leases; and
11. Require fuel price adjustments or imposed profit limits in local laws or ordinances.

### Question 7 - What Other Issues and Variables Are Relevant in Cases Involving Airports/FBOs?

There are many variables involved in airport/FBO cases. Each case depends on airport-specific circumstances, but certain concepts, facts, variables, mitigating factors, and issues may apply and include the following:

1. A recognition that the FBO industry is a for-profit service industry;
2. Reasonable rates and charges arise out of a balance between competing interests, including Federal obligations, the airport's financial interest, and profitable FBO operations;
3. Airport sponsors have discretion on how best to manage their airports for the benefit of all users;
4. The FAA has historically relied on market supply and demand to determine the availability of commercial aeronautical services;
5. The FAA strongly encourages sponsors and users to resolve business and economic issues at a local level;

6. Rates and charges imposed on the FBO have to be reasonable and non-unjustly discriminatory on their own right, and these will have an impact on the price of the services being offered to other airport users;
7. Whether an FBO's fees are reasonable involves a number of economic, business, and other factors that vary widely from airport to airport and FBO to FBO and may include underlying costs, market conditions, quality of service, and other factors; and
8. General aviation operations encompass a variety of different types of aeronautical uses, all of which may have different perspectives or needs affected by rates and charges and related airport actions.

## Question 8 - What Other Resources and References Are Available?

A. **FAA Guidance**
   1. 49 U.S.C. § 47107 and Airport Sponsors AIP Assurances (March 2014);
   2. FAA *Policy Regarding Airport Rates and Charges* (June 21, 1996);
   3. FAA Order 5190.6B, *Airport Compliance Manual* (September 30, 2009);
   4. 14 CFR Part 16 FAA, *Rules of Practice for Federally-Assisted Airport Enforcement Proceedings;*
   5. 14 CFR Part 16 Database at https://part16.airports.faa.gov/;
   6. *Airport Sponsor & Airport User Rights and Responsibilities* (2013);
   7. Advisory Circular (AC) 150/5190-6, *Exclusive Rights at Federally Obligated Airports* (2007); and
   8. AC 150/5190-7, *Minimum Standards for Commercial Aeronautical Activities* (2006).

B. **Non-FAA Guidance**
   1. FBO Guidance and Best Practices;
   2. Users and user groups' guidance (AAAE, ACI, AOPA, EAA, GAMA, NBAA, NATA, Net Jets, etc.);
   3. ACRP Reports, i.e., ACRP Report No 16, *Guidebook for Managing Small Airports* (2009); and
   4. Other professional guidance, i.e., journals, reports.

C. **Contact Information**

For additional information of if there are questions about this document, please contact

FAA Airport Compliance Division
ACO-100
800 Independence Ave., SW
Washington, DC 20591
(202) 267-3085