# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

UNITED STATES OF AMERICA,
*ex rel.* ROBERT V. SMITH,

       Plaintiff,

v.                                Case No. 3:20cv3678/MCR/EMT

JAY A. ODOM and OKALOOSA COUNTY,
BOARD OF COMMISSIONERS,

       Defendants.

_____/

## DEFENDANT JAY A. ODOM'S VERIFIED MOTION TO DISQUALIFY AND INCORPORATED MEMORANDUM IN SUPPORT

COMES NOW, Defendant Jay A. Odom ("Odom"), by and through counsel, and files this Verified Motion to Disqualify Relator Robert Smith's Law Firm as counsel for Plaintiff in these proceedings, and states:

1.    This is a False Claims Act case alleging that Mr. Odom used his company Sterling Diversified, LLC, as part of a "straw man" scheme to conceal Mr. Odom's ownership and control in obtaining an exclusive right for his Fixed Based Operations ("FBOs") at Destin Executive Airport ("DTS").[1]  Recently, the First

---

[1] Defendant Odom is filing contemporaneously a Motion to Dismiss with the instant Motion.  If the Court grants Defendant's Motion to Dismiss, the instant Motion is moot. *See Moore v. Accenture, LLP*, No. 06-15650, 2007 WL 3313152, at *4, fn. 4 (11th Cir. Nov. 9, 2007) (holding a Motion to Disqualify is moot if the Court dismisses the Complaint).

Judicial Circuit Court in and for Okaloosa County disqualified Relator's Counsel in a similar action against Mr. Odom, which is premised on many of the same allegations, parties, and theories that are being pursued in this action. *See* Def.'s Ex. A, Order, September 13, 2022, *Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069.[2]   In disqualifying counsel, the State Court found that Relator's Law Firm had an attorney client relationship with Mr. Odom and his entities, in 2011, when the Law Firm facilitated a multi-faceted transaction for Sterling Diversified, LLC to obtain ownership of a bank loan, and related security interests, in the Hammock Bay real estate development in Walton County.  Relator Robert Smith was the Plaintiff in that action and was similarly alleging that Mr. Odom's use of Sterling Diversified, LLC was part of a straw man scheme to conceal Mr. Odom's ownership.  Consistent with the State Court's ruling, Defendant Odom respectfully seeks the disqualification of Relator's Counsel in this action because

---

[2] Odom requests the Court take judicial notice of *Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069, pending in the First Judicial Circuit Court in and for Okaloosa County, Florida (hereinafter referred to as the "State Action"), and the Order of Disqualification therein, which is attached hereto as Exhibit "A." In that action, an evidentiary hearing was held on Odom's Motion for Disqualification on June 24, 2022. The transcript for that hearing contains confidential and privileged information and is subject to a pending motion to seal in the State Action. Additionally, there is relevant discovery in the State Action that is subject to a confidentiality order.  Defendant will be seeking leave from the State Court to file the transcript of the disqualification hearing and discovery under seal in support of the instant motion. If allowed, Defendant will then file a motion to seal the transcript and discovery requests as supplemental exhibits to this motion.

Relator's counsel previously provided legal services to Mr. Odom, and his related entities, in matters substantially related to the allegations in this action. Disqualification of counsel is appropriate pursuant to Rule 4-1.9 and 4-1.10 of the Rules Regulating the Florida Bar.

2.      "To prevail on a motion to disqualify under rule 4-1.9, the movant must show: (1) the existence of a prior attorney client relationship, and (2) that the matters in the pending suit are substantially related to the previous matter or cause of action." *EBSCO Gulf Coast Dev., Inc. v. Salas,* Case No. 3:15cv586/MCR/EMT, 2017 WL 10821039, at *2 (N.D. Fla. May 5, 2017).   "[T]he application of Rule 4–1.9 creates an 'irrefutable presumption that confidences were disclosed' between the former client and the attorney." *RJSG Properties, LLC v. Marbella Condo. Devs., LLC*, Case No. 3:08cv302/MCR/EMT, 2009 WL 3581637, at *7 (N.D. Fla. October 28, 2009) (quoting *Waldrep v. Waldrep,* 985 So.2d 700, 701–02 (Fla. 4th DCA 2008)). In evaluating a motion to disqualify, "any doubt is to be resolved in favor of disqualification."   *McPartland v. ISI Investment Servs., Inc.*, 890 F. Supp. 1029, 1031 (M.D. Fla. 1995).

3.      As recently recognized by the State Court, Relator's Law Firm had an attorney client relationship with Mr. Odom and his entities, as part of Sterling Diversified acquiring its interest in a loan secured by certain real estate.  As part of that multi-faceted transaction, in December 2011, the Law Firm acted as counsel in

obtaining a multi-million dollar loan held by Regions Bank, which the Law Firm assisted in transferring to HCB Financial Corp.  The Law Firm then formed an entity – HCB/Freeport Acquisitions, LLC ("HCB/Freeport"), which is now known as Regency Acquisition I, LLC, to be wholly owned by HCB Financial Corp.  The loan and security interests were then transferred to HCB/Freeport.  As part of this transaction, the Law Firm next facilitated and acted as the closing attorney to transfer HCB Financial Corp.'s membership interests in HCB/Freeport to Mr. Odom's company, Sterling Diversified, LLC.  Relator Robert Smith has alleged in two different lawsuits, which have been pending contemporaneously with this action, that the December 2011 transaction involving his own Law Firm was a straw man scheme initiated, controlled and implemented at every step by Mr. Odom using Sterling Diversified, LLC.  That is the same theory being pursued in this action against the same party using the same entity – Sterling Diversified, LLC.  One of these actions is now dismissed, and Relator's Law Firm has been disqualified from the other action.  Should this action not be dismissed, Mr. Odom respectfully requests that Relator's Law Firm be disqualified from this action as well.

4.     Relator Smith has taken the position that the creation of related entities by the Law Firm and the related transactions involving Sterling Diversified, LLC, in December 2011, were all done at the direction of Mr. Odom for the purpose of hiding his ownership and control interests to perpetuate various fraudulent schemes, similar

to that asserted in the Amended Complaint.  *See* Def.'s Ex., B, *U.S. ex rel. Smith v. Odom, et al.*, Case No. 3:19-cv-05064-MCR-HTC, at ¶¶ 3, 34-36, 55-67 (N.D. Fla. 2019) (alleging that acquisition of a loan (which was facilitated by the Plaintiff's current Law Firm) was done at the direction of Mr. Odom to defraud the government).[3]  The Amended Complaint in this action alleges that Mr. Odom used Sterling Diversified, LLC in a similar multi-faceted transaction as a straw purchaser to conceal his involvement in acquiring assets.  Those allegations are substantially similar to the Law Firm's prior representation, which immediately proceeded the events raised in the Amended Complaint and which the Relator himself claims was fraudulent and improper.

5.     In support of the primary theory in this case, the Amended Complaint expressly quotes and relies upon the allegations made in the contemporaneous State Action, from which the Law Firm was recently disqualified. *See* ECF. No. 33, at FN 5.  The prior representation in December 2011 and the present action are substantially related, under Rule 4-1.9, such that disqualification of counsel is proper. *See Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069, Okaloosa County, Florida (disqualifying Law Firm because of its role in Sterling Diversified, LLC's acquisition of loan, in December 2011).

---

[3] Odom requests this Court take judicial notice of *U.S. ex rel. Smith v. Odom, et al.*, Case No. 3:19-cv-05064-MCR-HTC (N.D. Fla. 2019).  Relator's Complaint for this action is attached as Def.'s Ex. B.

WHEREFORE, for the foregoing reasons and those set forth in the incorporated Memorandum of Law, Defendant respectfully requests that the Court grant the Motion to Disqualify Relator's Law Firm, that its attorneys be disqualified from representing Relator in the instant case, and that the Court grant such other relief as the Court deems just and proper.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY

## I.     INTRODUCTION

Relator's Law Firm ("Law Firm") should be disqualified as counsel for violating the firm's duty of loyalty to Mr. Odom as a former client in relation to prior legal services that involved his related entity Sterling Diversified, LLC ("Sterling") as well as Regency Acquisition I, LLC ("Regency").  The Amended Complaint expressly relies upon the use of both of those entities in support of Relator's claims that Mr. Odom used the entities to further fraudulent "strawman" schemes.  The Amended Complaint also relies upon the same strawman scheme alleged in the State Action, as evidence in support of the fraud alleged as to the Destin Airport.  *See* ECF No. 33 at ¶¶ 103-104, 113.  As the State Court found disqualification of Plaintiff's Law Firm proper in the State Action, Defendant Odom asks this Court to similarly find disqualification proper here.

In the Amended Complaint, the Law Firm, on behalf of Relator, alleges a "strawman" scheme in which Defendant Odom is alleged to have created and used

related entities, including the entity Sterling Diversified, LLC, to conceal his ownership interests for purposes of acquiring an improper exclusive right to provide services at the Destin Executive Airport ("DTS"). *See id.* at ¶¶ 1-14, 103-104, 113. In support of the scheme alleged, the Amended Complaint relies upon allegations related to Mr. Odom's ownership and control of the Law Firm's prior client, Regency Acquisition I, LLC, formerly known as HCB/Freeport Acquisition, LLC ("HCB/Freeport") and Sterling Diversified.  *Id.* at ¶ 103-104.  The Amended Complaint is premised upon the theory that Mr. Odom concealed his ownership interest in these companies to mislead and defraud the Government, as well as others during this time period.  *See generally* ECF. No. 33.  Given the Law Firm's prior role as counsel in facilitating one of the schemes cited in the Amended Complaint as evidence of the fraud alleged as to the Destin Airport, disqualification is proper.

## II.    FACTUAL BACKGROUND

Relator alleges that Mr. Odom utilized Sterling Diversified to conceal his ownership interest to cause fraudulent claims to be presented to the Government for payment or approval in violation of the False Claims Act.  ECF No. 33, ¶¶ 138, 160-61.  Relator further contends that Mr. Odom conspired with persons and entities, including Sterling Diversified, LLC, to violate the False Claims Act by creating and using such entities as fraudulent "strawmen".  *Id.* at ¶¶ 67-69, 153.  The crux of the Amended Complaint focuses on knowledge of, and use of, related entities to conceal

Mr. Odom's interest in Sterling to illicitly obtain interests in assets.   In 2011, immediately preceding the events alleged in the Amended Complaint, the Law Firm provided legal services to Mr. Odom and Sterling with knowledge of Mr. Odom's interest in Sterling and his use of related entities to acquire assets, which Relator Smith has contended were part of a strawman scheme to conceal Mr. Odom's interest and defraud the Government.   Def.'s Ex. B, *U.S. ex rel. Smith v. Odom, et al.*, Case No. 3:19-cv-05064-MCR-HTC (N.D. Fla. 2019), at ¶¶ 11, 56-67. In the course of that representation, Relator's Law Firm facilitated a multi-faceted transaction for Mr. Odom and Sterling.   *See* Def.'s Ex. A, Order; *see also* ECF No. 33 at FN5, ¶¶ 103-104, 113.

## A. The Law Firm Asserts a Position that is Adverse to Former Clients in this Action.

The crux of the Amended Complaint is that Mr. Odom used "strawmen" and "straw buyers," to conceal his ownership interest in, and to obtain an exclusive right for his Fixed Based Operations ("FBOs") at Destin Airport. These allegations are largely reliant upon the role and use of Sterling Diversified by Mr. Odom.  Specific to the Law Firm's conflict of interest, the Amended Complaint alleges:

> 68. Because **Defendant Odom controlled Sterling**, and therefore continued to have an exclusive right to provide aeronautical services to the public at DTS in violation of federal law, he gave the appearance that two separate FBO facilities were operating at DTS.

> 69. Again, highlighting **the illicit nature of this transfer of ownership, neither Odom, Sterling,** Regal Capital or Regal Air

notified Okaloosa County of this change in ownership. The change in ownership was a violation of the FBO leases and also relevant Grant Assurances.

\* \* \*

71. By March 2014, Okaloosa County knew of **Odom's ownership of Sterling**, and therefore also his ownership of Regal Capital and Regal Air Destin.

\* \* \*

103. In 2013, Ward executed documents **on behalf of Regency Acquisition 1, LLC**.  The 2013 annual report filed with the Florida Secretary of State for **Regency Acquisition 1, LLC list Sterling Diversified, LLC as manager** and Timothy Edwards as the Registered Agent.[4]

104. The 2013 annual report filed with the Florida Secretary of State for **Sterling Diversified listed Jay Odom**, Chester Kroeger and Timothy Edwards as managers **and Jay Odom as the Registered Agent**.

\* \* \*

112. On March 1, 2010, **Sterling Diversified LLC was formed and included Odom**, Chester Kroeger and Timothy Edwards as partners.

113. Regal Air's managing member was Regal Capital and Regal Capital's manager was **Sterling Diversified**. The 2014 Annual Report for Regal Capital, LLC listed the Current Principal Place of Business as 20001-A Emerald Coast Parkway, Destin, Florida 32541 and bears the electronic signature of Timothy Edwards **as Manager of Sterling Diversified, LLC** as Managing Member of Regal Capital, LLC. The address 20001-A Emerald Coast Parkway, Destin, Florida 32541 is the

---

[4] The Relator's Law Firm formed and acted as the registered agent for Regency Acquisition I, LLC, when its name was HCB/Freeport Acquisitions, LLC, including while it was owned and controlled by Sterling Diversified, LLC.

physical address of Chester Kroeger and Timothy Edwards' Fudpucker's restaurant. **The 2014 annual report for Sterling Diversified, LLC** list Chester Kroeger and Timothy Edwards as managers but does not include Odom. However, **Odom publicly admitted that he still holds a one-third ownership interest in Sterling Diversified.**

\* \* \*

153. By virtue of the acts described above, **Defendant Odom conspired with** Simmons, Ward, Miracle Strip Aviation, Kroeger, Edwards and **Sterling to commit violations of 31 U.S.C. §§ 3729(a)(1)(A), (B)**.

ECF No. 33, ¶¶ 67-69, 71, 74, 103-104, 112-113, 153.

Relator further contends that he is the original source of the information regarding an alleged scheme to defraud the Government through "strawmen" and "straw buyers" using Sterling and Regency. ECF No. 33, ¶ 131-135. Both of those entities were involved in Law Firm's prior representation that warranted disqualification in the State Action. *See* Def.'s Ex. A, Order. The Law Firm's prior legal services to Mr. Odom and his entities in 2011 and 2012, provided Law Firm with knowledge of Mr. Odom's ownership of and use of Sterling, which is the crux of the fraud alleged in the Amended Complaint. *See* ECF No. 33, ¶¶ 67-69, 71, 74, 103-104, 112-113, 153. Indeed, Mr. Odom relied upon Law Firm's legal services in using those entities to acquire assets, which Law Firm now challenges in multiple venues as fraudulent.

**B. The Law Firm Represented Mr. Odom and His Related Entities.**

As recognized by the State Court, the Law Firm had an attorney client relationship with Mr. Odom's companies in relation to Sterling Diversified, LLC's acquisition of the entity formed by the Law Firm – Regency Acquisition I, LLC. Def.'s Ex. A, Order, at ¶¶ 6-8.  Mr. Odom relied upon assurances from the other individuals involved in that transaction that the Law Firm had been involved in structuring and facilitating similar transactions and that the Law Firm would be involved in that specific transaction to ensure that it was proper.  Mr. Odom moved forward with that multi-faceted transaction based on his reassurance that the Law Firm, as counsel, was familiar with the purpose of these transactions and the process used, including the use of related entities owned by Mr. Odom.  *Id.*  It is that very transaction that Relator Smith alleged in a (now dismissed) prior *qui tam* action was a fraudulent strawman scheme and that the Amended Complaint cites to support the fraud alleged in this case.  *See* Def.'s Ex. B, *U.S. ex rel. Smith v. Odom, et al.*, at 3-11, 56-67 Case No. 3:19-cv-05064-MCR-HTC (N.D. Fla. 2019); *see also* ECF No. FN 5, ¶¶ 103-104; 113.

Further, Mr. Odom has worked with and is very familiar with the attorneys at the Law Firm, including Attorney Scott Campbell, whom he considered extremely knowledgeable and ethical.  Notably, the Law Firm, on its website, continues to promote that it maintains an attorney client relationship with Mr. Odom's other company Crystal Beach Development and markets that Mr. Odom, through this

11

company, trusts the Law Firm with his company's legal needs.  *See* Def.'s Ex. C, Law Firm Website, List of Clients (September 2022).  Mr. Odom reasonably relied upon the reassurance, in December 2011, that the Law Firm served in a role as counsel to Mr. Odom and his entities when he entrusted the Law Firm to ensure the propriety of Mr. Odom's ownership in Sterling Diversified and his use of that entity to acquire assets.  *See id.*

In addition to the present action, Relator previously filed a separate *qui tam* action in 2019,[5] which was never served on Mr. Odom as ordered by the Court, but was unsealed after Relator dismissed the case.[6]  Similar to the issues raised in the present cause of action, as well as the State Action, Mr. Smith claimed a fraudulent scheme by Mr. Odom of concealing his interests in "strawman" companies, including HCB Freeport/Acquisition (now named Regency Acquisitions) and Sterling, to defraud Regions Bank.  Case No. 3:19-cv-05064-MCR-HTC, at ¶¶ 2, 11-12.  Indeed, in the 2019 action, Relator claimed that, in December 2011, Mr. Odom orchestrated and implemented a multi-faceted scheme using different companies to acquire a loan from Regions Bank, to transfer the loan to different

---

[5] Even though the Law Firm did not formally appear as counsel of record in Case No. 3:19-cv-05064, at the time of its filing, Law Firm was counsel of record for the same Relator in the State Action, which was filed in 2017, and contemporaneously represented the same Relator in this action during the pendency of Case No. 3:19-cv-05064.

[6] Mr. Odom only discovered the case pursuant to his attorneys' own investigation.

companies (including a company formed by the Law Firm as part of the alleged scheme) and then to have Sterling Diversified acquire ownership of the company formed by the Law Firm to ultimately hold the loan.   *Id.*  at ¶¶ 53-58.  *See also* Def.'s Ex. A, Order, at ¶ 3, 6-8.  As recognized by the State Court in disqualifying the Law Firm in the State Action, it was Relator's Law Firm that acted as counsel and provided legal services in that transaction, on which Mr. Odom relied and which the Relator contends was a fraudulent straw-purchaser scheme to defraud the Government.

Similarly, in this current action, Relator claims the same type of strawman scheme, where Mr. Odom is allegedly using related entities, specifically Sterling, to hide his identity while acquiring various interests or assets.  *See* ECF No. 33, at ¶¶ 67-68.  Relator's position in his various cases, including the instant case, is directly contrary to Law Firm's prior representation of Mr. Odom and his entities, which included Law Firm's legal services for Mr. Odom and Sterling.  *See* Def.'s Ex. A, Order.  This 'switching sides' by Law Firm violates its duty of loyalty to Mr. Odom and his related entities, including Sterling Diversified.  *Kenn Air Corp.*, 593 So.2d at 1222-23.

## III.   LEGAL STANDARD

Although "[m]otions to disqualify are viewed as an extraordinary remedy to be granted only when absolutely necessary," disqualification is proper where the

movant demonstrates a compelling reason.  *EBSCO Gulf Coast Dev., Inc.*, 2017 WL 10821039, at *1.   "Opposing counsel may seek disqualification where the conflict of interest clearly calls into question 'the fair or efficient administration of justice.'" *Zarco Supply Co. v. Bonnell*, 658 So.2d 151, 154 (Fla. 1st DCA 1995) (citing Comment to Florida Rules of Professional Conduct 4-1.7 and 4-1.9).

Rule 4-1.9 of the Rules Regulating the Florida Bar prohibits an attorney or law firm from acting as counsel adverse to a former client in the same or a substantially related matter.  The Rule provides in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a)   represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> (b)   use information relating to the representation to the disadvantage of the former client except as rule 4.1-6 would permit with respect to a client or when the information has become generally known;
>
> (c)   reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating Fla. Bar 4-1.9.

The comments to Rule 4-1.9 explain:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. . . .

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client.

R. Regulating Fla. Bar 4-1.9 cmt.

Rule 4-1.10(a) provides that such a conflict for one lawyer in the firm will apply to all the attorneys in the law firm, even if not directly involved in the prior representation.  Rule 4-1.10(a) states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one (1) of them practicing alone would be prohibited from doing so by…Rule 4-1.9."  R. Regulating Fla. Bar 4-1.10. "Rule 4-1.9 is designed to protect client confidentiality and is aimed at the problem of attorneys 'switching sides.'"  *Estright v. Bay Point Improvement Ass'n, Inc.,* 921 So. 2d 810, 811 (Fla. 1st DCA 2006).

While disqualification of counsel is a drastic remedy, it is one necessitated by the circumstances to protect the law firm's former client, as well as the public perception and trust in the integrity of the judicial system and legal profession.  As the Fourth District Court of Appeal explained, the disqualification of an attorney is appropriate even to avoid the *appearance* of impropriety:

> [W]e believe the prudent course in this case is to disqualify counsel. Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance.  Thus, how much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if

not justice itself, and the public's interest in the integrity of the judicial process.

*General Acc. Ins. Co. v. Borg-Warner Acceptance Corp.*, 483 So.2d 505, 506 (Fla. 4th DCA 1986).

"To prevail on a motion to disqualify under rule 4-1.9, the movant must show; (1) the existence of a prior attorney/client relationship, and (2) that the matters in the pending suit are substantially related to the previous matter or cause of action." *EBSCO Gulf Coast Dev., Inc.,* 2017 WL 10821039, at *2.  Where a relationship between the former client and attorney is shown to have existed, "the party seeking disqualification must still demonstrate that the matter involved 'is the same matter or substantially similar to the matter' in which the attorney represented the moving party." *RJSG Properties, LLC,* 2009 WL 3581637, at *7 (quoting *Junger Utility & Paving Co. v. Myers,* 578 So.2d 1117, 1119 (Fla. 1st DCA 1989)).  "[C]ourts… consider a matter 'substantially related' if the current matter requires the lawyer to attack work he performed for the former client." *JDI Holdings, LLC v. Jet Mgmt., Inc.,* No. 3:07CV242/MCR/EMT, 2009 WL 3494182, at *1 (N.D. Fla. Oct. 26, 2009).  "[T]o meet the substantially related threshold, the former action need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *EBSCO Gulf Coast Dev., Inc.,* 2017 WL 10821039, at *3 (internal quotation marks and citation omitted); *see also United States ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc., et al.,* 101 F.

16

Supp.3d 1268, 1275 (S.D. Fla. 2015) ("Other considerations for determining whether matters are substantially related for the purposes of a disqualification motion include if the two matters involve the same subject matter, the same transactions, the same events, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client."). "[T]he application of Rule 4–1.9 creates an 'irrefutable presumption that confidences were disclosed' between the former client and the attorney." *RJSG Properties,* 2009 WL 3581637, at *7 (quoting *Waldrep v. Waldrep,* 985 So.2d 700, 701–02 (Fla. 4th DCA 2008)). In evaluating a motion to disqualify, "any doubt is to be resolved in favor of disqualification." *McPartland*, 890 F. Supp. at 1031.

## IV.  ARGUMENT

### A.  The Doctrines of Issue Preclusion/Collateral Estoppel and/or Comity Should be Applied to this Issue.

#### i.  Issue Preclusion/Collateral Estoppel

Based on the State Court's prior disqualification of Law Firm in a similar matter involving the same parties, the doctrine of collateral estoppel should be dispositive of this issue.  Should the Court determine the entire disqualification analysis is not resolved by application of collateral estoppel, issue preclusion should still prevent Relator from challenging the first element – the existence of a prior attorney client relationship.  In that event, this Court would need to address only the

second element as to whether the prior representation and present matter are substantially similar.

As noted above, on September 13, 2022, the State Court issued an order disqualifying the Law Firm in an action by the same Plaintiff and Law Firm against Mr. Odom asserting similar theories of a straw purchaser scheme using Sterling Diversified, to what is alleged now before this Court.   Def.'s Ex. A, Order. "[C]ollateral estoppel, or issue preclusion, bars re-litigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *Marrero v. Benitez,* No. 1:17-CV-21026-UU, 2017 WL 7796341, at *7 (S.D. Fla. Aug. 3, 2017) (internal quotation marks and citation omitted).   To invoke collateral estoppel, a litigant must establish:

> (1) the issue at stake must be identical to the one decided in the prior litigation;
>
> (2) the issue must have been actually litigated in the prior proceeding;
>
> (3) the prior determination of the issue must have been a critical and necessary part of the judgment that in earlier decision; and
>
> (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the latter case.

*Id.*

Here, the disqualification issue has been fully litigated and determined by the State Court to warrant disqualification of the Law Firm.  *See* Def.'s Ex. A, Order. Namely, the State Court adjudicated the following:

(1) <u>The Issue at Stake is Identical to the State Action:</u>  The State Court found a prior attorney client relationship existed between Relator's Law Firm and Mr. Odom, through his companies Regency and Sterling; and (2) that the prior relationship is substantially related to the "straw purchaser" schemes advanced by Smith against Mr. Odom, Sterling, and Regency. *See* Def.'s Ex. A, Order.  Defendant is asking the Court to make the same determination in this case.

(2) <u>Issue was Litigated</u>:  In the State Action, the Parties engaged in a several hour evidentiary hearing and wrote extensive briefing on Law Firm's disqualification.  *See Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069, Okaloosa County, Florida.  Following which, the State Court entered a written order setting forth findings of fact, conclusions of law, and disqualifying counsel.

(3) <u>Prior Determination was Critical and Necessary Part of Judgment:</u>  The State Court's ruling was critical and necessary as to granting Defendants' Motion for Disqualification. *See* Def.'s Ex. A, Order, at ¶¶ 3-10. Certainly, the existence of a prior attorney client relationship was an essential element for disqualification and would be the same issue before this Court.

(4) <u>The standard of proof was the same for this case and for the State Action.</u> The standards of proof in each action on this issue are the same.  *See Estright,* 921 So. 2d at 811 (applying Fla. Rules of Professional Conduct 4-1.9 and 4-1.10 in Motion for Disqualification of Counsel*); EBSCO Gulf Coast Dev., Inc.*, 2017 WL 10821039, at *3 (applying Rule 4-1.9 and 4-1.10).

Applying the doctrine of collateral estoppel, this Court should adopt the reasoning of the State Court and find that the Law Firm is estopped from further litigating the disqualification issue in the *qui tam* action.

If not wholly dispositive of this Motion, as a matter of issue preclusion, the first element – the existence of a prior attorney client relationship – should be deemed resolved and not to be re-litigated here.  In that event, this Court need only address whether the matters are substantially similar.   If Plaintiffs seek to appeal the State Court ruling, which has not been done as of this filing, Defendants ask that this Court defer ruling on this Motion and stay substantive litigation, until the State trial and appellate courts have finally resolved this issue.

### ii.    Comity

If the Court finds collateral estoppel is not applicable, the Court should follow the State Court's findings of disqualification on the principle of comity. Comity arises when there is tension between courts having concurrent jurisdiction over the same matter.  *See In re Massa Falida do Banco Cruziero do Sul, S.A.*, 637 B.R. 675, 692 (S.D. Fla. Mar. 3, 2022).

Under the doctrine of comity, one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.  *See id.* at 692-93.  Thus, the doctrine of comity is one of deference and

respect among tribunals of overlapping jurisdiction; in accordance with comity, the courts of one jurisdiction give effect to the judicial decisions of another, not as a matter of obligation but out of deference and respect.  *See id. at* 692-93.  "The rules of comity may not be departed from, unless, in certain cases for the purpose of necessary protection of our own citizens, or of enforcing some paramount rules of public policy." *Herron v. Passailaigue*, 92 Fla. 818, 823-24 (1926).  The concept of comity between federal and state courts, referred to by many as "Our Federalism", represents:

> ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris,* 401 U.S. 37, 44 (1971).  Therefore, as a matter of comity and to avoid inconsistent rulings, this Court should defer to the State Court's adjudication of the same issues on disqualification.  At the very least, the Court should adopt the State Court's findings of a prior attorney client relationship between Relator's Firm and Mr. Odom, through his companies, Regency and Sterling.

Notwithstanding application of the doctrines of collateral estoppel and comity, disqualification is appropriate in this action, as set forth below.

### B.  Prior Attorney Client Relationship

As recognized by the State Court, the first requirement of the disqualification analysis is met because the Law Firm had an attorney client relationship with Mr. Odom, involving his entities Sterling and its wholly owned company Regency.  *See* Def.'s Ex. A, Order, at ¶ 7.  Section 90.502(b), *Florida Statutes*, defines "client" as "any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer."  These legal services need not be significant and may include what the attorney characterizes as "administrative" but are still a legal service for which an attorney client relationship exists.  In a transactional setting, an attorney client relationship can form between the attorney and corporation, if the attorney is retained to provide even simple legal advice or services, such as forming an entity.  *See The Florida Bar v. Albert P. Town*, 174 So.2d 395 (Fla. 1965) (holding that forming of corporations is practice of law); *JBJ Investment of South Fla, Inc. v. Southern Title Group*, *Inc.*, 251 So.3d 173, 176 (Fla. 4th DCA 2018) (recognizing that attorney client privilege and attorney client relationship can exist between an attorney handling a real estate closing for a client the attorney never met); *Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C.*, 9 So.3d 651, 653 (Fla. 4th DCA 2009) (recognizing that attorneys' actions in forming "two Florida LLCs created for the purpose of acquiring the assets of an existing Florida corporation" was "necessary legal work").

The test for determination of an attorney client relationship "is a subjective one and 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.'" *Bartholemew v. Bartholemew*, 611 So. 2d 85, 86 (Fla. 2nd DCA 1992). "[I]n considering whether the attorney client privilege applies so as to disqualify an attorney from opposing a former client, the focus 'is on the perspective of the person seeking out the lawyer, not on what the lawyer does after the consultation.'" *Lane v. Sarfati,* 676 So. 2d 475, 476 (Fla. 3d DCA 1996) (citing *Dean v. Dean*, 607 So. 2d 494, 499 (Fla. 4th DCA 1992)). Even a fee or a formal retainer agreement is not necessary to form an attorney client relationship. *See Dean*, 607 So.2d at 500. The "law does not require a long-term or complicated attorney/client relationship to fulfill the first prong of the test for disqualification." *McPartland,* 890 F. Supp. 1029, 1031 (M.D. Fla. 1995).

The Law Firm, in its capacity as counsel, facilitated a complex and multi-faceted transaction to ultimately transfer control of assets to Mr. Odom's company Sterling Diversified. The Law Firm's legal services included facilitating the transfer of assets and millions of dollars in purchase funds, forming Regency Acquisition I, LLC, and facilitating the closing of the transaction to ensure Sterling Diversified ultimately obtained full ownership of Regency. Def.'s Ex. D, Corporate Filings of HCB/Freeport Acquisition, LLC. When Mr. Odom and Sterling Diversified participated in that transaction in 2011, Mr. Odom relied upon and consented to Law

Firm's continued involvement as counsel and reliance on the attorney client relationship and privilege with the Law Firm.  *See* Def.'s Ex. A, Order, at ¶¶ 6, 8.

Further, as part of that transaction, the attorney client relationship and privilege of the Law Firm with its client HCB Financial Corp., as the original owner of the Regency Acquisition entity, is now held by Mr. Odom and Sterling as the current owner of that subsidiary company.[7]  In a corporate merger or acquisition, any attorney client privilege maintained by the predecessor company passes to its successor.  *See Commodity Futures Trading v. Weintraub*, 471 U.S. 343, 349 (1985) (holding that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney client privilege passes as well").  Here, it is clear that control of the company formed by the Law Firm, pursuant to an attorney client relationship with the prior owner HCB Financial, transferred to its current owner, Sterling, which is controlled by Jay Odom.  *See* Def.'s Ex. A, Order on Motion for Disqualification, at ¶¶ 6-8. Indeed, in his prior *qui tam* action, Relator Smith expressly alleged all of these actions were taken at the direction of Mr. Odom.  *See* Def.'s Ex. B, *U.S. ex rel. Smith v. Odom, et al.*, at 3-11, 56-67 Case No. 3:19-cv-05064-MCR-HTC at ¶¶ 56-67. In this case, the Amended Complaint acknowledges Sterling's ownership of Regency Acquisition during the

---

[7] Originally, Regency Acquisition I, LLC was named HCB/Freeport Acquisition, LLC.  That entity changed its name on April 23, 2012.  *See* Def's Ex. D, Corporate Filings.

time the Law Firm provided legal services to Mr. Odom, which coincides with and immediately precedes the time period that Sterling allegedly perpetrated the strawman scheme alleged in this action. *See id.*; *see also* ECF No. 33, at ¶¶ 111-116.[8]

The Law Firm owes a duty of loyalty to its former client and his entities because an attorney client relationship existed with Mr. Odom, Sterling and Regency. Def.'s Ex. A, Order, at ¶¶ 6-7.  Indeed, based on the evidence, the State Court ultimately determined that an attorney client relationship existed between Law Firm and Odom, through his companies Sterling Diversified, LLC and Regency Acquisition I, LLC, formerly known as HCB/Freeport Acquisition I, LLC.  Def.'s Ex. A, Order, at ¶¶ 6-7.  The same evidence and reasoning applies here.

### C. The Instant Litigation is Substantially Similar to The Law Firm's Prior Representation.

Violation of the duty of loyalty warrants disqualification because of the appearance that the attorney is "switching sides." *Kenn Air Corp. v. Gainesville-Alachua County Regional Airport*, 593 So.2d 1219, 1222-23 (Fla. 1st DCA 1992) (holding that attorney should be disqualified when he formally represented a company's predecessor in interest because it "created the appearance of switching

---

[8] Sterling Diversified, LLC purchased the member interests of HCB/Freeport Acquisition, LLC, on December 21, 2011.  The allegations in the Amended Complaint allege the current fraud beginning in 2012.  Attorney Campbell is listed in HCB/Freeport filings as late as April 2012.

sides"); *Skyway Commns. Holding Corp.*, 415 B.R. 859 (M.D. Fla. 2009) (disqualifying attorney who represented predecessor-in-interest of opposing party and recognizing there would be inherent confidences shared with counsel that may be adverse to his prior client). Here, Law Firm's current representation violates Rule 4-1.9, including its duty of loyalty to a former client. *See* Def.'s Ex. A, Order, ¶¶ 2, 6-10. As Rule 4-1.9 imposes a duty of loyalty upon counsel, disqualification is appropriate, even where the representation does not involve an expectation of confidentiality. *See Brent v. Smathers*, 529 So.2d 1267, 1269 (Fla. 3d DCA 1988) (recognizing disqualification is appropriate even where there was no expectation of confidentiality due to the duty of loyalty owed to former clients); s*ee generally* ECF No. 33.

The Amended Complaint is premised upon the over-arching theory that Mr. Odom implemented a fraudulent conspiracy to create related entities, including using Sterling Diversified, LLC, to hide his ownership and to act as straw buyers to defraud the Government. ECF No. 33 at ¶¶ 9, 101-111. That theory is the same theory that Relator Smith has advocated in two other contemporaneous actions – in one of which the Law Firm has been disqualified as counsel and the other has been dismissed. *See Bay Loop Land Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069, Okaloosa County, Florida and its Order, Def.'s Ex A; *see also*

Def.'s Ex. B, *U.S. ex rel. Smith v. Odom, et al.*, Case No. 3:19-cv-05064-MCR-HTC
(N.D. Fla. 2019).

The basis for the Amended Complaint relies on the theory that Mr. Odom
utilized Sterling Diversified to conceal his interest in these transactions. Yet, in
2011, the Law Firm participated as counsel in just such a transaction, with
knowledge of Mr. Odom's ownership in Sterling. Now, the Law Firm and its current
client are challenging Mr. Odom's use of the Sterling entity as fraudulent, just as
they have alleged in other actions. *See* Def.'s Ex. B, *U.S. ex rel. Smith v. Odom, et
al.*, Case No. 3:19-cv-05064-MCR-HTC (N.D. Fla. 2019); *see also Bay Loop Land
Company, Inc., et al., v. Odom, et al.*, Case No. 2017-CA-002069, Okaloosa County,
Florida. The Amended Complaint puts at issue this prior representation by Law Firm
and its knowledge of Mr. Odom's role, ownership and use of Sterling and other
related entities, for which the Law Firm provided legal services immediately
preceding the events alleged in this action. *See* Def's Ex. A, Order.

The substantial relationship between the prior representation and the current
case is further evidenced by the Law Firm's own discovery in the State litigation,
which appears to have been intended to establish a pattern and practice by Mr. Odom
of using a straw-purchase scheme to acquire assets. In the State Action, the Law
Firm inquired into the purpose, formation and assets of numerous entities (including
Regency and Sterling), many of which appeared to have no involvement in the real

estate development at issue in that case, but which are directly alleged to have been involved in the fraud alleged in this case.  Notably, throughout discovery in the State Action, Relator's Law Firm propounded requests and inquired during multiple depositions as to the formation of Sterling and Regency, the purpose and use of Sterling and Regency, and Sterling's involvement with Regal Air and Fixed-Based Operations at the Destin Airport.[9]  As is evident from the Amended Complaint's allegations related to the State Action,  the Amended Complaint seeks to rely on the events in which the Law Firm previously provided legal services to bolster the fraud alleged in this case.  See ECF No. 33, at ¶¶ 67-69, 71, 74, 103-104, 112-113, 153. As such, the Law Firm will be challenging its own prior legal services, which creates the appearance, and indeed the reality, that the Law Firm is impermissibly 'switching sides.'

The Law Firm's prior representation and the issues raised in the current matter are substantially similar such that the Law Firm should be disqualified from the instant litigation.

---

[9] Discovery requests and deposition transcripts are subject to a Confidentiality Order in the State Action.  Defendant will be seeking a partial lifting of that Order to allow Defendant to file these requests and deposition transcripts as supplemental Exhibits under seal in support of the instant Motion.

### D.  This Motion Is Timely.

The filing of a Motion for Disqualification close to inception of the litigation does not waive disqualification.  *See Glob. Lab Partners, LLC v. Patroni Enterprises, LLC*, 327 So. 3d 453, 457 (Fla. 1st DCA 2021) (finding no waiver when Motion to Disqualify was filed between pleadings and discovery, a natural demarcation in the proceedings). Mr. Odom is raising this conflict immediately with the timely filing of a Motion to Dismiss the Amended Complaint.  Discovery has not begun, as the Amended Complaint was only recently unsealed and served on Mr. Odom.  Indeed, the Court has not issued a Case Management Order or set the matter for trial.  Therefore, this motion is timely filed.

### E.  Lack of Prejudice for a Relator in a False Claims Proceeding

The traditional concerns of prejudice arising from disqualification of counsel are significantly lessened, or eliminated, in a *qui tam* action being pursued solely by a Relator on behalf of the Government.  *See* 31 U.S.C. § 3730 (recognizing FCA claims are brought by private person "for the United States Government").  In this unique type of action, Relator litigates this action not on his own behalf or to remedy any alleged harm to himself, instead Relator is electing to voluntarily proceed only in a representative capacity on behalf of the Government. *See id.*  Thus, Relator does not have a direct interest in the litigation, its outcome or in the counsel that pursues the claim.

As required by the governing statutes, the Government had the opportunity to intervene in this action and prosecute this case directly, and the Government may intervene and take over this case at any time in the future, if the Government deems it appropriate. *See* 31 U.S.C. §§ 3729-31. While the Government chose not to intervene, had it invoked that right then or should the Government invoke that right in the future, neither Relator nor his Law Firm would have been, or will in the future be, directly involved in this litigation as a party. *See id.* Thus, Relator, who is pursuing this action solely as a matter of choice on behalf of the Government entities that declined to pursue this case, should not be heard to raise the same prejudicial concerns of an individual litigant who must pursue his or her own claims to protect the litigant's own individual rights. Any asserted prejudice is further minimized by the early stage of the proceedings which render Relator's actual prejudice in preparing and litigating this case on the merits with new counsel insignificant.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that the Court grant the Motion to Disqualify Law Firm, that its attorneys be disqualified from representing Relator in the instant case, and that the Court grant such other relief as the Court deems just and proper.

Respectfully submitted this 28th day of September, 2022.

/s/ A. *Benjamin Gordon*
**A. Benjamin Gordon**
Florida Bar No.: 528617
AnchorsGordon, P.A.

2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, Florida 32547
Telephone: 850-863-1974
Facsimile: 850-863-1591
Email:bgordon@anchorsgordon.com
      aizzo@anchorsgordon.com
      cyndi@anchorsgordon.com
      mary@anchorsgordon.com

and

*By: /s/ Peter J. Kirsch*
Peter J. Kirsch
Sarah Wilbanks
Nathaniel Hunt
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 Facsimile
pkirsch@kaplankirsch.com
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
*Co-counsel for Defendant Jay Odom*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

The parties engaged in an attorney conference in compliance with Local Rule 7.1(B).  However, the parties could not come to a meaningful resolution.

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the instant Memorandum contains 7,440 words.

## CERTIFICATE OF SERVICE

I CERTIFY that a that a true and correct copy of the foregoing has been electronically filed on the CM/ECF system for the Northern District of Florida,

which will send notification of such filing to the following attorneys of record: Mark Davis, Clark Partington, 125 East Intendencia Street, Pensacola, Florida 32591-3010, and Elizabeth Billhimer, Clark Partington, 4100 Legendary Drive, Suite 200, Destin, Florida 32541, attorneys for Relator; and to Lynn Hoshihara, Nabors Giblin & Nickerson, P.A., 1500 Mahan Drive, Suite 200, Tallahassee, Florida 32308, attorneys for Okaloosa County, and to David M. Sobotkin, U.S. Department of Justice, Commercial Litigation Branch, 175 N. Street, NE, Washington, DC 20002, attorney for the United States of America,  this 28th day of September, 2022.

/s/ A. *Benjamin Gordon*
**A. Benjamin Gordon**
Florida Bar No.: 528617
AnchorsGordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, Florida 32547
Telephone: 850-863-1974
Facsimile: 850-863-1591
Email:bgordon@anchorsgordon.com
aizzo@anchorsgordon.com
cyndi@anchorsgordon.com
mary@anchorsgordon.com

and

*By: /s/ Peter J. Kirsch*
Peter J. Kirsch
Sarah Wilbanks
Nathaniel Hunt
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7000
(303) 825-7005 Facsimile
pkirsch@kaplankirsch.com
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
*Co-counsel for Defendant Jay Odom*

32

## **<u>VERIFICATION</u>**

Under penalty of perjury, I, Jay Odom, individually and as corporate representative for Sterling Diversified, LLC and Regency Acquisition I, LLC, declare that I have read the foregoing Verified Motion and the facts alleged therein are true and correct to the best of my knowledge and belief.

_____

Jay Odom, Individually and as Corporate Representative of Sterling Diversified, LLC and Regency Acquisition I, LLC

Date: _September 27, 2022___