## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

UNITED STATES OF AMERICA
and THE STATE OF FLORIDA,
*ex rel.* ROBERT V. SMITH,

     *Qui Tam* Plaintiff,

v.                       CASE NO.: 3:20-cv-03678/MCR/ZCB

JAY A. ODOM; OKALOOSA
COUNTY, BOARD OF COUNTY
COMMISSIONERS,

     Defendants.

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
_____

Plaintiffs, United States of America and the State of Florida, *ex rel*. Robert V. Smith ("Relator"), through undersigned counsel, files this Opposition to Defendants' Motion to Dismiss (the "Opposition"). In support, Relator states:

## I.    ARGUMENT

### A.    <u>Standard of Review</u>

On a motion to dismiss, the Court "must 'view the allegations of the complaint in the light most favorable to the plaintiff[s], consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.'" *La Grasta v.*

*First Union Sec., Inc.,* 358 F.3d 840, 845 (11ᵗʰ Cir. 2004). For purposes of Rule 12(b)(6), a court generally may not look beyond the pleadings." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). A district court may, however, consider an extrinsic document on Rule 12(b)(6) review "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged[,]" *Id.* For analysis of public disclosure, however, the court may only consider information from the enumerated sources listed in the False Claims Act ("FCA"). 31 U.S.C. §3730(e)(4)(A).

### B.   Claims are Not Barred by Public Disclosure

Defendants' Motion glosses over the 2010 FCA amendments.  *See* Health Care and Education Reconciliation Act, Pub.L. 111–152 (2010). Defendants cite cases construing earlier versions of the FCA without apprising the court that earlier versions of the FCA are not applicable here.

The 2010 amendments narrowed the class of disclosures that trigger the public disclosure bar and radically changed the "hurdle" for relators. *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.,* 841 F.3d 927, 932 n.1 (11th Cir. 2016); *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294, 298 (3d Cir. 2016).

Relevant changes to the 2010 FCA are italicized below:

> (4)(A) *The court shall dismiss an action or claim under this section, unless opposed by the Government,* if substantially the

same allegations or transactions as alleged in the action or claim were publicly disclosed —

(i) in a *Federal* criminal, civil, or administrative hearing *in which the Government or its agent is a party;*

(ii) in a congressional, Government Accountability Office, or other *Federal* report, hearing, audit or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means *an individual* who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) *who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions,* and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. §3730(e)(4)(A), (B) (emphases added).

Information disclosed in a criminal, civil, or administrative hearing now qualifies as a public disclosure *only if* the information was disclosed in a federal case to which the government was a party. *Id.* Information disclosed in a federal or state case between private parties no longer constitutes public disclosure. *Osheroff*, 776 F.3d at 812.

The 2010 amendments also expanded the definition of "original source." Original source status now turns on whether relator has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *Majestic Blue Fisheries, LLC*, 812 F.3d at 299.  Significantly, Relator no longer must possess "direct ... knowledge" of the fraud to qualify as an original source.  The focus now is on what independent knowledge the Relator added to what was publicly disclosed.

The Eleventh Circuit applies the three-part *Cooper* test to determine if public disclosure bars an action: (1) have plaintiff's allegations been disclosed in the enumerated sources set out in the FCA; (2) if so, are the allegations in the complaint "substantially the same" as the allegations or transactions contained in public disclosures; and (3) if yes, is the plaintiff an "original source" of that information. *Osheroff*, 776 F.3d at 812.

### 1.      Allegations Were Not Publicly Disclosed

The court first determines if the "allegations" on which Relator's claims are based were publicly disclosed.   Because the *Cooper* test does not define "allegations," the Eleventh Circuit utilizes the formula set forth in *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994) to assess if information constitutes an "allegation."  *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1353–54 (11th Cir. 2021).

Under *Springfield*, "one generally must present a submitted statement or claim (X) and the true set of facts (Y), which shows that X is untrue. These two things together allow the conclusion (Z) that fraud has occurred." *Fresenius Med. Care Holdings, Inc.*, 841 F.3d at 935. There is no "allegation" of fraud unless each variable is present:

> [W]here only one element of the fraudulent transaction is in the public domain (e.g., X), the qui tam plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (e.g., Y) or allegations of fraud itself (e.g., Z).

*Id*.

Here, only limited facts are in the public domain, but those facts do not constitute "allegations" under *Springfield*. Moreover, those limited facts do not allow the conclusion that a fraud has occurred. Relator also has brought forth additional elements necessary to state a case for fraud and allegations of fraud itself. As a result, the public disclosure bar does not apply.

Defendants do not address the *Springfield* formula. Rather, Defendants incorrectly argue that any facts in the public domain that may also appear in the Amended Complaint[1] automatically invoke the public disclosure bar. Defendants do not analyze if the disclosed facts are "allegations" and/or if the allegations of fraud as alleged by Relator are in the public domain.

### a.    Defendants Rely On Sources Not Enumerated in FCA

---

[1]     Citation to the Amended Complaint, ECF 33, will appear as "Compl.¶___."

The FCA limits consideration of what allegations may constitute public disclosure to only those made in specific enumerated sources.  Allegations are considered publicly disclosed only if made "in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit or investigation; or from the news media."   31 U.S.C.A. §3730(e)(4)(A). Defendants stray from this statutory mandate and rely on information outside these enumerated sources.

It is undisputed that Relator's allegations were not disclosed in a <u>federal</u> court proceeding in which the Government was a party or a congressional, Government Accountability Office, or other <u>federal</u> report, hearing, audit or investigation.

Contrary to the FCA, Defendants seek judicial notice of facts from a state court case.  The FCA does not permit consideration of information from a state court case to analyze public disclosure. *Osheroff*, 776 F.3d at 812.  In any event, the state court case cited by Defendants does not contain any "allegations" of fraud at issue here.

Defendants' reliance on "public records pursuant to Florida public records laws" in considering public disclosure under the FCA is improper.  The 2010 amendments restricted public disclosure to allegations from "federal reports" not

state public records.  It is undisputed that no federal reports include allegations at issue in this case.

Notably, Defendants rely on *United States ex rel. Brown v. Bank United Tr. 2005-1,* 235 F. Supp. 3d 1343, 1359 (S.D. Fla. 2017) to argue that "public records" and materials obtained through discovery qualify as public disclosures under the FCA.  Defendants, however, fail to apprise the court that *Brown* specifically states that all of the conduct at issue in that case occurred prior to 2009.  As a result, the 2010 FCA amendments did not apply.  Rather, *Brown* relied on the prior, broader version of the FCA not applicable here.  The amended FCA does not allow consideration of state public records to analyze public disclosure.[2]

### b.    News Media Does Not Contain Allegations of Fraud

The term "news media" has a broad sweep. *Osheroff*, 776 F.3d at 813 (concluding newspaper advertisements and clinics' publicly available websites, intended to disseminate information about clinics' programs, qualify as news media for purposes of public disclosure provision). State court and public records, even if publicly available on a website, cannot properly be considered "news media." Doing so reads out other provisions of the FCA limiting consideration of only "federal" cases and reports when assessing public disclosure. *United States v. Fuentes-Rivera*,

---

[2]    Even if the FCA did not bar consideration of state public records, those records do not contain "allegations" of fraud under *Springfield*.

323 F.3d 869, 872 (11th Cir. 2003) ("[W]hen interpreting a statute, it is necessary to give meaning to all its words 'so that no words shall be discarded as being meaningless, redundant, or mere surplusage.'").

Defendants' Motion cites only two news articles properly considered "news media. Those articles did not put the government on notice of "allegations" of fraud alleged in the Complaint.

In "*Turburlence at Destin Airport*," certain facts appear that pertain to DTS. Notwithstanding, there were no "allegations" of fraud as defined under *Springfield*. In the article, Odom denied holding any interest in Regal Air. Moreover, the airport representative said "[i]f he [Odom] has acquired ownership of Regal Air, the first thing he needs to do is admit that" and "acknowledging that Odom has yet to formally document takeover of Regal Air."

Odom argued in the article that two FBOs could not co-exist at DTS in the environment of declining general aviation activity. Relator alleges this is false. The article notes that the County would require Odom to show proof of shrinking fuel revenue and numbers showing why it makes sense to have a single FBO. Relator alleges this was not possible and there was no reason to have a single FBO. Importantly, the article notes that if the county commissioners accepted Odom's proposal, "it would then take Odom's case to the FAA." Relator alleges the case was never taken to the FAA. In other words, there was no allegation of fraud in the

article.  Rather, the article only discussed particular facts but not allegations that constitute the fraud alleged in the Complaint.

In *Destin Airport Works to Resolve Possible FBO Anti-Trust Violation*, Odom again denies ownership of Regal Air.  Rather, Odom's entity, Sterling noted that it had "purchased only managing control of Regal Capital LLC, a separate legal entity that happens to be the owner of single-member LLC Regal Air Destin."  The article notes the airport authority agreed that fuel sales data suggested the airport could not support two FBOs and an "FAA review of the matter is expected before a decision to merge the two locations is made."  Relator alleges that information in this article is false and there was never an FAA review.

The information in the articles do not constitute "allegations" under *Springfield* and are insufficient to apprise the government of violations of grant assurances.  Importantly, these two articles pre-date the allegations of false claims created as a result of the County allowing Odom to merge the FBOs and operate as a monopoly.  At the time of the articles, the County had not yet sanctioned Odom's common ownership and branding of the FBOs.  As a result, Relator's allegations in that regard could not have been publicly disclosed through the news articles.

Notwithstanding the broad sweep of "news media," Defendants seek to rely on "public emails," "publicly disclosed annual report and financial statements," and "publicly available county agendas and grant applications" that are not "news

media." Defendants do not cite where "public emails"[3] and "publicly disclosed annual report and financial statements," are available on the internet at a particular internet site. The FCA no longer permits consideration of state public records requests when assessing public disclosure. With regard to "publicly available county agendas and grant applications," Defendants cite a link at https://onbase.okaloosaclerk.com/ that is not active and does not link to any documents. Because the site is not "readily accessible," it is not properly considered news media under the FCA. In any event, these other sources of information do not constitute public disclosure of "allegations" required by the *Springfield* formula.

### c.   Odom's 2012 Covert Purchase of Miracle Strip Aviation Was Not Publicly Disclosed

Allegations of Odom's 2012 covert purchase of Miracle Strip Aviation using Regal Capital, LLC and strawmen Phillip Ward and John Simmons were not publicly disclosed under the first prong of the *Cooper* test. *See* Compl.¶52-62; 101-110. Defendants do not contend otherwise and did not address these allegations in their Motion.

---

[3]   With regard to emails between the FAA and Okaloosa County, "public disclosure bar applies only where there has been a disclosure outside of the government." *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 256 F. Supp. 3d 443, 454 (S.D.N.Y. 2017); *United States ex rel. Chiba v. Guntersville Breathables, Inc.*, 421 F. Supp.3d 1241, 1260 (N.D. Ala. 2019).

Defendants suggest possible disclosure of certain facts from paragraph 118 in a news articles.   Motion at 11.   The article cited, however, does not include allegations of Odom's purchase of Miracle Strip Aviation using strawmen to create an exclusive right in 2012.  As alleged, Odom caused grant applications and requests for payment to be made during this period based on knowingly false or fraudulent information, which form the basis for claims under the FCA.  Compl.¶117, 120-121, 128, 130, 136-142.

### 2.    Facts in News Media Are Not Substantially The Same

The second prong of *Cooper* is not reached because "allegations," as defined under *Springfield* (and not just facts), were not publicly disclosed.

If the court disagrees, under the second prong the court analyzes if the Complaint's allegations are "substantially the same" as publicly disclosed "allegations" or transactions.  The key inquiry is if any disclosures could have put the government on notice of the fraud alleged in the complaint." *United States ex rel. Zafirov v. Fla. Med. Assocs. LLC*, No. 8:19-CV-1236-KKM-SPF, 2021 WL 4443119, at *7 (M.D. Fla. Sept. 28, 2021).   Several factors are considered in determining whether this standard is met: "whether relators present genuinely new and material information beyond what was publicly disclosed; whether relators allege 'a different kind of deceit'; whether relators' allegations require 'independent investigation and analysis to reveal any fraudulent behavior'; 'whether relators'

allegations involve an entirely different time period than publicly disclosed allegations; and whether relators 'supplied vital facts not in the public domain[.]'" *Foster v. PHH Mortg.*, No. 20-CV-4230, 2022 WL 4605096, at *8 (N.D. Ill. Sept. 30, 2022).

Any facts deemed publicly disclosed through the two news articles could not have put the government on notice of the fraud alleged in the Complaint. Relator alleges that some facts in the articles are false. The Complaint also contains a multitude of allegations not publicly disclosed. Relator mounts a viable FCA case because he has come forward with additional elements to state fraud and allegations of fraud.

Relator's "allegations" are not substantially the same as any publicly disclosed facts. Thus, Relator's Complaint is not barred.

### 3.    Relator is the Original Source

Where there is no finding of "public disclosure," of "allegations," the court does not reach the question whether relator is an "original source" of the information forming the basis of his suit. *U.S. ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1500 (11th Cir. 1991) (holding that "original source" inquiry only necessary after a factual determination that the *qui tam* suit is based on information publicly disclosed in the FCA enumerated sources). If the court finds any public disclosure, Relator addresses his status as an original source, defined as:

*an individual* who either (1) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) *who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions,* and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. §3730(e)(4)(B).

Relator has knowledge that is independent of and materially adds to any publicly disclosed information and provided that information to the government before filing this action. The genesis of Relator's independent knowledge is detailed in the Complaint and includes, for example, his continuous access over the years to operations at DTS and interactions with its employees. *See, e.g.*, Compl.¶44-47, 53, 76, 105, 107, 116, 133.

Defendants myopically focus on Relator no longer maintaining an aircraft at DTS after the early 2000s to try to minimize information Relator has collected as an original source. In particular, Defendants completely ignore Relator's other allegations "during all relevant time periods" regarding his work as a commercial pilot, being part of the local airport community, regularly interacting with the FBOs at DTS, having behind the gate access to the flight line and employees of the FBOs, and communicating with FBO employees and the airport community about operations and activities at DTS. *Id.*

Relator mounts a viable FCA case because he has come forward with additional elements to state a case of fraud and allegations of fraud. In particular, Relator has alleged, among other things, that Odom was the covert owner, through strawmen, of Miracle Strip Aviation (*see* 1.c. *supra*), during which time the County applied for and received payment on grants, and in fact, Odom later owned and controlled all of Regal Air, all of which rendered applicable grant assurances and requests for payment false. Relator also alleged that the basis for any proposed merger of the two FBOs as referenced in the articles was false, because actual economic conditions at DTS did not justify a merger. Relator alleged sufficient activity at DTS to support operations of two FBO. *See*, *e.g.*, Compl.¶72, 73.

Relator also alleges neither the County nor Odom took Odom's case to the FAA for review or approval. The FAA was never notified of the consolidation or merger of the two FBOs, which occurred after the news articles were published. Relator alleges this consolidation or merger violates the statutory exclusive rights prohibitions. Relator also alleges the FAA directed the County to obtain a legal opinion from the FAA Office of General Counsel, but the County never obtained a legal opinion. Compl.¶79-80. Moreover, Relator alleges the County did not notify the FAA of all relevant facts, including facts regarding the deal it ultimately reached with Odom giving him exclusive control over both FBOs at DTS. Compl.¶90.

Relator also alleges he was denied an opportunity to lease or develop a new FBO at DTS, which is a separate violation of grant assurances. Compl.¶91. Relator alleges the County denied his request based on lease agreements the County gave Odom and Destin Jet to avoid costly litigation, allowing Destin Jet to own and control both leases and operate as a monopoly for decades into the future. Compl.¶92.  Moreover, Relator alleges that the County also denied his request because there was no available land, notwithstanding that technically two FBOs still exist at DTS albeit with the County improperly allowing Destin Jet and its successors to operate both FBOs under a single brand to the exclusion of all others. Compl.¶93. Relator also alleged the County never disclosed to the FAA that it denied a request by another aeronautical service provider to operate at DTS. None of these allegations were publicly disclosed.

Defendants falsely argue that Relator went to the press and disclosed facts regarding DTS.  Motion at 5.  The Complaint does not allege Relator went to the press with facts contained in the articles.  On the contrary, as alleged, Relator went to Sunil Harmon, the County Airports Director, to discuss problematic changes at DTS. Compl.¶70, 135.  Harmon then raised the information in a County meeting, which was attended by a reporter who wrote an article.

## C.   Amended Complaint States a Claim

To state a claim under the FCA, plaintiff must plausibly allege that a defendant: (1) presented a false claim; (2) with knowledge that the claim was false; and (3) the false claim was material to the Government's decision to pay the claim. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015). The Complaint meets these elements. The Complaint alleges false claims were presented, Defendants knew their claims and underlying conduct was false or fraudulent and the false claims were material. Moreover, contrary to Defendants' contention, the government did not have prior knowledge of the allegations.

## 1.    Complaint Alleges the County Was Not in Compliance with Grant Assurances

The Complaint includes detailed allegations with regard to exclusive rights, including citation to the relevant statute, provisions of the FAA Compliance Manual 5190.6B,86 FR 68719 ("FAA Manual") and FAA case law. The Complaint also alleges non compliance with federal law, grant assurances, and exclusivity regulations.

The FAA Manual states "the sponsor [the County] may not grant a special privilege or a monopoly to anyone providing aeronautical services on the airport or engaging in an aeronautical use. The intent of this restriction is to promote aeronautical activity and protect fair competition at federally obligated airports." §8.1. Defendants selectively cite from the FAA Manual. In the same section cited

by Defendants, the FAA Manual states: "However, the airport sponsor cannot, as a matter of convenience, choose to have only one fixed-base operator (FBO) to provide services at the airport regardless of the circumstances at the airport." In collaboration and at the insistence of Odom, the County chose to have one entity operate two FBOs for convenience and to avoid costly litigation.

Defendants argue that a violation of an exclusive right occurs only when an airport sponsor unreasonably excludes a qualified applicant. On the contrary, the FAA Manual defines exclusive right:

> as a power, privilege, or other right excluding or debarring another from enjoying or exercising a like power, privilege or right. An exclusive right may be conferred either by express agreement, by imposition of unreasonable standards or requirements or by another means. Such a right conferred on one or more parties, but excluding others from enjoying or exercising a similar right or right, would be an exclusive right.

§8.2 The County, as airport sponsor, has the obligation to "operate the airport without granting or permitting any exclusive right to conduct any aeronautical activity at the airport." FAA Manual p.2-13.

Defendants cite provisions from the "Single Activity" section of the FAA Manual. Motion at 17. Defendants fail to explain that, at all relevant times after Odom built the second FBO, DTS did not involve a "single activity." Rather, DTS

had two FBOs with two separate leases, albeit both run as a monopoly by Odom and his successors.

Defendants also omit that in the same section, the FAA Manual explains that 49 U.S.C. §40103(e) prohibits exclusive rights even where there is a single activity. The only exception is where it is unreasonably costly, burdensome, or impractical for more than one FBO to provide services <u>and</u> allowing more than one FBO to provide services requires a reduction in space leased under an agreement existing on September 3, 1982, between the operator and the airport.  Both conditions must be met for this exception to apply.  DTS does not meet this exception.

As alleged, there originally was only one FBO at DTS.  Odom and the County sued to force the City of Destin to allow Odom to obtain a second FBO. Compl.¶51, n.1.  After opening the second FBO, Odom covertly gained control of the first FBO, knowing it would create an exclusive right. *Id.*¶5, 52, 62.  When the County became aware of Odom's actions, the County did not order Odom to divest his covertly acquired FBO interest or issue a competitive offering for others to compete to run the second FBO.  FAA Manual §8.9b. Rather, the County knowingly allowed Odom an exclusive right to continue ownership and control of both FBOs and never disclosed these facts to the FAA.

Because there were two FBOs at DTS, section §8.9d cited by Defendants about a second FBO reducing the space leased under an existing agreement with a single FBO does not apply. There were two FBOs and Odom did not have to reduce his leased space. Rather, the County allowed Odom to double his leased space to the detriment of competition and the public, even when Odom argued there was less public need. These actions violate the exclusive rights prohibitions. There is no justification in the law for allowing Odom and his successors to control both FBOs as a monopoly.

As alleged, Relator requested the County lease him an existing FBO at DTS or allow him to develop a new FBO. Compl.¶91-94. The County did not allow Relator to complete the application process or ask to assess his qualifications. *Id.* Rather, the County summarily rejected Relator by letter.[4] The County denied the request based on the "lease agreements" given to Destin Jet and Odom allowing them to exclusively operate both FBOs as a monopoly. *Id.* The County did not deny Relator's request based on qualifications or alleged failure to complete the application process as falsely argued by Defendants.

---

[4]     Relator requests that the Court take judicial notice of the rejection letter he received from the County. The letter is central to the allegations made in the Complaint.

The County falsely asserted there was no available land, even though two FBOs still exist at DTS that are exclusively operated under a single brand as a monopoly. These actions violate grant assurances against exclusive rights. As alleged, the County never disclosed to the FAA that it denied a request by another service provider to operate at DTS.

It is ironic that Odom raises qualifications to operate an FBO. When Odom's strawmen, Simmons and Ward, covertly took over Miracle Strip Aviation, their qualifications were not assessed by the County. Notwithstanding, the County allowed them to operate the FBO. It could be said that requiring others to go through a lengthy application process to assess qualifications but allowing Odom's strawmen to avoid that process, is the grant of a special privilege or right in violation of exclusive rights. *See City of Pompano Beach v. FAA*, 774 F.2d 1529, 1537 n.9, 1543 n.14 (11th Cir. 1985).

The Complaint alleges the County certified compliance with its grant assurances while knowing it had granted Odom special privileges and exclusive rights to the detriment of Relator and the public. Specifically, Odom and his successors were granted full control of two FBOs to the exclusion of everyone else. The County also improperly allowed Odom to extend the lease term of both FBO leases. Compl.¶124.

### 2. False Representations as to Grant Assurance Compliance Were Material to Government Payment Decisions

The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016).  The materiality element seeks to limit the scope of FCA liability to claims for which the government "would have attached importance to the violation in determining whether to pay the claim." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1300 (11th Cir. 2021).

No single factor is dispositive of materiality; relevant factors include: (1) whether the requirement is a condition of government payment, (2) whether misrepresentations went to the essence of the bargain, and (3) to the extent the government had actual knowledge of misrepresentations, the effect on the government's behavior." *United States ex rel. Bibby v. Mortg. Inv'rs Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021).

### a. Grant Assurances are a Condition of FAA's Grant Payments

"[T]he Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive" to the materiality analysis. *Mortg. Invs. Corp.*, 987 F.3d at 1347.  Since 1938, there has been a statutory prohibition on exclusive rights (49 U.S.C. §40103(e)), which is independent of the

parallel grant assurance requirement at 49 U.S.C. §47107(a)(4) ("A person does not have an exclusive right to use an air navigation facility on which Government money has been expended."). The term "exclusive right" was "intended to describe a power, privilege, or other right excluding or debarring another or others from enjoying or exercising a like power, privilege, or right." *City of Pompano Beach v. F.A.A.*, 774 F.2d 1529, 1542 (11th Cir. 1985). "The type of exclusive right prohibited by section 1349(a) has been described as 'one of the sort noxious to the anti-trust laws.'" *Id.* (citing *Aircraft Owners and Pilots Association v. Port Authority of New York*, 305 F.Supp. 93, 105 (E.D.N.Y.1969)).

For approval of grants, the Secretary of Transportation, by statute, requires written assurances that exclusive rights will not be given at airports. 49 U.S.C.A. §47107. "Upon acceptance of an AIP grant, the assurances become a binding contractual obligation between the airport sponsor and the federal government." FAA Manual §1.9.

Defendants knew the FAA would refuse to pay grant funds based on noncompliance with the prohibition on exclusive rights. *See Escobar*, 579 U.S. at 194-195 ("[P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.").

The FAA Manual makes clear that, if an exclusive right exists and no matter how it was created, the FAA will not award a sponsor an AIP grant until the exclusive right is removed from the airport.  §§ 8.4d; 8.11.b. Defendants cannot argue they were not aware of the importance of the exclusive rights grant assurances since they sought enforcement of those very same grant assurances when Defendants sued the City of Destin to reverse denial of Odom's application to establish a second FBO at DTS ("DTS Litigation").  Compl.¶51, n.2.

Federal law and regulations designate exclusive right grant assurances as a condition of grant award and payment.  *See Mortg. Invs. Corp.*, 987 F.3d at 1347 ("The relevant VA regulation clearly designates that requirement a condition to payment. . . . [and] weighs in favor of materiality."); *Skydance Helicopters, Inc. v. Sedona-Oak Creek Airport Auth.*, No. 16-02-02, Director's Determination (Mar. 7, 2003) (holding violation of grant obligations would result in withholding of grant funds without corrective action).  Defendants do not dispute that grant assurances are a condition of acceptance and payment of grants.  Therefore, this factor weighs in favor of materiality.

### b. Misrepresentations of Grant Compliance Go to Essence of the Bargain

"[O]ne factor in the materiality inquiry is whether the requirement at issue goes to the essence of the bargain with the government—i.e., whether the

requirement is a central part of the regulatory program." *Pinellas Hematology &*
*Oncology, P.A.*, 21 F.4th at 1301; *Mortg. Invs. Corp.*, 987 F.3d at 1347–48
(considering extent to which requirement "violated is central to, or goes 'to the very
essence of[,] the bargain.'")); *see also Escobar II*, 842 F.3d at 110 (considering the
centrality of the ... requirements in the context of the regulatory program).

     "The exclusive rights provision is the oldest federal obligation affecting
federally funded airports." FAA Manual §8.3b. "[T]he FAA deems that the grant of
an exclusive right at any airport upon which federal funds has been expended is
contrary to applicable federal law." *City of Pompano Beach v. F.A.A.*, 774 F.2d 1529,
1542 (11th Cir. 1985); *Boca Airport, Inc. v.* FAA, 389 F.3d 185 (D.C. Cir. 2004)
(discussing Grant Assurance 23, prohibition on exclusive rights and failure to end
exclusive right rendering airport ineligible for FAA grants); FAA Manual §8.3c.
(Title 49 contains prohibition against exclusive rights in three locations).  As agency
policy, "[t]he FAA considers it inappropriate to provide federal funds for
improvements to airports where the benefits of such improvements will not be fully
realized by all users due to the inherent restrictions of an exclusive monopoly on
aeronautical activities."  FAA Manual §8.4  The obligations under Grant Assurance
23, Exclusive Rights continue without limit as long as the airport is used as a public
use airport.  FAA Manual §4.6.

Here, the misrepresentations as to grant assurance compliance go to the very essence of the bargain.  Federal law does not allow the creation of exclusive rights. *City of Pompano Beach*, 774 F.2d at 1542 (prohibited exclusive right described as "one of the sort noxious to the anti-trust laws"); FAA Manual §8.4 (Federal statutory law prohibits sponsors from granting exclusive right).

Defendants do not dispute that false representations as to exclusive right grant assurances go to the essence of the bargain.  Therefore, this factor weighs in favor of materiality.

### c.     FAA Did Not Have Knowledge of Grant Assurance Violations

*Escobar* does not distinguish between inadvertent mistakes and intentional violations.  What matters is simply whether the government knew "that certain requirements were violated." *Mortg. Invs. Corp.*, 987 F.3d at 1349–50; *see United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017) (explaining analysis is focused on "what actually occurred" rather than on testimony that hypothesizes what might have occurred). "Assessing the government's actual knowledge requires that we drill down to when that knowledge was acquired, and what exactly the government learned." *Mortg. Invs. Corp.*, 987 F.3d at 1348 (citing *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 668 (5th Cir. 2017)) (finding no materiality as a matter of law only after determining there was

"no question about 'what the government knew and when'"). Here, there are still many questions about what the government actually knew and when it knew that preclude a finding of no materiality.

Defendants assert that the Complaint "establishes that, since at least 2013, the Government regularly approved the County's grant applications with knowledge of the FBO arrangements alleged by Realtor." Motion at 24. Defendants cite only to paragraphs 77-78 of the Complaint. Notably, although Defendants assert alleged knowledge "since at least 2013," paragraph 77 begins with "in or around September 2014." Defendants point to no facts that relate back to government knowledge "since at least 2013."

As alleged, the County reported to the FAA around September 2014 that Odom advised that Destin Jet had acquired ownership in Regal Air without the consent or approval of Okaloosa County and asked if the acquisition would result in Okaloosa County being in violation of its Grant Assurances 5 and 23.

Allegations regarding the FAA's response to the County's inquiry appear in paragraphs 78-79 of the Complaint. The FAA provided general information about the nature of federal compliance obligations and recommended the County review the lease agreement with its attorney to determine if Odom's actions constituted a breach of the lease. The FAA cautioned the County about issues related to exclusive

rights.  The FAA then suggested that the County obtain a legal opinion from the FAA Office of General Counsel.  Compl.¶79.

Defendants argue that this partial disclosure of information to the FAA renders the grant assurances immaterial because the government "knowingly" continued to pay funds.  Motion at 24.[5]  On the contrary, as alleged, the County never obtained a legal opinion from the FAA Office of General Counsel as recommended by the FAA.  Compl.¶80.  As a result, the FAA did not obtain additional information about the facts and circumstances surrounding Destin Jet's acquired ownership in Regal Air to assess whether an exclusive right was created.  Moreover, the County intentionally did not make the FAA aware of how the County ultimately handled the disclosure by Odom that Destin Jet had acquired an ownership interest in Regal Air without consent or approval of the County.  The County also did not tell the FAA it allowed Odom to obtain exclusive control of both FBOs at DTS and no other land was available on the airport for another FBO.  Thus, the FAA could not and did not know "that certain requirements were violated." *Escobar*, 579 U.S. at 195.

The FAA also was never apprised that the County allowed Odom to extend the lease terms with both FBOs and continued to allow Odom and his successors a monopoly for decades to come.  Moreover, the FAA was never apprised that another

---

[5]  Contrary to Defendants' assertion, the Complaint does not "concede" that the government made payments with knowledge of the FBO acquisition at DTS.

aeronautical service provider was denied an opportunity to lease an existing FBO or to develop a new FBO at DTS.  Compl.¶91-93.  In addition, the FAA was never made aware of Odom's actions in using strawmen Simmons and Ward to acquire Miracle Aviation in 2012.  As a result, it cannot be said that the government "knowingly" continued to pay funds when it did not know a majority of the relevant facts necessary to conclude grant assurance violations.

Defendants argue the FAA was fully aware an "exclusive right" issue *could arise in the future* but continued to bestow grants even with this knowledge.  Motion at 24.  With regard to materiality, the focus is whether the government knew "certain requirements were violated," (*Escobar*, 579 U.S. at 195), not whether violations could arise in the future.

At this stage, there is sufficient evidence to support a finding of materiality, where the grant assurances are a condition of payment, required by federal statute, and a central part of the FAA's regulatory program, but where there is insufficient evidence the government had actual knowledge of violations but continued to award and pay grants to DTS.  *See Mortg. Invs. Corp.*, 987 F.3d at 1351 ("And even if we viewed the VA's continued issuance of guaranties as "strong evidence" of immateriality . . . . [a] factfinder would still have to weigh that factor against others, including, as relevant here, the fee and charges requirement being a condition to payment and essential to the IRRRL program.").

**D.** **There Are Sufficient Allegations to Support Odom Acted Knowingly**

Liability under the FCA arises only when a defendant acted "knowingly." *See* §§3729(a)(1)(A) & (a)(1)(B); *Urquilla-Diaz*, 780 F.3d at 1058. Under the FCA, "knowing" and "knowingly" mean that a person: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and no proof of specific intent to defraud is required. 31 U.S.C. §3729(b). A defendant need not, however, have acted with the specific intent to defraud the United States. *Pinellas Hematology & Oncology, P.A.*, 21 F.4th at 1303. Reckless disregard is the lowest scienter threshold under the FCA. When Congress added reckless disregard to the FCA, it intended to capture "the ostrich type situation" where an individual buries his head in the sand and fails "to make simple inquiries which would alert him that false claims are being submitted." *Id.* A person acts with reckless disregard—and thus "knowingly"—under the FCA when he "knows or has reason to know of facts that would lead a reasonable person to realize that harm is the likely result of the relevant act." *Id.* Defendants can be said to have acted with actual knowledge given intimate knowledge of grant assurances and exclusive rights but at the very least acted with reckless disregard.

In 2012, Odom, while owning the second FBO, covertly purchased the first FBO, using strawmen. Compl.¶51,n.1. Odom was well aware of the exclusive rights

prohibitions.  *Id.*  As alleged, in the DTS Litigation, Defendants sued to establish a second FBO at DTS.  In the DTS Litigation, Defendants' relied on the "Exclusive Rights" prohibition in both the Federal Code and Federal Grant Assurances, arguing that the City of Destin was mandated to provide competition among aeronautical service providers at DTS.  Compl.¶51,n.1.[6]

Defendants argued in the DTS Litigation that, other than land used by the existing FBO and land eyed for a second FBO, any other property at DTS was wetlands and could not support a third FBO.  Importantly, before the DTS Litigation was filed, Odom testified at a quasi-judicial hearing before the City of Destin related to the creation of the second FBO:

> [T]his is the only remaining spot of the airport that can accommodate this facility.  And the County is required to provide a location for a second FBO under federal rules that they can't do something to create a monopoly environment.  So that's why there has to be a location for a second FBO.

Transcript, p. 19:9-15.  The DTS Litigation resulted in the City of Destin allowing Odom to build a second FBO at DTS.

Less than three years after invoking exclusive rights, grant assurances and federal law to obtain his FBO, Odom then covertly purchased all of the stock in the

---

[6]     Relator requests judicial notice of the Petition for Writ of Certiorari and Appendix 1 containing the Quasi Judicial Hearing Transcript filed by Defendants in the DTS Litigation referenced in and central to the Complaint.  Relator is filing a separate Request for Judicial Notice.

first FBO, Miracle Strip Aviation.   Compl.¶52.   Odom's actions in this regard created a monopoly and were directly contrary to the federally mandated requirement for competition at DTS.   *Id*.   Odom's actions caused the County to falsely certify compliance with grant assurances when making application for grants in violation of the FCA.   It is disingenuous for Defendants to now try to feign ignorance of the importance and materiality of the exclusive rights prohibition and grant assurances, when Defendants relied on the importance and materiality of those same exclusive rights prohibition in the DTS Litigation.

## E.   Fraud is Plead with Particularity

Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud" but may allege scienter generally. *Urquilla-Diaz.*, 780 F.3d at 1051.   To satisfy this heightened-pleading standard, the relator has to allege "facts as to time, place, and substance of the defendant's alleged fraud," particularly, "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.*

Relator has alleged fraud with particularity. As alleged, Odom and the County created an effective monopoly at DTS in violation of federal law.   The violations were material to the government's decision to pay grant money to the County.   In particular, the FAA Manual specifically states that the FAA "will not award a

sponsor an []AIP grant until that exclusive right is removed from the sponsor's airport." FAA Manual §8.4d.

Relator alleged in detail when, where and how the illegal monopoly at DTS was created, including, but not limited to, what actions Odom took to initially create the monopoly and what actions the County took to continue the monopoly. Moreover, Relator specifically alleged the false statements were made in claims to the government to obtain grant monies and provided a summary of grant monies the County received based on false statements and claims over the relevant time period. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943) (contractors' misrepresentation that they satisfied a non-collusive bidding requirement for federal program contracts violated the False Claims Act because "[t]he government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive").

As discussed *supra*, the grant assurances as detailed in the Complaint are central to the payment of grant funds. If the FAA knew about the false statements and violations of the prohibition on exclusive rights and other grant assurances, it never would have paid grant funds to the County. *See Escobar*, 579 U.S. at 196.

### F.   Complaint Does Not Demonstrate that Claims are Time Barred

Statute of limitations should not be resolved on Motion to Dismiss where all information to do so is not plainly set forth in the Complaint. A statute of limitations

bar is "an affirmative defense, and ... plaintiff[s][are] not required to negate an affirmative defense in [their] complaint." *La Grasta*, 358 F.3d at 845–46. "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Omar v. Lindsey,* 334 F.3d 1246, 1251 (11th Cir.2003). Moreover, the Florida FCA was amended in 2009 to define the limitations term solely on the basis of the Attorney General's knowledge of the facts giving rise to the claims. *Barati v. State*, 198 So.3d 69, 73 n.2 (Fla. 1st DCA 2016); §68.089(1), Fla. Stat.

Not all facts necessary to consider the affirmative defense of statute of limitations are apparent on the face of the Complaint. In particular, the issue of when facts material to the right of action were known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances or the Florida Attorney General are not apparent on the face of the Complaint.

The FCA provides that an action may not be brought more than 6 years after the violation is committed or "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last." §3731(b).

In *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1513 (2019), the Supreme Court held that the FCA's limitations discovery rule applies to a *qui tam* action in which the United States does not intervene. The Court further held that the commencement of the limitations period under the discovery rule depends on the knowledge of the United States official charged with responsibility to act, <u>not the knowledge of the relator</u>. *Id*. at 1514 (emphasis added).

Where the Government has declined to intervene, relators are permitted to bring suit after the expiration of the FCA's normal six year statute of limitations so long as the government official charged with responsibility to act does not know and should not reasonably have known of the alleged fraud. The Florida FCA contains a limitations discovery provision similar to the FCA. §68.089(1).

For purposes of analyzing the tolling provisions of the FCA, it is not apparent on the face of the Complaint when "the official of the United States charged with responsibility to act" knew or should have known of the alleged fraud *Id*. at 1513. Similarly, it is not apparent from the face of the Complaint when the Attorney General of Florida obtained knowledge of the relevant facts. Thus, the commencement of the limitations period under the FCA and Florida FCA discovery rule cannot be analyzed on a Rule 12(b)(6) motion to dismiss.

Accordingly, dismissal on statute of limitations grounds is not appropriate because it is not apparent from the face of the complaint that the claims are time-barred.

### G.     Florida FCA Claims Not Publicly Disclosed

The Florida FCA provides for dismissal only where substantially the same allegations or transactions as alleged in the action were publicly disclosed "in a … civil … hearing <u>in which the state is a party</u>." 68.087(3), Fla. Stat. Defendants argue that the initial unsealing of this case in December 2020 constitutes a public disclosure.  On the contrary, the State of Florida was not a party to this action when the earlier version of the Complaint was initially unsealed.  As a result, the unsealed complaint cannot constitute a disclosure in a "civil hearing in which the state is a party." *Id*.  Thus, dismissal is not warranted.

### H.     Dismissal With Prejudice and Award of Fees is Not Warranted

Defendants' arguments for dismissal with prejudice and for fees are unsupported.  In particular, Defendants sought dismissal on the basis of an earlier version of the FCA and relied on case law construing the old law. For all of the reasons set forth above, the Court should deny Defendants' Motion.

WHEREFORE, Relator, Robert Smith respectfully requests that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted this 28th day of November 2022.

> /s/ Elizabeth C. Billhimer
> **ELIZABETH C. BILLHIMER**
> Florida Bar No. 0121986
> CLARK PARTINGTON
> 4100 Legendary Drive, Ste. 200.
> Destin, Florida 32541
> (850) 650-3304 telephone
> (850) 650-3305 facsimile
> ebillhimer@clarkpartington.com
> fkendall@clarkpartington.com
> bgilman@clarkpartington.com
> *Attorney for Robert V. Smith*

## CERTIFICATE OF COMPLIANCE AS TO WORD COUNT

I hereby certify that, as required by Local Rule 7.1(F), this Opposition contains 7,947 words, counted as provided in Local Rule 7.1(F).

> /s/ Elizabeth Billhimer
> ELIZABETH BILLHIMER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by electronic mail via the Court's transmission of the Notice of Electronic

Filing to the following, this 28th day of November 2022:

A. BENJAMIN GORDON, III
Anchors Gordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, FL 32547
bgordon@anchorsgordon.com
aizzo@anchorsgordon.com
cyndi@anchorsgordon.com
mary@anchorsgordon.com

SARAH WILBANKS
NATHANIEL H. HUNT
PETER J. KIRSCH
Kaplan Kirsch & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
pkirsch@kaplankirsch.com
**COUNSEL FOR DEFENDANT**
**JAY A. ODOM**

GREGORY T. STEWART
LYNN M. HOSHIHARA
KERRY A. PARSONS
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 Facsimile
gstewart@ngnlaw.com
lhoshihara@ngnlaw.com

kparsons@ngnlaw.com
legal-admin@ngnlaw.com
**COUNSEL FOR DEFENDANT**
**OKALOOSA COUNTY, BOARD OF COUNTY COMMISSIONERS**

DAVID M. SOBOTKIN
Trial Attorney
U.S. Department of Justice
Civil Division, Fraud Section
Post Office Box 261
Ben Franklin Station
Washington, D.C. 20044
(202) 353-1291
David.m.sobotkin@usdoj.gov
**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**And by regular U.S. mail to the State of Florida**
ASHLEY MOODY, ATTORNEY GENERAL
Office of the Attorney General
State of Florida
PL-01 The Capitol
Tallahassee, FL  32399-1050

And

JIMMY PATRONIS, Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL  32399

*/s/ Elizabeth C. Billhimer*
**ELIZABETH C. BILLHIMER**