UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA
AND THE STATE OF FLORIDA,
*ex rel.* ROBERT V. SMITH,

     *Qui Tam* Plaintiff,

v.                    CASE NO.: 3:20-cv-03678/MCR/ZCB

JAY A. ODOM; OKALOOSA
COUNTY, BOARD OF COUNTY
COMMISSIONERS,

     Defendants.

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT JAY ODOM'S
VERIFIED MOTION TO DISQUALIFY**

_____

Plaintiffs, United States of America and the State of Florida, *ex rel*. Robert V. Smith ("Relator"), by and through undersigned counsel, files this Opposition to Defendant, Jay Odom's ("Odom") Verified Motion to Disqualify (the "Opposition"). In support of his Opposition, Relator states:

**I.    Introduction**

This action is brought by the United States of America, by and through *qui tam* Relator under 31 U.S.C. § 3729, *et seq*. as amended ("FCA") and § 68.083 *et seq*. Florida Statutes ("Florida FCA") to recover all damages, penalties, and other

remedies.  In cases involving the FCA, the plaintiff is the United States of America and/or the State, through the relator.  This action is brought on behalf of the government, as the real party in interest, not on behalf of relator, individually.

This case involves violations of federal law and grant assurances in connection with grant applications and requests for payment involving Destin Executive Airport ("DTS").  Defendant Okaloosa County is the airport sponsor at federally regulated DTS and is prohibited from granting an exclusive right for the use of the airport to anyone providing or intending to provide aeronautical services to the public.  Relator has alleged that Odom devised, orchestrated, and executed a scheme whereby he and his successors caused knowingly fraudulent and false statements by Defendant Okaloosa County to the federal and state government from 2012 to the present in order to induce payment on grant applications for DTS.  As a result, Okaloosa County, as airport sponsor, received millions of dollars in state and federal funding predicated on knowingly false and fraudulent statements.

## II.     Summary of the Argument

No conflict exists to justify disqualification.  There was no prior attorney-client relationship between Clark Partington ("CP") and Odom, individually.  Moreover, the matter in which CP was involved in 2011 is not the same or

substantially related to this *qui tam* matter, in which Relator represents the interests of the United States and the State of Florida.

Odom improperly seeks collateral estoppel of an order of disqualification ("State Order") from Okaloosa County Circuit Court action, *Bay Loop Land Company, Inc., et al v. Odom*, et al, Case No. 2017-CA-002069 ("State Case").[1] The State Order involves different parties, different representative capacity, different allegations, and different causes of action than this case.  In particular, neither the United States Government nor the State of Florida was a party to the State Case, nor could they have been, and Smith appeared in that action in his individual capacity, not in a representative capacity.

The analysis to determine if a prior matter is substantially related under Rule 4-1.9 is *not* whether this *qui tam* action is substantially similar to the State Case. Rather, the focus of the Court's inquiry is on the precise nature of the relationship between the representation in this case and an alleged representation by CP in 2011.

More than ten (10) years ago, in December 2011, an attorney at CP performed ministerial or administrative activities on behalf of HCB Financial Corp., a non-party entity to this action, for a period of no more than four (4) months and eleven

---

[1]    Smith has appealed the state court disqualification order and does not waive any arguments on appeal by referencing or discussing the State Order herein.

(11) days.  The ministerial or administrative matters consisted of electronically setting up a new entity, HCB/Freeport Acquisition, LLC ("HCB/Freeport"), with the Florida Secretary of State, Division of Corporations using form template documents available from the Sunbiz website on December 12, 2011.   Between December 21, 2011 and December 28, 2011, the activities consisted of assisting with recording documents in the Official Public Records of Walton County, Florida and disbursement of funds.  In addition, the attorney served as the entity's Registered Agent for approximately four (4) months and eleven (11) days from December 12, 2011 to April 23, 2012.  Both parties involved in the underlying transaction were represented by other, independent counsel.

HCB Financial purchased a portfolio of loans from Regions Bank.  Thereafter, two (2) loans from the portfolio were assigned to HCB/Freeport and upon assignment, the member interests in HCB/Freeport were purchased by Sterling Diversified, LLC ("Sterling").

During the period the CP attorney served as Registered Agent for HCB/Freeport, he was not required to accept service of any process for that entity, and CP did not represent HCB/Freeport in connection with any litigation.  Indeed, Odom testified in the State Case that CP was not involved in certain land transfers by HCB/Freeport during early 2012.

On April 23, 2012, <u>after</u> CP was removed as Registered Agent, HCB/Freeport changed its name to Regency Acquisition 1, LLC ("Regency Acquisition").  Odom does not allege that CP in any way continued its representation of HCB/Freeport n/k/a Regency Acquisition after April 23, 2012.

The allegations in this action do not involve or attack the creation of HCB/Freeport in 2011 or any alleged work done by CP between December 12, 2011 to April 23, 2012 for HCB Financial Corp.  Moreover, there is no evidence that CP has actually obtained any confidential information from HCB/Freeport which it is now in a position to use on behalf of Relator in this FCA case.  Thus, this is not a situation where CP obtained confidential information and then "switched sides." Indeed, counsel for Odom in the State Case advised the court that the case was not a confidentiality type case where there is an unfair tactical advantage.

The Amended Complaint does not reference HCB/Freeport.  There is only one reference to Regency Acquisition, the new name of HCB/Freeport, in connection with its 2013 Annual Report.  This 2013 reference was approximately one year after CP was removed as HCB/Freeport's Registered Agent.  The reference does not relate to or reference any work CP may have done involving HCB/Freeport between December 12, 2011 to April 23, 2012.

Further, the Amended Complaint does not reference Sterling until paragraph 67, alleging activity that occurred on or about January 1, 2014, which is after CP's work as Registered Agent of HCB/Freeport had concluded more than a year and half earlier.  All other references to Sterling in the Amended Complaint post-date CP's work between December 12, 2011 to April 23, 2012 in connection with HCB/Freeport.

Moreover, Odom affirmatively waived any right to seek disqualification by waiting more than twenty one (21) months from when he was served with the original, unsealed Complaint in December 2020, which contained the very allegations on which Odom now bases his Motion to Disqualify.  Odom proffered no excuse to explain the delay, thus waiving the issue.

## III.    Applicable Law

"Motions to disqualify are governed by two sources of authority," the local rules of the court in which they appear, and federal common law.  *U.S. ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc*., 101 F.Supp. 3d 1268, 1273–74 (S.D. Fla.), *aff'd*, 101 F. Supp. 3d 1280 (S.D. Fla. 2015).  "If a district court bases its disqualification order on an allegation of an ethical violation, 'the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.'" *Id.* (citing *Schlumberger Techs., Inc. v. Wiley,* 113 F.3d 1553,

1561 (11th Cir. 1997)). "Instead, '[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule.'" *Id.* Attorneys in Florida are governed in their professional conduct by the Rules Regulating the Florida Bar. *See* N.D. Fla. Local Rule 11.1(G).

Odom, as the party bringing the motion to disqualify, bears the burden of proving the grounds for disqualification. *In re: BellSouth Corp.,* 334 F.3d 941, 961 (11th Cir. 2003). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *Id.*

In a disqualification case, "[t]he focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations." *Herrmann v. GutterGuard, Inc*., 199 F. App'x 745, 752 (11th Cir. 2006). A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly." *Norton v. Tallahassee Mem'l Hosp.,* 689 F.2d 938, 941 n. 4 (11th Cir. 1982). A motion to disqualify brought by opposing counsel "should be viewed with caution ... for it can be misused as a technique of harassment." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006).

The alleged conflict in this case is governed by Florida Rule of Professional Conduct 4-1.9(a) as to former clients:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

FL ST BAR Rule 4-1.9(a).

Florida issue preclusion forecloses relitigation only if the parties and issues are identical, there was full opportunity to litigate the issues, the issues were actually litigated, and the issues were necessary to the prior adjudication. *Agripost, LLC v. Miami-Dade Cnty., Fla*., 525 F.3d 1049, 1055 (11th Cir. 2008) (citing *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.,* 945 So.2d 1216, 1235 (Fla. 2006)).

## IV. Argument

### A. Collateral Estoppel Is Improper Against Plaintiffs

Collateral estoppel or issue preclusion applies only when (1) the parties are identical with those from the prior case, (2) the issues are identical, (3) there was a full and fair opportunity to litigate the issues and they were actually litigated, and (4) those issues were necessary to the prior adjudication. *Agripost, LLC* 525 F.3d at 1055; *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1333 (11th Cir. 2010) ("[I]ssue preclusion can be applied offensively or defensively.").

#### 1. Parties are Not Identical

The parties in this case are not identical to the parties in the State Case. Florida law requires mutuality of parties for both defensive and offensive use

of issue preclusion. *E.C. v. Katz,* 731 So. 2d 1268, 1269 (Fla. 1999).  Odom ignored the mutuality of parties requirement.  Without mutuality of parties, issue preclusion is improper.

Under the FCA and Florida FCA, the real party in interest in this action is the United States Government or the State of Florida, not Smith, individually. *United States v. R&F Properties of Lake Cnty., Inc*., 433 F.3d 1349, 1359 (11th Cir. 2005) ("The United States is the real party in interest in a qui tam action under the FCA even if it is not controlling the litigation."); *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46, 48–49 (4th Cir.1992)) ("[T]he False Claims Act is concerned solely with false claims submitted to the government. The Act does provide for suits brought by individuals, but only as qui tam relators 'in the name of the Government.'"); *U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("While relators indisputably have a stake in the outcome of False Claims Act *qui tam* cases that they initiate, 'the Government remains the real party in interest in any such action.'").

"For res judicata purposes the determination as to his capacity in the transaction is binding on him only in the capacity in which he ... participated in the litigation." *In re Se. Banking Corp.*, 314 B.R. 244, 247 (Bankr. S.D. Fla. 2004). Section 36 of the Restatement (Second) of Judgments (2022) provides: '[a] party appearing in an action in one capacity, individual or representative, is not thereby

bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.'" *Fernandez v. Cruz*, 341 So.3d 410, 415 (Fla. 3d DCA 2022).  With respect to collateral estoppel or issue preclusion, "a party appearing in successive actions . . . is not precluded where the capacities in which he participated are different." *Id.*; *see United Auto. Ins. Co. v. Millennium Radiology, LLC*, 337 So.3d 834 (Fla. 3d DCA 2022); *Hill v. Colonial Enters., Inc.,* 219 So.2d 51, 53 (Fla. 4th DCA 1969); *Smith v. United Servs. Auto. Ass'n*, 259 So.2d 501, 502 (Fla. 1st DCA 1972).

Plaintiffs in this action are not the same parties as the State Case.  Smith participated in the State Case in his individual capacity.  In this *qui tam* case, Smith is participating in his representative capacity, as Relator on behalf of the United States and the State of Florida.  Thus, without mutuality of parties between this action and the State Case, issue preclusion is improper.  *Millennium Radiology, LLC*, 337 So. 3d at 838 ("While we recognize the judicial efficiency of applying the collateral estoppel doctrine in these cases, judicial efficiency is not an element of the doctrine.  Identity of the parties is[.]").

### 2.    Issues are Not Identical

The issues decided in the State Order are not identical to the issues in this action.  "Whether an attorney should be disqualified depends in large measure on the specific context of the case in which it is raised, and thus circumstances that

might not warrant disqualification in one case could warrant disqualification in another." *In re Emp. Discrimination Litig. Against Alabama*, 453 F.Supp.2d 1323, 1330 (M.D. Ala. 2001). "The rationale outlined by the Supreme Court in *Mendoza* for not applying nonmutual collateral estoppel against the government is equally applicable to state governments." *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1579 (11th Cir. 1985).

The State Order considered only allegations related to the State Case when assessing disqualification. The State Order did not consider the allegations in this case. The State Order also did not compare the allegations in this case to the work CP performed in 2011. The Amended Complaint makes clear that this FCA case is not identical to the issues examined in the State Order related to any alleged work performed by CP between December 12, 2011 to April 23, 2012 for HCB Financial Corp. involving HCB/Freeport.

This case is not even remotely related to CP's work in 2011. For example, CP's work in 2011 did not involve DTS or any activity at that airport. CP's work in 2011 did not involve Philip Ward or John Simmons or Odom's covert acquisition of ownership interest in Miracle Strip Aviation in 2012. Indeed, the Amended Complaint in this action makes no allegations or references regarding HCB/Freeport and its acquisition of loans in 2011.

This case involves allegations of false claims and statements to federal and state governments. The State Order did not consider the issue of false claims to governments. Moreover, the matters at issue in the State Case are not identical to the issues involved in this litigation. Significantly, there are no allegations <u>in this case</u> that the creation of HCB/Freeport in 2011 or the documents involved in the 2011 loan acquisition in any way represented false claims to the government. Because the issues are not identical, issue preclusion does not apply.

### 3.     No Opportunity to Litigate the Issues and Issues Not Actually Litigated

Because mutuality of parties does not exist, Plaintiffs, the United States and State of Florida, had no opportunity to litigate the issue of disqualification as it pertains to this case. Moreover, the issue of disqualification as it pertains to the allegations in this case were not considered in the State Order. There has been no opportunity to litigate whether the facts of this case are substantially similar CP's work in 2011 involving HCB/Freeport and the loan transaction.

Whether there has been a full and fair adjudication of an issue sufficient to justify application of collateral estoppel may turn on differences in the nature of the respective proceedings. *Cook v. State*, 921 So. 2d 631, 644–45 (Fla. 2d DCA 2005) ("What may have been a "full and fair opportunity to litigate," when considered in the context of the first proceeding, may not be sufficient when viewed in the context of the second proceeding."); *Fernandez v. Cruz*, 341 So. 3d 410, 415 (Fla. 3d DCA

2022) ("[R]egardless of mutuality, for collateral estoppel to apply, "[i]t is essential that the question common to both causes of action was [a]ctually adjudicated in the prior litigation."); *Seaboard Coast Line R.R. Co. v. Indus. Contracting Co*., 260 So. 2d 860, 864 (Fla. 4th DCA 1972); *see* Restatement (Second) of Judgments § 27 cmt. d ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this [doctrine]."). This case involves false claims to governments which are materially different than the claims at issue in the State Case. Accordingly, issue preclusion does not apply.

### 4.    Issues Were Necessary to the Prior Adjudication

The issue in question must not have only been actually litigated, but also necessary to the previous action, which is to say that the adjudication of the issue was essential to the judgment in the prior court. Because the issue in question was not litigated, assessment of whether adjudication was essential to the judgment is not reached.

### B.    Applying Comity Is Improper

The doctrine of comity is one of deference and respect among tribunals of overlapping jurisdiction; in accordance with comity, the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect. § 4:8. Comity, Federal Trial

Handbook: Civil § 4:8 (2022-2023 Edition).  There is no overlapping jurisdiction with respect to FCA and Florida FCA claims and the State Case.  Plaintiffs here could not have brought FCA or Florida FCA claims in the Circuit Court of Okaloosa County.

Odom cites no cases involving comity and the issue of disqualification of counsel.  Invoking comity in this case would abrogate Plaintiffs' right to have the fact intensive issue of disqualification, including assessment of whether this action is "substantially similar" to the work CP did in 2011 involving HCB/Freeport, decided on the merits of this case, not an unrelated State Case.  In particular, Plaintiffs in this action are not the same as the parties in the State Action, prohibiting collateral estoppel.

In his comity discussion, Odom cites to *In re Massa Falida do Banco Cruziero do Sul, S.A.*, 637 B.R. 675, 692 (S.D. Fla. Mar. 3, 2022).  This case in inapposite because it considered whether to grant comity to insolvency orders entered in Brazilian (foreign) proceedings.  The case did not involve a federal court granting comity to a Florida state court order on disqualification.

Similarly, *Herron v. Passailaigue*, 92 Fla. 818 (1926) is inapposite because it involved comity with regard to Florida recognizing a divorce decree from another state.  *Id*. at 819 (holding that neither the full faith and credit clause nor the rule of comity prevent a collateral attack on a foreign judgment for the purpose of

determining the applicability of either).  Further, *Young v. Harris*, 401 U.S. 37, 44 (1971) involved a court of equity at the federal level interfering with criminal prosecutions, an issue plainly not present in this case.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court considering whether an existing state-court judgment is entitled to res-judicata or collateral-estoppel effect is obliged to apply state preclusion law. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82 (1982).  Section 1738 embodies and underscores fundamental "concerns of comity and federalism."  *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1292 (11th Cir. 2018).

Consistent with the Full Faith and Credit Act, Relator has applied Florida State preclusion law in determining that the State Order is not entitled to collateral estoppel effect.

### C.    There is No Violation of Rule 4-1.9

#### 1.    Standard for Disqualification

Disqualification of an attorney is an extraordinary remedy and must be sought with "'reasonable promptness ... to prevent ... using the motion as a tool to deprive [the movant's] opponent of counsel of his choice after completing substantial preparation of the case.'"  *Lee v. Gadasa Corp.,* 714 So.2d 610, 612 (Fla. 1st DCA 1998).  Such motions are "generally viewed with skepticism because ... [they] are often interposed for tactical purposes." *Alexander v. Tandem Staffing Solutions,*

*Inc.,* 881 So.2d 607, 608–09 (Fla. 4th DCA 2004); *see also Key Largo Restaurant, Inc. v. T.H. Old Town Assocs., Ltd.,* 759 So.2d 690, 695 (Fla. 5th DCA 2000) (Griffin, J., dissenting) (noting that five-year delay in filing successful motion to disqualify constituted "litigation tactic" and caused other party prejudice). Defendants' motion is just such a litigation tactic.

The scope of CP and Scott Campbell's ("Mr. Campbell") limited involvement with HCB/Freeport is detailed in the Affidavit of Scott Campbell, attached hereto as Exhibit "1." More than ten (10) years ago, in or around December 12, 2011, Mr. Campbell electronically created an entity HCB/Freeport with the Florida Department of State, Division of Corporations. *Id.* The entity was created online using the Sunbiz default forms. *Id.* The entity HCB/Freeport was created on Sunbiz on behalf of HCB Financial Corp., a Florida corporation. *Id.*

Mr. Campbell was listed as the incorporator and the Registered Agent upon initial formation on December 12, 2011. *Id.* The April 11, 2012 Annual Report was not filed by Mr. Campbell or Clark Partington. *Id.* Rather, it was submitted by a Managing Member of HCB/Freeport. *Id.*

Mr. Campbell was replaced as the Registered Agent on April 23, 2012, by a Managing Member of HCB/Freeport immediately after the Managing Member filed the 2012 annual report, a mere four (4) months and eleven (11) days after initially

being appointed Registered Agent. *Id*. Mr. Campbell's only other role in this matter was to assist with the recording of documents in the Official Public Records of Walton County and disbursement of loan assignment proceeds. *Id*. This occurred between December 21, 2011 and December 28, 2011. *Id*.

Mr. Campbell did not provide legal advice with regard to the membership documents or the underlying loan transactions. *Id*. Rather, HCB/Freeport was represented in any underlying negotiations by counsel for HCB Financial, Jason Osborn, and Sterling Diversified was represented by its own counsel, John Dowd. *Id*. Mr. Campbell did not prepare any oral or written legal opinions regarding the underlying transactions. *Id*. Mr. Campbell's role in this matter was necessarily limited because at the time, Mr. Campbell was working on an unrelated, time sensitive matter that required him to be in New Orleans, Louisiana for a portion of this same period of time. *Id*.

Mr. Campbell was never contacted by Jay Odom or anyone on his behalf requesting that he provide Jay Odom, individually, legal advice or legal services with regard to the matter involving HCB/Freeport, the membership documents, or the underlying loan transactions. Mr. Campbell never spoke to Jay Odom about the HCB/Freeport matter, either before, during or after the HCB/Freeport matter.

Because Mr. Campbell's role in this matter was ministerial or administrative, he did not open a file for this matter and did not secure an engagement letter. *Id*. He also did not bill or collect a fee for this matter. *Id*.

Rule 4-1.9 regarding conflicts with former clients is applicable in this case. The two (2) pronged test for the party seeking disqualification is: (1) "that ... an attorney-client relationship existed [between the movant and the attorney or firm], thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship" and (2) "the matter in which the [lawyer or] firm subsequently represented the interest adverse to the former client [must be] the same or substantially related to the matter in which it represented the former client." *State Farm Mutual Automobile Insurance Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991).

## 2.    CP Did Not Formerly Represent Odom, Individually

Odom is a defendant in this action in his individual capacity. Odom, individually, was not a former client of CP. Although not given preclusive effect, the State Order reflects that any alleged attorney-client relationship was between CP and HCB/Freeport Acquisitions, LLC, not CP and Odom, individually.

> Defendant Odom reasonably believed there was an attorney-client relationship between Clark Partington and HCB/Freeport Acquisitions, LLC.

State Order at ¶ 8a.

Moreover, in the State Case, Odom did not argue an alleged attorney-client relationship between him, individually, and CP:

> At all material times, Mr. Odom understood that Clark Partington created the HCB/Freeport Acquisition entity, and that the law firm served as counsel for HCB Financial (as the parent company) for HCB/Freeport Acquisitions, as well as counsel for HCB/Freeport Acquisitions itself. Mr. Odom also believed that attorney-client relationship and protection would transfer to his company Sterling Diversified, when it acquired HCB/Freeport Acquisition.
>
> Mr. Odom understood that Clark Partington created the HCB/Freeport Acquisition entity, and that the law firm served as counsel for HCB Financial (as the parent company) for HCB/Freeport Acquisitions, as well as counsel for HCB/Freeport Acquisitions itself. Mr. Odom also believed that attorney-client relationship and protection would transfer to his company Sterling Diversified, when it acquired HCB/Freeport Acquisition.

May 23, 2022, Motion to Disqualify at ¶ 22.

Odom makes similar allegations here (Motion at 24), but in an attempt to twist facts and confuse, Odom feigns, without support, some attorney-client relationship with Odom, individually.   Motion at 24. ("In this case, the Amended Complaint acknowledges Sterling's ownership of Regency Acquisition during the time the Law Firm provided legal services to Mr. Odom, which coincides with and immediately precedes the time period that Sterling allegedly perpetrated the strawman scheme in

this action.").[2]  Odom provides no evidence of the nature and scope of any alleged relationship between Odom, individually and CP.

Odom testified at the State Case Motion for Disqualification Hearing that it was Sterling that purchased all of the member interests in HCB/Freeport, not Odom individually.  Moreover, Odom, individually, never spoke to Mr. Campbell, the lawyer at CP involved in the work related to HCB/Freeport.  Moreover, no one ever communicated with Mr. Campbell about CP providing legal services to Odom, individually.  Thus, Odom, individually, did not form an attorney-client relationship with CP.  Importantly, neither HCB/Freeport, Regency Acquisition, nor Sterling are parties to this suit.

Rule 4-1.13 provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."  The comments to Rule 4-1.13 explains that this Rule "does not mean, however, that constituents of an organizational client are the clients of the lawyer."  There is no evidence CP provided legal services or advice to Odom, individually.

---

[2]      Odom argues that Sterling Diversified, LLC purchased the member interests of HCB/Freeport Acquisition, LLC, on December 21, 2011 and that the Amended Complaint alleges the current fraud beginning in 2012. Odom disingenuously omits that the fraud alleged in this case beginning in 2012 did not involve Sterling. Rather, the alleged fraud in 2012 involved Odom using strawmen Ward and Simmons, which has no relationship whatsoever to CP's work in 2011 related to HCB/Freeport. The fraud involving Sterling in this case is not alleged to have occurred until 2014.

Because there is no evidence of an attorney-client relationship between CP and Odom, individually, for purposes of Rule 4-1.9, CP did not formerly represented Odom, individually, in a matter.  Thus, disqualification is not warranted.

Moreover, the administrative and minimal work performed by Mr. Campbell in 2011 does not compel the conclusion that any necessary attorney-client relationship existed.

Section 90.502(b), Florida Statutes defines "client" as "any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer."  The minimal, administrative activities performed by Mr. Campbell do not meet the attorney-client relationship test.

Defendants cite *The Florida Bar v. Albert P. Town*, 174 So. 2d 395 (Fla. 1965) but inaccurately paraphrase the holding as "forming of corporation is practice of law."  On the contrary, the decision is more detailed and the holding instructive for this case:

> We are of the view that the <u>preparation of charters, bylaws and other documents necessary to the establishment of a corporation, being the basis of important contractual and legal obligations</u>, comes within the definition of the practice of law as defined in the Sperry case, supra.

*Albert P. Town*, 174 So. 2d at 397 (emphasis added).

Here, unlike *Town*, Mr. Campbell did <u>not</u> prepare the charter, bylaws, operating agreement, or other documents necessary to the establishment of a corporation and containing important contractual and legal obligations.  Rather, Mr. Campbell used the default template forms available to the general public on Sunbiz to create an entity, HCB/Freeport.  It is axiomatic that Sunbiz is available for use by the general public, not just lawyers and creating an entity using the default template documents provided by the State of Florida does not constitute the practice of law. Rather, the template document to create an entity merely seeks factual information about the entity, such as the name and address, and does not require legal analysis. In fact, the State of Florida provides instructions, as well as the template forms, for use by the general public.

In interpreting *Town*, the court in *Sadarangani v. Bank of Am., N.A.,* No. 09-21001-CIV, 2009 WL 10699938, at *2 (S.D. Fla. July 7, 2009) held that "*Town* merely defines what constitutes the practice of law.  It does not address what constitutes giving legal advice, nor does it stand for the proposition that the legal documents or transaction spreadsheets created by BOA's counsel constituted legal advice to Plaintiffs."

The court in *Sadarangani* went on to state that "even if *Town* were interpreted as defining the giving of legal advice, it is still factually distinguishable from the instant case, because the legal documents in *Town* were incorporating documents

that were much more legally complex than the simple factual statements and agreements embodied in the affidavits, settlement documents, and spreadsheets in the present case." *Id*.  The court ultimately held that *Town* was inapposite and like in this case, does not require disqualification.  *Id*.

Odom further cites *JBJ Investment of South Fla, Inc. v. Southern Title Group, Inc.*, 251 So. 3d 173, 176 (Fla. 4th DCA 2018) but again misconstrues the holding by paraphrasing that "attorney-client privilege and attorney client relationship can exist between <u>attorney handling real estate closing</u> for a client the attorney never met." Motion at 22 (emphasis added).  In *JBJ Investment*, the facts established much more than just "handling a real estate closing" as inaccurately described by Odom:

> Here, the evidence viewed in the light most favorable to JBJ showed that: (1) JBJ wanted an attorney to <u>prepare the loan documents and review them for accuracy</u>; (2) JBJ's title agent, Ms. Goenaga, contacted Mr. Burgess on JBJ's behalf and <u>hired him to prepare the note and mortgage</u>; (3) Mr. Burgess <u>prepared the note and mortgage</u>; and (4) Mr. Burgess <u>accepted a fee for his legal services</u>.

*JBJ Inv. of S. Fla., Inc*, 251 So. 3d at 179.  This case is inapposite, because Mr. Campbell did <u>not</u> prepare a note and mortgage and did not accept a fee for his legal services.  *See* Exhibit "1."  Moreover, unlike *JBJ*, Mr. Campbell was never hired to provide legal advice to Mr. Odom, individually, Sterling, or to any other party in connection with HCB/Freeport.  *In re Lentek Int'l, Inc.*, 377 B.R. 396, 400 (Bankr.

M.D. Fla. 2007) ("Thus, an actual consultation is a prerequisite to forming a reasonable belief supporting an attorney-client relationship.").  Unlike *JBJ,* no one contacted Mr. Campbell on behalf of Mr. Odom, individually, or Sterling to perform legal services.

Odom also cite *Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C.*, 9 So. 3d 651 (Fla. 4th DCA 2009), a case concerning personal jurisdiction.  Odom again misconstrue the facts in his parenthetical that states: "recognizing attorneys' actions in forming 'two Florida LLCs created for the purpose of acquiring assets of an existing Florida corporation' was necessary legal work."  However, the actual facts are more detailed and instructive and not analogous to the facts of this case:

> In the underlying action for legal malpractice and breach of fiduciary duty, Beta alleged that Mintz and Fraade negligently failed to formalize a written operating agreement and/or other pre-incorporation document(s), executed by and among the members of Beta Acquisition prior to or contemporaneously with the filing of the Beta Acquisition Articles, which memorialized the rights, duties and liabilities of the managing members of Beta Acquisition. This failure, according to Beta, ultimately caused a dispute among its members which then resulted in a derivative action by one member against the other two.

*Beta*, 9 So. 3d at 652.  As with the other cases, there is no evidence that Mr. Campbell prepared a written operating agreement and/or other pre-incorporation documents executed by and among members of HCB/Freeport.

Accordingly, because there was no attorney-client relationship between CP and Odom, individually, Odom is not a former client of CP.

### 3.     CP's Limited Work in 2011 Is Not Substantially Related to this Action

The Florida Supreme Court explained the meaning of "substantially related":

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. . . .

In re Amendments to the Rules Regulating Fla. Bar, 933 So.2d 417, 445 (Fla. 2006).

The Amended Complaint makes clear this FCA case is not related to any alleged work done by CP between December 12, 2011 to April 23, 2012 involving HCB/Freeport. The 2011 transaction (creating an entity on Sunbiz and disbursing funds for loan acquisition) has nothing to do with the FCA allegations in this case. There is no overlap. The creation of HCB/Freeport on SunBiz for a loan acquisition is not at issue in this case and is not being attacked. Moreover, HCB/Freeport is not a party to this case. *Alters v. Villoldo*, 230 So. 3d 115, 118 (Fla. 3d DCA 2017) (holding disputes not substantially related where there is no overlap between the two representations; they do not involve the same underlying dispute or transaction; and lawyer will not be required to attack work performed").

Tellingly, Odom provided no evidence of the relationship between this matter and CP's work in 2011. Odom provided no documents from the 2011 HCB/Freeport

loan acquisition or any other documents to show a relationship to this case.  *See Galaxy Fireworks, Inc. v. Kozar*, 150 So. 3d 256, 258 (Fla. 2d DCA 2014) ("Evidence of the relationship between the matters might include pleadings or other documents from the earlier case.").  Odom's dearth of evidence in this regard is not surprising because this matter and the 2011 matter have absolutely nothing to do with each other.

Odom broadly cites from the Amended Complaint but disingenuously omits applicable dates for alleged conduct.  The Amended Complaint reflects that allegations regarding Sterling are dated in 2013, after CP's work as Registered Agent in connection with HCB/Freeport ended on April 23, 2012.  Moreover, the allegations in this case involving Sterling do not relate in any way to Sterling's acquisition of HCB/Freeport in 2011.

This case is not even remotely related to CP's work in 2011.  For example, CP's work in 2011 did not involve DTS or any activity at that airport.  CP's work did not involve Philip Ward or John Simmons or Odom's covert acquisition of ownership interest in Miracle Strip Aviation in 2012.  Indeed, the Amended Complaint makes no allegations regarding HCB/Freeport and its acquisition of a loan in 2011.

This case involves allegations of false claims and statements to the federal and state government regarding activities at DTS airport.  There are no allegations in this

case that creation of HCB/Freeport or documents used in the loan transaction in any way represented false claims to the government.

Odom attempts to confuse by trying to compare the present action to the State Case and a separate *qui tam* case. This comparison is improper because what matters is the comparison of this action to the former action in 2011 in which CP was involved.

When considering a motion for disqualification, the "lawyer's involvement in a matter can also be a question of degree." Rules Regulating Fla. Bar 4–1.9 cmt. (1992). "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id*. Here, the facts in this case does not reveal that a "changing of sides in the matter in question" has occurred. *See Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So. 2d 8, 10 (Fla. 3d DCA 1996) ("RCCL has not met its burden of demonstrating that there is a substantial relationship between cases Perez may have had access to and the cases at issue today.")

As reflected in Mr. Campbell's affidavit describing his administrative activities, the question of the degree of Mr. Campbell's involvement in the 2011 activities is minimal. There is nothing about creating an entity on Sunbiz and disbursing funds that can be justly regarded as "changing sides" in this matter. Mr. Campbell was not involved in drafting documents or negotiations.

In *J.M. Lumber, Inc. v. M.L. Builders, Inc*., 706 So. 2d 84 (Fla. 4th DCA 1998), the court held that a current representation in post-judgment execution proceedings against a corporation was <u>not</u> substantially related to the <u>prior incorporation</u> and real estate development activities, as well as some estate planning for corporate principals.  *See Alters v. Villoldo*, 230 So. 3d 115, 118 (Fla. 3d DCA 2017) ("Contrary to Alters's contention, this court's ruling in *Brent* did not modify Rule 4–1.9 by adding a new substantive prohibition which requires a lawyer to recuse in a lawsuit against a former client if the representation can be deemed "disloyal" or creates an "appearance of impropriety." Any such substantive change would have to be made by the Florida Supreme Court.").

In *Daily Management, Inc. v. Thomas*, 635 So. 2d 1049 (Fla. 4th DCA 1994), the court found a current action against a successor condominium developer and management company for a condominium association regarding association meetings and certain contractual responsibilities was not substantially related to a previous representation of the condominium association before turnover to unit owners, where meetings in question took place well after the firm ceased representing the association and the firm <u>did not draft the contract at issue</u>.

Here, Plaintiffs are not attacking the creation on Sunbiz of the HCB/Freeport entity.  There are no allegations in this case to suggest that the filing with the Florida Department of State, Division of Corporations was improper, inaccurate or false.

Moreover, there is no evidence that the disbursement of funds relates to this matter or is being attacked in this matter.  In addition, there is no evidence to suggest that Plaintiffs are attacking the services provided by HCB/Freeport's Registered Agent for the period December 12, 2011 to April 23, 2012.   Indeed, the duties of a Registered Agent are limited by statute.  § 605.0113, Fla. Stat.

Odom relies on *Kenn Air Corp. v. Gainesville-Alachua Cnty. Reg'l Airport Auth*, 593 So. 2d 1219, 1223 (Fla. 1st DCA 1992), but misconstrues its findings. Odom's parenthetical states:  "holding that attorney should be disqualified when he formally represented a company's predecessor in interest because it 'created the appearance of switching sides."  The court explained:

> As to the merits of the motion, it is undisputed that Ireland <u>had a long-standing relationship with Charter regarding its leases at the airport</u>. Thus, an irrebuttable presumption arises that Charter disclosed confidences to Ireland during that representation. To allow Ireland to represent a successor of his former client's adversary in a matter which appears to be substantially related to that in which Ireland previously represented the former client, Charter, creates the appearance that Ireland has switched sides.

Here, there is no evidence of a "long-standing relationship" between CP and Odom, individually, like at issue *Kenn Air*.

Similarly, Odom's reliance on *Skyway Commns. Holding Corp.*, 415 B.R. 859 (M.D. Fla. 2009) is misplaced because the facts are starkly different.  *Skyway* involved a law firm that previously represented plaintiff corporation <u>in a prior</u>

<u>litigation action</u> that involved the same underlying transactions as the litigation in which the firm was currently representing the defendant. Here, the 2011 loan transaction has no relationship whatsoever to this matter.

Accordingly, CP's limited work in 2011 is not substantially related to this action.

### D.    Odom's Motion is Untimely.

This action was originally unsealed on December 2, 2020. ECF 8. Odom was served on December 14, 2020. ECF 15. Counsel for Odom signed a Waiver of Service of Summons on December 16, 2020. *Id.* Counsel for Odom entered an appearance on January 11, 2020. ECF 17. On January 28, 2021, other Counsel for Odom sought leave to appear pro hac vice. ECF 19, 22. On February 12, 2021, Odom filed a Motion to Dismiss Relator's original Complaint. ECF 24. On February 26, 2021, Relator filed an Unopposed Motion for Extension of Time to File an Amended Complaint. ECF 31. On March 1, 2021, the Court granted the Unopposed Motion for Extension of Time to File an Amended Complaint until March 12, 2021. ECF 32.

On March 12, 2021, Relator filed the Amended Complaint under seal. ECF 33. The Amended Complaint remained sealed until July 21, 2022. ECF 50.

### 1.    Applicable Law for Waiver

An alleged former client may waive his right to seek disqualification, and waiver may also be implicitly found "where the former client, having every opportunity to do so, fails to object to a new relationship involving its former attorney." *SE Prop. Holdings, LLC v. Phillips*, No. 315CV00554MCREMT, 2016 WL 6246890, at *3–4 (N.D. Fla. May 24, 2016), report and recommendation adopted, No. 3:15CV554/MCR/EMT, 2016 WL 6272373 (N.D. Fla. Oct. 25, 2016) (citing *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir. 1988)). A party's failure to timely file a disqualification motion "operates as a waiver of its right to object." *Concerned Parents of Jordan Park v. Hous. Auth. of City of St. Petersburg, Fla.*, 934 F. Supp. 406, 408 (M.D. Fla. 1996).  Since failure to make a timely motion may result in waiver, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cox*, 847 F.2d at 729.

Analysis of whether a party has waived its right to object to the opposing party's counsel should consider the following factors: 1) the length of the delay in bringing the motion; 2) when the movant learned of the conflict; 3) whether the movant was represented by counsel during the delay; 4) why the delay occurred; and 5) whether disqualification would result in prejudice to the non-moving party. *In re Jet 1 Center, Inc.*, 310 B.R. 649, 654 (M.D. Fla. 2004); *see also INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1204 (D.C. Pa. 1984) (finding waiver

"when a former client was concededly aware of former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity").

### 2. Odom's Untimely Filing of Disqualification Motion Operates as a Waiver

The allegations upon which Odom seeks disqualification appeared in the original Complaint that was filed on February 26, 2020 (ECF 1) and served on Odom on December 14, 2020 (ECF 15). Allegations regarding Odom's use of straw buyers at DTS appears in multiple allegations in the original Complaint. ECF 1 at ¶¶ 5, 7, 9-10, 15, 47, 66-79, 82, 84, 89.

Notwithstanding Odom's knowledge of the allegations in the original Complaint when he was served on December 14, 2020, Odom waited twenty one (21) months and fourteen (14) days to file his Motion to Disqualify.

This case was unsealed from December 2, 2020 until March 12, 2021. At any point during that time, Odom had the opportunity to file his Motion to Disqualify. In particular, Odom could have filed his Motion to Disqualify when he filed his original Motion to Dismiss on February 12, 2021. ECF 24. Moreover, Odom could have filed his Motion to Disqualify even after the Amended Complaint was filed under seal. Odom has proffered no excuse for his failure to move for disqualification earlier.

By waiting more than twenty one months, Odom waived his right to move to disqualify. *See Med. & Chiropractic Clinic, Inc. v. Oppenheim,* No. 8:16-CV-1477-

T-36CPT, 2018 WL 4561783, at *6 (M.D. Fla. Aug. 10, 2018) (finding waiver where, despite being advised of operative facts, Defendants waited roughly seven months to seek disqualification); *Houston Specialty Ins. Co. v. Titleworks of Southwest Fla., Inc*., 2016 LEXIS 173164, at *9-10 (M.D. Fla. Apr. 12, 2016) (defendant's five-month delay in filing disqualification motion after becoming aware of potential conflict); *Arnett v. Mid-Continental Cas. Co.*, No. 8:08-cv-2373-T27EAJ, 2010 WL 11507481, at *2 (M.D. Fla. Apr. 13, 2010) (movant's inexplicable five-month delay operated as waiver); *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 11474915, at *2 (M.D. Fla. May 29, 2008) (finding a motion to disqualify was untimely when the moving party inexplicably waited "several months" to file it); *see also Transmark, U.S.A., Inc. v. State, Department of Insurance*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (holding waiver where party waited more than ten months after discovering information to support motion).

### 3.   Movant Learned of Conflict When Original Complaint Was Unsealed

Odom learned of the alleged potential conflict when the original Complaint was unsealed on December 2, 2020.  ECF 1, 8.  At the latest, Odom learned of the potential conflict when he was served twelve days later.  ECF 15.  As noted, the original Complaint contained the allegations regarding Odom's use of straw buyers

at DTS which is Odom's alleged basis for disqualification.  ECF 1 at ¶¶ 5, 7, 9-10, 15, 47, 66-79, 82, 84, 89.

### 4.     Movant was Represented by Counsel During the Delay

Odom was represented by counsel during the delay.  On December 16, 2020, counsel for Odom signed a Waiver of Service of Summons.  ECF 14.  On or about January 11, 2021 and January 28, 2021, other counsel for Odom entered an appearance in this action.  ECF 17-19.  Moreover, Odom was represented by counsel when he filed his first Motion to Dismiss on February 12, 2021.  ECF 24-25.  There is no reason why Odom could not have filed the Motion to Disqualify at the same time he filed his original Motion to Dismiss on February 12, 2021.

### 5.     Why the Delay Occurred

Odom proffers no justification, because there is none, for waiting more than twenty-one months to file his Motion to Disqualify.  By waiting almost two years, Odom appears to seek a tactical advantage through disqualification.  *Cox*, 847 F.2d at 728 ("A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed."); *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) ("We share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel").

6.      **Whether Disqualification would Result in Prejudice to the Non-Moving Party**

Plaintiffs, through Relator, Smith and his counsel will suffer prejudice if disqualification is granted.   The interests of Plaintiffs and Relator have been represented in this action by CP, both during the pre-litigation investigation phase and after suit was filed, which is a period of more than two (2) and a half years.  The facts of this case are complex and engaging new counsel would result in delay of the litigation and prejudice to Plaintiffs and Relator.

WHEREFORE, for the foregoing reasons, Plaintiff, Robert Smith respectfully requests that this Court deny Odom's Motion for Disqualification.

Respectfully submitted this 28th day of November 2022.

*/s/ Elizabeth C. Billhimer*
**ELIZABETH C. BILLHIMER**
Florida Bar No. 0121986
CLARK PARTINGTON
4100 Legendary Drive, Ste. 200.
Destin, Florida 32541
(850) 650-3304 telephone
(850) 650-3305 facsimile
ebillhimer@clarkpartington.com
fkendall@clarkpartington.com
bgilman@clarkpartington.com
*Attorney for Robert V. Smith*

## **CERTIFICATE OF COMPLIANCE AS TO WORD COUNT**

I hereby certify that, as required by Local Rule 7.1(F), this Opposition contains 7,932 words, counted as provided in Local Rule 7.1(F).

*/s/ Elizabeth Billhimer*
ELIZABETH BILLHIMER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by electronic mail via the Court's transmission of the Notice of Electronic

Filing to the following, this 28th day of November 2022:

A. BENJAMIN GORDON, III
Anchors Gordon, P.A.
2113 Lewis Turner Blvd., Suite 100
Fort Walton Beach, FL 32547
bgordon@anchorsgordon.com
aizzo@anchorsgordon.com
cyndi@anchorsgordon.com
mary@anchorsgordon.com

SARAH WILBANKS
NATHANIEL H. HUNT
PETER J. KIRSCH
Kaplan Kirsch & Rockwell LLP
1675 Broadway, Suite 2300
Denver, CO 80202
swilbanks@kaplankirsch.com
nhunt@kaplankirsch.com
pkirsch@kaplankirsch.com
**COUNSEL FOR DEFENDANT**
**JAY A. ODOM**

GREGORY T. STEWART
LYNN M. HOSHIHARA
KERRY A. PARSONS
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 Facsimile
gstewart@ngnlaw.com
lhoshihara@ngnlaw.com

kparsons@ngnlaw.com
legal-admin@ngnlaw.com
**COUNSEL FOR DEFENDANT**
**OKALOOSA COUNTY, BOARD OF COUNTY COMMISSIONERS**

DAVID M. SOBOTKIN
Trial Attorney
U.S. Department of Justice
Civil Division, Fraud Section
Post Office Box 261
Ben Franklin Station
Washington, D.C. 20044
(202) 353-1291
David.m.sobotkin@usdoj.gov
**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**And by regular U.S. mail to the State of Florida**
ASHLEY MOODY, ATTORNEY GENERAL
Office of the Attorney General
State of Florida
PL-01 The Capitol
Tallahassee, FL  32399-1050

And

JIMMY PATRONIS, Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL  32399


*/s/ Elizabeth C. Billhimer*
**ELIZABETH C. BILLHIMER**