## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**
**ex rel. ROBERT V SMITH,**

     **Plaintiff,**

**v.**                                    **CASE NO. 3:20cv3678-MCR-ZCB**

**JAY A ODOM,**
**OKALOOSA COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**

     **Defendants.**
_____/

## <u>ORDER</u>

Plaintiff/Relator Robert V. Smith filed a *qui tam* Amended Complaint pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3730, and the Florida False Claims Act ("Florida FCA"), Fla. Stat. § 68.081, *et seq.*, alleging that Defendant Jay A. Odom orchestrated a scheme to cause the Defendant Okaloosa County Board of County Commissioners ("County") to make and present false statements to the federal and state governments to induce grant payments for airport improvement projects.  The United States and the State of Florida declined to intervene.  ECF Nos. 8, 46.  Now before the Court is Odom's Motion to Dismiss the

False Claims Act Amended Complaint,[1] ECF No. 55, joined by the County, ECF No. 59. Having fully reviewed the matter, the motion to dismiss will be granted.

## I.    Background[2]

The Destin Executive Airport ("DTS") and two other local airports are sponsored[3] by the County, which obtains millions of dollars in grants from both federal and state government for airport improvements. Federal law requires, among

---

[1] Smith previously amended the complaint in response to a motion to dismiss the original complaint. Odom argues that the Amended Complaint includes many of the same defects, and he requested to leave to file a reply, which Smith opposed. The Court finds a reply unnecessary to resolve the motion and therefore the motion is denied as moot.

[2] For purposes of the motion to dismiss, the Court recites the facts as set out in the Amended Complaint, accepts them as true, and construes the allegations and reasonable inferences in the light most favorable to Smith. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (stating courts accept the factual allegations of the complaint as true and construe them in the light most favorable to the relator when considering a Rule 12(b)(6) motion to dismiss under the False Claims Act). Additionally, the Court may consider judicially noticed documents, *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015), and "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim, and (2) undisputed," such that its authenticity is not challenged, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, each side submitted a number of exhibits to be considered with the motion to dismiss and response. The Court has considered exhibits to which there is no objection, as they are central to the claims and not disputed. *See Cisneros v. Petland, Inc*., 972 F.3d 1204, 1214 n.1 (11th Cir. 2020) (considering an affidavit attached to a motion to dismiss that had been quoted in the complaint); *Long v. Slaton*, 508 F.3d 576, 577 n.3 (11th Cir. 2007) (considering an investigative report because its "authenticity and veracity are unchallenged"). There is no objection to Smith's exhibits, ECF No. 71, and Smith does not object to Odom's Exhibit A (March 29, 2014 news article), Exhibit B (FAA compliance manual—made complete by Smith's exhibits), Exhibit C (FAA policy and practice), and Exhibit J (May 8, 2014 news article), *see* ECF No. 57–1, 2, 3, 10. The Court has not considered Odom's remaining exhibits; consequently, Smith's remaining objections are moot.

[3] An airport "sponsor" is any public agency or private owner of a public use airport. *See* 49 U.S.C. § 47102(26).

other things, that an airport sponsor receiving financial assistance through federal grants must agree and assure the government that it will not permit an "exclusive right" for the use of the airport by any person who provides aeronautical services to the public—that is, a fixed-base operator ("FBO").  *See* 49 U.S.C. § 47107(a)(4).[4] The gravamen of the Amended Complaint is that Odom engaged in a scheme to fraudulently obtain an exclusive right of use at DTS by "covertly" securing ownership of both of the only two FBOs providing services at DTS, which in turn caused the County to make and present material false assurances to the state and federal government regarding exclusive rights in applications for state and federal airport improvement grants, which resulted in the approval of those grants over a period of several years.

The lengthy Amended Complaint recounts the relevant history of FBOs at DTS and their ownership to demonstrate how Odom obtained control.  Initially, Miracle Strip Aviation ("Miracle Strip") was the only FBO providing aeronautical services at DTS.  A second FBO, Destin Jet, owned by Odom was added in 2009.

---

[4] The statute also states that a right given to only one FBO is not deemed an "exclusive right" if it would be "unreasonably costly, burdensome, or impractical" for more than one FBO to provide the services, and if allowing more than one would require reducing the space leased under an existing agreement between the one FBO and the airport operator.  *See* 49 U.S.C. § 47107(a)(4).

In 2012, an entity named Regal Capital, LLC ("Regal Capital") acquired the stock of Miracle Strip.  Smith alleges that Regal Capital was owned by Phillip D. Ward and Jack Simmons but that they were strawmen, "covertly controlled" by Odom who allegedly funded the purchase. Smith contends this gave Odom an improper exclusive right to provide aeronautical services to the public at DTS[5] and that the stock purchase was not disclosed to the County as required by Miracle Strip's lease.  Smith, who was a pilot at the time, asserts he learned of this alleged fraud through his "behind the gate" access to Miracle Strip's employees and communications with those employees about operations and activities at DTS.[6] Smith alleges that he also began to notice that the two FBOs were essentially operating as one.  *See* ECF No. 33 at ¶¶60–61 (alleging, for instance, that Miracle Strip allowed Destin Jet planes to park on its ramp and that certain renovations "made Miracle Strip Aviation look like it was part of Destin Jet,").

---

[5] Smith alleges that Ward was "[Odom's] man," ECF No. 33 at ¶53, and that Odom and Ward put Simmons in charge of the FBO, despite his lack of aviation knowledge.

[6] Smith was trained as a pilot through Miracle Strip at DTS in 1985.  He worked as a pilot with a contractor for the Navy from 2011 through 2013, and in this position, he frequently flew out of DTS, where he had regular interactions with employees of Miracle Strip and knew its owners.  Smith alleges that he learned "from employees at DTS" that this transaction was a "scam from the beginning" because it was all Odom's money.  ECF No. 33 ¶107.  Smith alleges Odom has a history of using strawmen to engage in illicit activities and contends that Ward and Simmons were not actual purchasers but were used to conceal Odom's involvement in obtaining Miracle Strip.

The County allegedly learned of Regal Capital's stock purchase in early 2013, when Miracle Strip defaulted on its lease, entered into a new lease with the County, and disclosed that its corporate stock had been purchased by Regal Capital.  In April 2013, Odom, as owner of Destin Jet—the competing FBO, contacted the County seeking to enter into a management agreement to run Miracle Strip in addition to Destin Jet.  Smith alleges that an email dated April 8, 2013, from the Federal Aviation Administration ("FAA") warned the County against allowing the management agreement because it would create an FBO monopoly and open the County "to a future complaint of allowing an exclusive right, a violation of Grant Assurance 23;" also, that it also could violate the lease agreement, which would be grounds to terminate the lease.  ECF No. 33 at ¶¶64, 65.  Notwithstanding, in June 2013, the County approved an assignment of Miracle Strip's lease to Regal Capital (then owned by Ward and Simmons, but allegedly "covertly" controlled by Odom), and Miracle Strip was renamed Regal Air Destin ("Regal Air").  Smith alleges on "information and belief" that the County did not inform the FAA of the lease assignment.

In January 2014, Sterling Diversified, LLC ("Sterling Diversified")—which was owned by partners Odom, Chester Kroeger, and Timothy Edwards—acquired

Regal Capital (and thus also the FBO Regal Air).[7]  Smith alleges that because Odom then controlled both FBOs, Regal Air and Destin Jet, he had an improper "exclusive right," in violation of federal law.  ECF No. 33 at ¶68.  By March 2014, the County had notice of this change of ownership from Simmons, who wrote to the airport director, Sunil Harman, and explained that he was no longer associated with Regal and had transferred his interest to Sterling Diversified.  And according to Simmons, the total aviation fuel purchased at DTS was not sufficient to support two FBO operations, something Smith disputes.[8]

On March 29, 2014, an article in the Northwest Florida Daily News reported on the state of affairs at DTS: "Last year, a company associated with Destin Jet owner Jay Odom bought out the competition at Destin Airport."[9]  ECF No. 57–1, at

---

[7] When formed in 2010, Sterling Diversified, LLC listed as partners Odom, Chester Kroeger, and Timothy Edwards; and Odom was listed in the 2013 Annual Report as a manager and registered agent.  ECF No. 33 at ¶112, 113.  Although it is alleged that Odom was not listed as a manager of Sterling Diversified in the 2014 Annual Report, Smith's allegations acknowledge that Odom publicly admitted that he still held a one-third ownership in Sterling Diversified.  *Id.* ¶¶104, 113.  Nonetheless, according to Smith's allegations, Kroeger and Edwards were not actual purchasers or investors but were used as "straw buyers engaged by Odom to conceal his involvement." *Id.* at ¶115.

[8] Smith alleged, by contrast, that DTS was ranked in the top 15% of national FBOs in terms of total fuel sales, which he asserts was more than sufficient volume to support two FBOs.  ECF No. 33 at ¶73.

[9] The Court considers the March 29, 2014 article and also a May 8, 2014 news article as attached to the motion to dismiss, central to the complaint, and undisputed.  *See Day*, 400 F.3d at 1276; *see also supra* Note 2.

1. The article noted that the acquisition had "quickly caught the attention of the flying public who noticed signs of no competition" and quoted Harman, the airport director, as saying this "seemed to be collusion between two supposedly competing businesses." *Id.*  After recounting the history of Odom's ownership interests—he owned the FBO Destin Jet and was a one-third equity partner in Sterling Diversified (also known as Sterling Group), which on December 31, 2013, had acquired Regal Capital (owner of FBO Regal Air)—the article confirmed that Odom together with his partners now owned Destin Jet and the competing FBO, Regal Air.[10]  The article reported also that Odom felt that the airport could not sustain two FBOs given the declining aviation activity, and it reported that Harman agreed with this assessment. ECF No. 57–1 at 5 (Harman acknowledged, "[t]here has been a declining market since 2008").  The article closed by stating that Harman had given Odom a path forward as a single FBO at DTS if Odom provided proof "showing why it makes sense to have a single FBO" and if Odom also obtained retroactive permission from the Board of Commissioners.  *Id.* at 4–5.

---

[10] The news report stated that Odom initially denied any ownership interest in Regal Air. Nonetheless, it is clear from this publicly disclosed news article that in February 2014, Harman confronted Odom about the arrangement, and during a meeting with the County, Odom acknowledged his part ownership interest in Regal Air through Sterling Diversified.  Purportedly, Odom was of the opinion that Regal Air had not been required to notify the County of the transaction because his ownership equity was less than 40%.

Another local news article dated May 8, 2014, reported again on the story, repeating much of the same but adding that DTS and the owners of Destin Jet were working to resolve a dispute involving "county anti-trust safeguards and FAA grant assurance violations that resulted when the owners of Destin Jet allegedly purchased rival provider Regal Air Destin at the end of last year."  ECF No. 57–10.

The Amended Complaint further alleges that in September 2014, the County reported the change of Regal Air's ownership to the FAA and inquired as to whether the acquisition would result in a violation of its "exclusive rights" grant assurances. The FAA cautioned the County on "issues related to exclusive rights" and "suggested" obtaining a legal opinion from the FAA Office of General Counsel. ECF No. 33 at ¶79.  It is alleged that the County never obtained a legal opinion from the FAA but forged ahead to negotiate a lease settlement with Regal Air and authorized the two FBOs to operate under common ownership.  An Okaloosa County Board of Commissioners Agenda Request dated March 3, 2015, included a document titled "Background Summary—Destin Executive Airport (DTS) FBO issues"[11] (quoted in the Amended Complaint), which stated the County had concerns over the viability of sustaining two FBOs at DTS due to declining fuel sales, a

---

[11] Smith alleges that the document is not dated and its author is not known.

downturn in aviation activity, loss of airport revenues, and lease compliance issues. *Id.* ¶83.  The document further stated that the County had raised issues of perceived exclusivity to the FAA, which considered this a lease administration issue, and the FAA purportedly responded that "the acquisition of a competing FBO, even if the acquisition results in a single FBO provider—a prevalent practice, does not in itself constitute as a violation of grant assurances."  *Id.* at ¶85. And a news article on October 24, 2014, is alleged to have reported that airport director Harman said "the negotiations to consolidate the airport fixed based operators were made possible after the FAA 'washed its hands' of lease negotiations at Destin Airport." *Id.* ¶81.

Smith disputes the contents of the agenda document (which is quoted in but not attached to the Amended Complaint), and he disputes the statement that the FAA "washed its hands" of this.  He alleges that in actuality, the County ignored the FAA's warnings and "created an exclusive right" for Odom by approving the merger between Destin Jet and Regal Air, contrary to law.  Smith also alleges that the County "discriminated against other service providers," naming himself as an example.  By letter dated May 3, 2019, the County denied his request to either lease an FBO or develop a new FBO at DTS, citing the pre-existing leases and the lack of available land.  *See* ECF No. 71–3.  Smith alleges only "on information and belief"

that the County did not notify the FAA of all relevant facts about either Odom's control or the County's denial of Smith's request to be a service provider.

Odom sold Destin Jet (merged with Regal Air) in 2016, but the County remains the airport sponsor.  Smith alleges the County is allowing Odom's successor to operate both FBOs under a single brand.  Smith further alleges that that based on these facts, the County has unknowingly (between 2012 and 2014) and knowingly (from 2014 on) submitted false exclusive rights assurances in grant applications and consistently received Federal Airport Improvement Program Grants totaling over $10 million and numerous Florida Department of Transportation Grants totaling over $20 million, based on those allegedly false assurances.  *See* ECF No. 33 at ¶130.

In a five-count Amended Complaint, Smith asserts FCA claims against Odom and the County, in violation of § 3729(a)(1)(A)–(B) (Counts I, II); an FCA conspiracy by Odom, Simmons, Ward, Miracle Strip, Kroeger, Edwards, and Sterling Diversified, in violation of § 3729(a)(1)(C) (Count III); and Florida FCA claims against Odom and the County, in violation of Fla. Stat. § 68.082 (Counts IV and V).  Odom and the County move to dismiss with prejudice for the failure to state

a claim and lack of particularity, *see* Fed. R. Civ. P. 12(b)(6), 9(b), and request an award of attorney's fees.[12]

## II.   **Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.  Rule 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," not detailed allegations.  Fed. R. Civ. P. 8(a)(2).  The Court accepts the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff, or relator in an FCA case.  *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).  The "complaint must include 'enough facts to state a claim to relief that is plausible on its face.'"  *Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility is found where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Iqbal*, 556 U.S. at 679 (noting the plausibility inquiry presents a "context-specific task," requiring the

---

[12] Pursuant to 31 U.S.C. § 3730(d)(4), a prevailing defendant is entitled to attorney's fees if the claim was "clearly frivolous, clearly vexatious, [and] brought primarily for purposes of harassment."

court to draw on "judicial experience and common sense").  Mere legal conclusions lacking "adequate factual support" are not entitled to an assumption of truth. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Twombly*, 550 U.S. at 555 (noting "a formulaic recitation of the elements of a cause of action will not do").

In addition to the ordinary pleading rules, an FCA claim is based on fraud and therefore is subject to the heightened pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Urquilla–Diaz*, 780 F.3d at 1052.  To satisfy Rule 9(b), the allegations must "contain sufficient indicia of reliability," *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006), and must include "particular facts about 'the who, what, where, when, and how of fraudulent submissions to the government," *Urquilla–Diaz*, 780 F.3d at 1052 (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) and other internal marks omitted); *see also Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 (11th Cir. 1994) (requiring FCA pleading to include facts as to time, place, and substance of the alleged fraud).  Failing to meet Rule 9(b)'s pleading standards is grounds for dismissal under Rule 12(b)(6).  *See Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

## III.  Discussion

### A.    Legal and Regulatory Framework

A private person may bring a federal or state civil *qui tam* action on behalf of the federal government for civil penalties and damages arising from false claims submitted to the government.  *See* 31 U.S.C. § 3730; *see also* Fla. Stat. § 68.083.[13] The FCA prohibits (A) knowingly presenting a false or fraudulent claim for approval or payment to the government and (B) knowingly making or causing a false record or statement to be made that was material to a false or fraudulent claim.  *See* 31 U.S.C. § 3729(a)(1)(A)–(B); *see also* § 3729(a)(1)(C) (prohibiting a conspiracy to commit a violation of subsection (A) or (B)).  While the FCA does not base liability on "the disregard of government regulations or failure to maintain proper internal policies," *Corsello*, 428 F.3d at 1012 (citing *Clausen,* 290 F.3d at 1311), liability can attach when a false claim is submitted and the defendant "knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement" that is material to the government's payment decision, *Universal*

---

[13] Because Florida's False Claims Act, *see* Fla. Stat. § 68.082, "is modeled after and tracks the language of the federal False Claims Act," *United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 n.5 (S.D. Fla. 2007), the Court's discussion of the claims and arguments for dismissal under the federal FCA apply equally to the Florida FCA, and the Florida FCA will not be separately addressed.

*Health Servs., Inc. v. United States*, 579 U.S. 176, 181 (2016).  The focus of the statute is "on those who present or directly induce the submission of false or fraudulent claims." *Id.* at 181.  In sum, an FCA claim requires: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1346–47 (11th Cir. 2021) (citing *Urquilla-Diaz*, 780 F.3d at 1045).  However, a case must be dismissed where the claim is based on "substantially the same" allegations or transactions that were previously publicly disclosed in a federal hearing to which the government was a party, in a federal report or investigation, or in news media, unless the plaintiff was "an original source of the information," as defined in the statute.  31 U.S.C. § 3730(e)(4)(A)–(B); *see also* Fla. Stat. 68.087(3) (same).

Federal law prohibits an airport sponsor from granting an exclusive right to provide aeronautical services at an airport and requires the airport sponsor to provide assurances to that effect when it applies for Airport Improvement Program grants.[14]

---

[14] The FAA Compliance Manual states, "[a]n exclusive right is defined as a power, privilege, or other right excluding or debarring another from enjoying or exercising a like power, privilege or right," and it "may be conferred either by express agreement, by imposition of unreasonable minimum standards or requirements or by another means"  ECF Nos. 71–4 at 34; 71–5 at 54.

*See* 49 U.S.C. § 47107(a)(4) (project grant application approval is conditioned, in part, on assurances that no exclusive rights will be given to one provider).  The FAA will not award such a grant "until [an] exclusive right is removed from the sponsor's airport."  ECF Nos. 71–4 at 38 (FAA Airport Compliance Manual, effective 2009); 71–5 at 57–58 (FAA Airport Compliance Manual, effective 2021).  The FAA's Compliance Manual provides that the presence of only one FBO does not violate the exclusive rights provision as long as "the sponsor has not entered into an express agreement, commitment, understanding, or apparent intent to exclude other reasonably qualified enterprises," ECF Nos. 71–4 at 39;  71–5 at 58, and thus "[t]he fact that a single business or enterprise may provide most or all of the on-airport aeronautical services is not, in itself, evidence of an exclusive rights violation," ECF Nos. 71–4 at 43;  71–5 at 63.  Instead, "[t]he FAA will consider the airport's willingness to make the airport available to additional reasonably qualified providers" and will find an exclusive rights violation if the airport sponsor denies "other qualified parties an opportunity to be an on-airport aeronautical service provider."  ECF Nos. 71–4 at 39, 43;  71–5 at 58, 63.  Additionally, federal statutes and the FAA Compliance Manual provide that a single FBO is permitted to operate where it would be "unreasonably costly, burdensome, or impractical for more than one FBO to provide services, <u>and</u> allowing more than one FBO to provide services

would reduce the space leased under an existing agreement between the airport and single FBO."[15] ECF Nos. 71–4 at 44; 71–5 at 64; *see also* 49 U.S.C. § 47107(a)(4)(A)–(B).

### B.   Public Disclosure Bar

Odom argues that the Amended Complaint must be dismissed for a number of reasons, and on careful review, the Court agrees.  Foremost, Odom argues that the relevant facts were publicly disclosed in news reports in the Spring of 2014, and the public disclosure in news media of "substantially the same allegations" as in the complaint requires dismissal.  *See* 31 U.S.C. § 3730(e)(4)(A).  Smith disagrees.  He argues dismissal is not justified because he disclosed different facts, namely, a strawman purchaser scheme, and he was the original source.

The public disclosure bar applies if (1) the allegations of the complaint have been "publicly disclosed" as described by statute; and (2) the allegations are "substantially the same" as allegations or transactions contained in the public disclosures; unless (3) the relator is an original source of that information, as defined in § 3730(e)(4)(B).  *See United States ex rel. Osheroff v. Humana Inc*., 776 F.3d 805,

---

[15] An exclusive rights violation also can occur through a lease if all available airport land is leased to a single FBO "who cannot put it into productive use within a reasonable period of time."  ECF Nos. 71–4 at 44; 71–5 at 64.  No such allegations are made in this case.

812 (11th Cir. 2015).  First, there is no dispute that the newspaper articles qualify as a "public disclosure."[16]  § 3730(e)(4)(A)(iii); *see Osheroff*, 776 F.3d at 814 ("Newspaper articles clearly qualify as news media.").  The second requirement—that the public disclosure included "substantially the same allegations or transactions" as the complaint—is also met.  Smith argues that there was no allegation of fraud in the news reports, but the Court disagrees.  "An allegation of fraud is an explicit accusation of wrongdoing," and an inference of fraud may be warranted by a transaction where the "misrepresented state of facts plus the actual state of facts" are shown.  *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 303 (3d Cir. 2016).  The news articles from March and May 2014 plainly disclosed that Odom had gained control of both FBOs through corporate purchases; the articles expressly referenced "collusion" between the two FBOs and that two FBOs operated as one without notifying the County; and they indicated the parties were working to resolve resulting disputes involving "FAA grant assurance violations" by the County.  *See* ECF Nos. 57–1, 57–10.  Contrary to

---

[16] A qualifying public disclosure is one that occurs in (i) a federal hearing in which the Government is a party; (ii) a congressional report or federal report, hearing, or investigation; or (iii) the news media.  *See* 31 U.S.C. § 3730(e)(4)(A).  In addition to the 2014 news articles, Odom argues that the Amended Complaint is also based information publicly disclosed through a 2019 public records request to the County.  The Court need not address the content of those records because, as Smith correctly argues, a public records request is not a "public disclosure" that requires dismissal within the meaning of the statute.

Smith's argument, these are substantially the same as his allegations that Odom fraudulently obtained ownership or control of both FBOs, which caused the County to make false assurances on grant applications.

Smith also argues dismissal is not warranted because he meets the "original source" exception, which applies if the relator either (i) voluntarily disclosed the claim or transaction to the government before the public disclosure or (ii) has "knowledge independent of" the public disclosure that "materially adds to the publicly disclosed allegations" and volunteered that information to the government before filing the *qui tam* action. 31 U.S.C. § 3730(e)(4)(B). The allegations do not meet either prong. Smith alleges he provided information to the airport director, Harman, before the news disclosure—not *to the government*, as required by the statute. *See* § 3730(e)(4)(B)(i). Smith argues he qualifies as an original source under the second prong because his allegations are based on independent knowledge of additional information (a strawman purchase scheme) that materially adds to the public disclosure. *See* § 3730(e)(4)(B)(ii). Odom argues, and the Court agrees, that the allegations do not establish either independent knowledge or information that materially added to the allegations. Smith has not alleged a reliable basis for his asserted "independent knowledge." He is a corporate outsider and alleges only that he had "behind the gate access" and conversations with unnamed "employees" of

the FBOs, who told him Odom was in control.  But this amounts to nothing more than gossip.  Smith also draws an inference that Odom used strawmen purchases because he knew that Odom had used "strawmen donors" in a past situation, but that inference is more akin to speculation than "independent knowledge."[17] Taking as true that the strawmen scheme he asserts was not referenced in the news articles, the information nonetheless does not "materially add" to the publicly disclosed allegations.  News reports disclosed Odom's 2013 takeover of the competition by "collusion" to gain control of both FBOs.  The additional information of the alleged strawmen scheme beginning in 2012 provides nothing more than additional background information regarding that takeover.[18]  "A relator is not an original

---

[17] Smith also argues that Odom incorrectly based his argument on an earlier version of the statute, which required "direct knowledge."  Undoubtedly, the 2010 amendments "changed the scope of the public disclosure defense available," *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 932 n.1 (11th Cir. 2016), and have been said to have "radically changed the 'hurdle' for relators" in several respects, including the definition of original source." *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 298 (3d Cir. 2016).  The definition no longer requires "direct knowledge" of the information on which the allegations are based to fit the original source exception, so the Court has disregarded the arguments that Smith did not have "direct knowledge."  However, absent direct or firsthand knowledge of the fraud, the allegations still must demonstrate some basis of reliability to support pleading "independent knowledge" with sufficient particularity, and this is lacking.

[18] Smith contends that only some facts were made public, not *allegations* that are necessary to fraud.  He relies on *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994), which instructs that "where only one element of the fraudulent transaction is in the public domain (*e.g.*, X), the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (*e.g.*, Y) or allegations of fraud itself (*e.g.*, Z)."  But Smith does not describe how the alleged strawmen control and purchases in 2012 or 2013 added a missing element to the FCA claim that was not already disclosed—the point

source if [his] knowledge was mere 'background information which enable[d] him to understand the significance of a more general public disclosure.'" *United States ex rel. Wallace v. Exactech, Inc*., No. 2:18-cv-01010-LSC, 2022 WL 4110894, at *1 (N.D. Ala. Sept. 8, 2022) (quoting *Osheroff*, 776 F.3d at 815).  Thus, Smith does not qualify as an original source, so the public disclosure bar applies, requiring dismissal of claims against Odom and the County based on Odom's alleged acquisition of an "exclusive right" by obtaining ownership of the competing FBO.

### C.    Failure to State a Claim and Lack of Particularity

Odom and the County also argue that the Amended Complaint fails to state a claim with sufficient particularity.  The Court agrees.  An FCA claim requires (1) a false statement, (2) knowingly made, (3) that was material, and (4) caused the government to pay out money.  *Mortg. Invs. Corp*., 987 F.3d at 1346–47.  Odom argues that no regulatory or statutory violation is adequately alleged because a single FBO is not itself evidence of an exclusive right in violation of a grant assurance. This is borne out by the Compliance Manual, which states that a single FBO does not by itself indicate an exclusive right and that a violation occurs only when the

---

of this information is to show how Odom obtained the competing FBO.  The fact that he obtained ownership of it, which was publicly disclosed in 2014, was sufficient to allege an exclusive right for purposes of the FCA claim without the additional background.

airport sponsor denies a qualified applicant the opportunity to be an FBO.  *See* ECF Nos. 71–4 at 43;  71–5 at 63.  In a single provider situation, where, as here, there was no expressly documented exclusive right (instead, two providers were allowed to operate under common ownership), the FAA considers the airport sponsor's willingness to make the airport available to additional reasonably qualified providers, and thus, the FAA makes a discretionary decision in consideration of the circumstances in determining whether an exclusive right was created in violation of federal law.  It is not alleged that this determination was ever made.  Smith argues that an improper exclusive right is shown by the County's denial of his request to be a new provider, but there is no allegation to show he was a reasonably qualified applicant based on the minimum standards,[19] and no allegation identifies any other would-be provider who was denied.

Smith also contends that an exclusive right was improperly created because the actual conditions did not justify the County's merger of the two FBOs under the statute.  A single provider is allowed only if a second FBO would be "unreasonably

---

[19] Smith argues that the County did not deny his application based on his qualifications but summarily rejected his proposal by letter, citing the existing lease agreements and unavailability of additional land.  ECF No. 71–3. While it is true that the letter did not address Smith's qualifications, it denied the request for "a number of factors," and one stated reason referenced the minimum operating standards, which apparently the drafter found to be a barrier.  *Id.*

costly, burdensome, or impractical" *and* if allowing another FBO "would reduce the space leased under an existing agreement."[20]   Smith alleged that the volume of fuel sales was "more than sufficient" to support two FBOs, so the unreasonably costly or burdensome requirement was not met.   ECF No. 33 at ¶73.   This conclusory statement, however, is insufficient to meet Rule 9(b)'s particularity requirement and also fails to demonstrate the basis of his knowledge.   Moreover, contrary allegations within the Amended Complaint allege with particularity the existence of an economic downturn and inability of DTS to sustain two FBOs.[21]   Further, when Smith applied in 2019, the space was already fully leased.   An exclusive rights violation therefore is not adequately alleged, which undermines the basis for the FCA claims of false grant assurances.

Odom and the County also argue that the Amended Complaint fails to adequately plead fraud because the FAA had been informed of the circumstances and thus could not have been misled.   The Court agrees.   Several allegations indicate

---

[20] ECF Nos. 71–4 at 44; 71–5 at 64; *see also* 49 U.S.C. § 47107(a)(4)(A)–(B).

[21] Specifically, in a letter dated March 25, 2014, Simmons (former owner of the FBO Regal Air) advised Harman (airport director) that the total gallons of aviation fuel purchased at DTS was not sufficient to support two FBOs; newspaper articles in March and May 2014 reported that Odom (operator of the FBO Destin Jet) said the same and Harman agreed; and a County Board Agenda Request on March 3, 2015, stated the County voiced concerns as to the viability of sustaining two FBOs due to declining fuel sales, a loss of airport revenues, a downturn in general aviation activity, and lease compliance issues with the second FBO.  *See* ECF No. 33 at ¶¶72, 83; ECF Nos. 57–1, 57–10.

that public disclosures about Odom's ownership interests were made in the news and that the County disclosed the situation and exclusivity concerns to the FAA and sought its advice on this issue. While the FAA advised against a joint management agreement and suggested the County obtain a legal opinion from the FAA Office of General Counsel, the County Agenda document from March of 2015, is quoted as stating that all issues were disclosed to the FAA and that the FAA considered this a lease administration issue. Smith disputes that the County fully informed the FAA of the circumstances but only in a conclusory manner not based on personal knowledge. He alleges on "information and belief" that the County failed to notify the FAA of all relevant facts and alleges on "information and belief" that the County never disclosed to the FAA that it had denied a request by another service provider. ECF No. 33 at ¶¶66, 90, 94. Allegations based "on information and belief" lack the necessary "indicia of reliability" because they fail to provide an underlying basis for the assertions. *Corsello*, 428 F.3d at 1013–14; *see also United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 790 (11th Cir. 2018) (stating the "complaint lacked the 'indicia of reliability' required by this Court's precedent because it did not include the underlying factual bases for her assertions").

Also, a defendant may rely on evidence of the government's knowledge to negate both the knowledge and materiality requirements for an FCA claim, showing

in effect that the government was not misled.  *See United States ex rel. Hunt v. Cochise Consultancy, Inc*., 887 F.3d 1081, 1093 n.10 (11th Cir. 2018) (noting that the government's knowledge may disprove materiality because if a claim is paid despite the government's knowledge that a requirement was violated, it is strong evidence that the requirement was not material), *aff'd,* 139 S. Ct. 1507 (2019).  Given the government's consistent decisions over the years to approve the County's grant applications despite the public disclosures and the County's disclosures to the FAA, an FCA claim based on false grant assurances is not adequately stated or alleged with the requisite particularity.

The same conclusion applies to the conspiracy claim.[22]  The False Claims Act imposes liability on anyone who conspires to submit a false or fraudulent claim for payment to the government.  31 U.S.C. § 3729(a)(1)(C). The heightened pleading standard of Rule 9(b) also applies to claims brought under the conspiracy provision, and a bare legal conclusion unsupported by specific allegations of an agreement or overt act will not state a claim.  *Corsello*, 428 F.3d at 1014; *see also HPC Healthcare,* 723 F. App'x at 791.  Smith alleges that Odom conspired with Simmons,

---

[22] A conspiracy claim under the FSA requires:  "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim."  *Corsello,* 428 F.3d at 1014.

Ward, Miracle Strip, Kroeger, Edwards, and Sterling Diversified, to defraud the government through the strawman scheme by which they allegedly obtained an "exclusive right" as the sole FBO, causing the County to submit false grant assurances. Smith does not allege an agreement to defraud the government with any degree of particularity, and his assertions that Odom acted covertly with these individuals is based on gossip and conversations with employees. Because Smith alleges the same scheme as previously discussed, these allegations of strawmen purchases between 2012 and 2014 likewise fall short due to the public disclosure bar and the failure to satisfy the requirements of Rule 9(b).

The Court finds it unnecessary to reach Odom's remaining arguments based on the statute of limitations or disclosure of the Florida FCA allegations in a federal proceeding because dismissal is warranted for reasons already stated, which apply equally under the Florida FCA.

Odom requests dismissal with prejudice on grounds that there is no realistic prospect that amendment will cure the deficiencies. The Court agrees. Leave to amend is ordinarily freely given under Fed. R. Civ. P. 15(a)(2), but the Court "may deny leave, *sua sponte* or on motion, if amendment would be futile." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("A district court may find futility if a prerequisite to relief is belied by the facts alleged in the complaint.");

*see also Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1255 (11th Cir. 2008) (noting "justice does not require district courts to waste their time on hopeless cases"). Smith has already amended the complaint once.   He opposes dismissal with prejudice but did not request leave to amend and presented no grounds for amending that could cure the deficiencies that require dismissal—the public disclosures and the notice previously given to the government as alleged in the Amended Complaint warrant dismissal and cannot be cured.

Odom also requests an award of attorney's fees pursuant to 31 U.S.C. § 3730(d)(4). arguing the suit is clearly frivolous, clearly vexatious, and was brought for purposes of harassment.   Despite Odom's success on the motion to dismiss, the suit was based on factual allegations that the Court cannot find completely groundless.   On this record, the Court also cannot find that the claims are clearly vexatious or harassing, which require finding that the claims were "instituted maliciously or without good cause." *United States v. Health First, Inc*., No. 6:19-CV-2237-RBD-LRH, 2021 WL 8201493, at *4 (M.D. Fla. Sept. 14, 2021), *report and recommendation adopted*, No. 6:19-CV-2237-RBD-LRH, 2022 WL 1238541 (M.D. Fla. Jan. 12, 2022).   An award of attorney's fees under the FCA is "reserved for rare and special circumstances," which are not present here.   *Id.* at *4 (internal quotation and citation omitted).

Accordingly:

1.      Defendant Odom and the County's Motion to Dismiss the First Amended Complaint, ECF No. 55, is **GRANTED**, but no attorney's fees are awarded.  The Amended Complaint is dismissed with prejudice.

2.      Defendant Odom's Motion for Leave to File a Reply, ECF No. 74, is **DENIED**.

3.      Defendant Odom's Motion to Disqualify Plaintiff's Counsel, ECF No. 58, is **DENIED as MOOT**.

4.      The Clerk is directed to close the file.

**DONE AND ORDERED** this 22nd day of June 2023.


*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**