

U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of Airport Compliance
and Management Analysis

800 Independence Ave., SW.
Washington, DC 20591

February 21, 2023

Clark Partington
Michael J. Schofield, Esq.
125 East lntendencia Street
Pensacola, FL 32502

Kimberly C. Cole
Cole & Davis, P.A.
1173 E John Sims Parkway
Niceville, FL 32578

Gary L. Evans, Esq.
George Andrew Coats, Esq.
Coats & Evans, PC
7764 Eagle Lane
Spring, TX 77379

R. Christopher Harshman, Esq.
David M. Shaby Il & Associates, APC
11949 Jefferson Blvd., Suite 104
Culver City, CA 90230

W. Eric Pilsk
Adam Gerchick
Kaplan Kirsch & Rockwell LLP
1634 I Street, NW, Suite 300
Washington, DC 20006

Lynn Hoshihara, Esq.
Carly J. Schrader, Esq.
Gregory T. Stewart, Esq.
Nabors Giblin & Nickerson P.A.
1500 Mahan Drive Suite
Tallahassee, FL 32308

Re: *Timberview Helicopters, Inc.* v. *Okaloosa County, Florida*, FAA Docket No. 16-21-14

Dear Mses. Cole and Hoshihara, and Messrs. Partington, Evans, Harshman, and Pilsk:

Enclosed is the Federal Aviation Administration (FAA) Director's Determination with respect to the above-captioned formal complaint under 14 CFR Part 16.

We find that Okaloosa County, Florida, is in violation of its Federal obligations regarding Grant Assurance 22, *Economic Nondiscrimination,* as set forth in its airport grant assurances and existing Federal statutes. The reasons for the finding are set forth in the enclosed Director's Determination.

All other claims are dismissed.

The Director's Determination does not constitute a Final Agency Decision and order subject to judicial review [14 CFR § 16.247(b)(2)]. A party adversely affected by the Director's Determination once issued may appeal the initial determination to the FAA Associate

Administrator for Airports pursuant to 14 CFR § 16.33(c) within 30 days after the service of the Director's Determination.

Sincerely,

 Digitally signed by KEVIN WILLIS
Date: 2023.02.21 13:56:14 -05'00'

Kevin C. Willis
Director, Office of Airport Compliance
  and Management Analysis

Enclosure

UNITED STATES DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, DC

TIMBERVIEW HELICOPTERS, INC.

COMPLAINANT,

v.

OKALOOSA COUNTY, FLORIDA

RESPONDENT.



**FAA Docket No. 16-21-14**

## DIRECTOR'S DETERMINATION

## I.   INTRODUCTION

This matter is before the Federal Aviation Administration (FAA) based on the formal Complaint filed by Timberview Helicopters, Inc. (Timberview) against Okaloosa County, Florida (Okaloosa or County) in accordance with the *FAA Rules of Practice for Federally-Assisted Airport Enforcement Proceedings*, 14 CFR Part 16 (Part 16).

Okaloosa is the owner and sponsor of Destin Executive Airport (DTS or Airport). Timberview was a commercial aeronautical tenant at the Airport subject to an Operating Agreement with a 37-year term, which Okaloosa terminated in 2021 after only four years.

Timberview alleges that the County has violated Grant Assurance 1, *General Federal Requirements*; Assurance 5, *Preserving Rights and Powers*; Assurance 19, *Operation and Maintenance*; Assurance 21, *Compatible Land Use*; Assurance 22, *Economic Nondiscrimination*; Assurance 29, *Airport Layout Plan*; and Assurance 38, *Hangar Construction*. Timberview further alleges that there are violations of the Airport Noise and Capacity Act of 1990 (49 U.S.C. § 47521(2) (ANCA)). Specifically, Timberview alleges that the Airport violated its grant assurances through various actions, including terminating a written operating agreement (2017 Agreement) which had "contractually entitled [Timberview] to operate until April of 2048," thereby forcing Timberview  "to immediately vacate the premises and cease all commercial flight operations" (FAA Exhibit 1, Item 1, p. 14). Timberview alleges that the County does not allow it to conduct commercial helicopter operations at the Airport because of noise and safety concerns (FAA Exhibit 1, Item 1).

The County denies these allegations and requests that the matter be dismissed. The County contends that Timberview violated the 2017 Agreement and the applicable Minimum Standards and Operating Policy (FAA Exhibit 1, Item 5 and FAA Exhibit 1, Item 6).

Based on the evidence of record in this proceeding, the Director, FAA Office of Airport Compliance and Management Analysis (Director), finds that Okaloosa County, Florida, is in violation of Grant Assurance 22, *Economic Nondiscrimination*, in applying inconsistent and unreasonable restrictions on aeronautical activities at the Airport. The Director finds that Okaloosa is not in violation of any other grant assurances.

## II.   PARTIES

### A.  Complainant

Timberview is a corporation authorized to do business in Florida with a principal place of business in Destin, Florida. Timberview provides helicopter services to the aviation and aeronautical community and the public, including aerial tours, aerial surveys, search and rescue, compassion flights, charity flights and other aviation related services (FAA Exhibit 1, Item 1, p. 4).

### B.  Respondent

Okaloosa County, Florida, is the owner and operator of Destin Executive Airport (DTS). DTS is a general aviation airport located on approximately 395 acres within the City of Destin, Florida. DTS is served by two fixed base operators (FBOs), both managed by Lynx FBO Destin, which operates out of two terminal buildings and several hangars. The County owns three blocks of hangars (18 total box and T-hangars) which are leased to aircraft owners for aircraft storage. In addition, there are eight rows or blocks of privately-owned hangars on land leased from the County (FAA Exhibit 1, Item 6, p. 4). The Airport had 63,987 aircraft operations for the twelve months ending December 31, 2018 (FAA Exhibit 1, Item 12).

The development of the Airport was financed in part with FAA Airport and Improvement Program (AIP) funding, authorized by the Airport and Airway Improvement Act of 1982, as amended, 49 U.S.C. § 47101, *et seq*. Between 1982 and 2021, the Airport received approximately $8,558,130 in AIP funding including grants for land acquisition (FAA Exhibit 1, Item 14). Thus, the County is obligated to comply with the FAA sponsor grant assurances and related Federal statutory law, 49 U.S.C. § 47107.

## III.   PROCEDURAL HISTORY

1. Timberview Helicopters, Inc., filed a Part 16 Complaint against Okaloosa County, FL on October 18, 2021 (FAA Exhibit 1, Item 1).

2. The FAA issued a Notice of Docketing for Timberview Helicopters Complaint as Part 16-21-14 on November 1, 2021 (FAA Exhibit 1, Item 2).

3. Okaloosa County filed an Unopposed Motion for Extension of Time to Respond to the Complaint on November 12, 2021 (FAA Exhibit 1, Item 3).

4. The FAA issued Order for Extension of Time until November 30, 2021, dated and docketed November 19, 2021 (FAA Exhibit 1, Item 4).

5.  Okaloosa County Answer to the Complaint was docketed on November 30, 2021 (FAA Exhibit 1, Item 5).

6.  Okaloosa County Memorandum of Law in Support of Its Answer to Complaint was docketed on November 30, 2021 (FAA Exhibit 1, Item 6).

7.  Timberview's Reply to County's Answer to Complaint, and Supplement and Case Citations was docketed on December 10, 2021 (FAA Exhibit 1, Item 10).

8.  Respondent Okaloosa County, Florida's Rebuttal in Support of Its Answer to the Complaint was docketed on December 20, 2021 (FAA Exhibit 1, Item 11).

9.  Complainant filed a Motion to File Supplemental Material in Support of Complaint on February 22, 2022 (FAA Exhibit 1, Item 15).

10. Respondent filed an Opposition to Complainant's Motion to File Supplemental Material in Support of Complaint on March 4, 2022 (FAA Exhibit 1, Item 16).

11. See Index of Administrative Record for other administrative filings (FAA Exhibit 1).

## IV.   BACKGROUND

1.  Beginning in 2010, Timberview conducted operations from several locations in the County but not directly on Airport (FAA Exhibit 1, Item 6, p. 5).

2.  Okaloosa required Timberview to begin conducting its operations on-Airport beginning in 2014 (FAA Exhibit 1, Item 6, p. 6).

3.  Timberview operated commercial air tours at the Airport on a year-to-year agreement between approximately 2014 and 2017 (FAA Exhibit 1, Item 6, p. 6).

4.  On April 18, 2017, the County entered into the 37-year 2017 Agreement with Timberview, which required a lease arrangement with Lynx FBO (FAA Exhibit 1, Item 6, p. 6).

5.  The 2017 Agreement prohibited Timberview from conducting commercial operations on the Lynx FBO ramp and required it to comply with the DTS Air Traffic Control Letter of Agreement (LOA) for helicopter operations surrounding the Airport (FAA Exhibit 1, Item 1, p. 2, and FAA Exhibit 1, Item 6, pp. 6-7).

6.  Okaloosa County terminated Timberview's 2017 Agreement via a Notice of Termination letter dated June 16, 2021, which indicated the effective date would be August 16, 2021. The Okaloosa County Board of Commissioners (Board) approved 60 days to negotiate a new Operating Agreement between Okaloosa and Timberview to address a list of past alleged breaches of the 2017 Agreement and to determine the full scope of Timberview's operations (FAA Exhibit 1, Item 1, p. 3; FAA Exhibit 1, Item 6, p. 20).

7.   County airport staff and Timberview negotiated a new draft Operating Agreement (Draft Agreement). However, the Board voted not to approve the Draft Agreement on August 17, 2021 (FAA Exhibit 1, Item 1, p. 15).

8.   County outside counsel emailed a termination letter dated August 17, 2021, to Timberview's outside counsels, which indicated that all commercial operations must cease effective August 18, 2021. However, noncommercial operations such as nonrevenue flights, hangar lease for storing and maintenance of helicopters, and fueling from the FBO, Lynx, were permitted to continue (FAA Exhibit 1, Item 1, Exhibit 17).

## V.   ISSUES

Upon review of the allegations and the relevant airport-specific circumstances, the FAA has determined that the following three (3) issues require analysis under this Determination.

**Issue 1 - Whether the County violated Grant Assurance 1, *General Federal Requirements*, through ANCA, by denying Timberview the opportunity to commercially operate at the Airport.**

**Issue 2 - Whether the County violated Grant Assurance 19, *Operation and Maintenance*, by denying Timberview the opportunity to commercially operate at the Airport.**

**Issue 3 - Whether the County violated Grant Assurance 22, *Economic Nondiscrimination*, by not approving Timberview's Draft Agreement to conduct commercial operations.**

## VI.   APPLICABLE FEDERAL LAW AND POLICY

### A.   Airport Sponsor Grant Assurances

As a condition precedent to providing airport development assistance under the AIP, the FAA must receive certain assurances from the airport sponsor. Certain sponsorship requirements to which an airport sponsor receiving Federal financial assistance must agree are set forth in 49 U.S.C. § 47107(a). The FAA has a statutory mandate to ensure that airport owners comply with these sponsor assurances. See the Index of Administrative Record for a list of all the FAA grant assurances (FAA Exhibit 1, Item 13).

### B.   FAA Enforcement Responsibilities

The Federal Aviation Act of 1958, as amended, 49 U.S.C. § 40101, *et seq*., assigns the FAA Administrator broad responsibilities for the regulation of air commerce in the interests of safety, security, and development of civil aeronautics. Commitments assumed by airport owners or sponsors in property conveyance or grant agreements are important factors in maintaining a high degree of safety and efficiency in airport design, construction, operation, and maintenance, as well as ensuring the public reasonable access to the airport. Pursuant to 49 U.S.C. § 47122, the

FAA is authorized to take actions necessary to assure that airport owners comply with their Federal grant assurances.

## C.  The Complaint and Investigative Process

Pursuant to 14 CFR § 16.23, a person directly and substantially affected by any alleged noncompliance may file a complaint with the FAA. The complainant should provide a concise but complete statement of the facts relied upon to substantiate each allegation and describe how the complainant was directly and substantially affected by the things done or omitted by the respondents. The regulations governing Part 16 proceedings provide that, if the parties' pleadings supply "a reasonable basis for further investigation," the FAA should investigate "the subject matter of the complaint." 14 CFR § 16.29(a).

In accordance with 14 CFR § 16.33(b) and (e), "a party adversely affected by the Director's Determination may file an appeal with the Associate Administrator for Airports within 30 days after the date of service of the initial determination."  If no appeal is filed within the time period specified in paragraph (b) of this section, the Director's Determination becomes the final decision and order of the FAA without further action.

## VII.    ANALYSIS

Before addressing the three issues in this case, we address several preliminary issues.

## A.    <u>Preliminary Matters</u>

The record is extensive and some exhibits were not properly filed. Furthermore, the parties did not submit all of their exhibits to the Public Docket. The County did not submit several exhibits that did not easily attach to an email for the Public Docket because of their file sizes. Instead, they placed the exhibits on their own file sharing directory. The County advised the FAA that it could download them from the law firm's sharefile (FAA Exhibit 1, Item 9, Exhibit 7). Timberview counsel's emailed submittal also stated that Exhibits 1 and 2 to their Reply could be accessed via their law firm's sharefile link (FAA Exhibit 1, Item 10).  Furthermore, neither asked the FAA Public Docket clerk for alternatives to submit these exhibits.

Nonetheless, in this specific case, the FAA Office of Chief Counsel uploaded the documents from both sharefile sites. Accordingly, the Director's findings here are based on the complete record.

## B.    <u>Motion to File Supplemental Material in Support of Complaint</u>

Timberview filed a Motion to File Supplemental Material in Support of Complaint on February 22, 2022 (FAA Exhibit 1, Item 15).  Okaloosa filed its Opposition to Complainant's Motion to File Supplemental Material in Support of Complaint on March 4, 2022 (FAA Exhibit 1, Item 16). The Director, in the interest of a full review of this matter and at his discretion, considered the information in both parties' filings.

### C.    Allegations concerning violations of Grant Assurances 5, 21, 29, and 38

**1.  Grant Assurance 5**

**Complainant's Position**

Timberview alleged that Okaloosa violated Grant Assurance 5, *Preserving Rights and Powers*, "when it allowed other activities, including permitting ongoing residential development to encroach into the immediate vicinity of the Airport, and allowing a small but vocal number of Airport neighbors demand Okaloosa County address their noise complaints by attacking Timberview and its helicopter tour flight operations." (FAA Exhibit 1, Item 1, pp. 18-19).

**Respondent's Position**

The County responded that "all areas in the immediate vicinity of DTS are in the City of Destin and the City of Destin approves or disapproves residential and other development within its borders. The County does not." (FAA Exhibit 1, Item 6, p. 19).

**Director's Determination**

Part 16 requires "the burden of proof is on the complainant to show noncompliance with an Act or any regulation, order, agreement or document of conveyance issued under the authority of an Act" (14 CFR § 16.23(k)(1)). The record shows that Okaloosa County does not control development around the Airport. Okaloosa also conducted a 14 CFR Part 150 noise study, and the FAA approved the Noise Exposure Map in 2013 (FAA Exhibit 1, Item 5, p. 5). Finally, Okaloosa took reasonable measures to oppose residential development or other incompatible land uses around the Airport even though the city of Destin did not always accept Okaloosa's suggestions (FAA Exhibit 1, Item 5, pp. 4-5, and FAA Exhibit 1, Item 9, pp. 2-4). Consequently, Timberview did not provide the Director substantive evidence supporting its allegation that Okaloosa is in noncompliance with Grant Assurance 5, *Preserving Rights and Powers*. Allegations therefore concerning Grant Assurance 5 are dismissed.

**2.  Grant Assurance 21**

**Complainant's Position**

Timberview alleges that Okaloosa violated Grant Assurance 21, *Compatible Land Use*, when it permitted developers to continue to develop land adjacent to and immediately abutting the Airport perimeter resulting in additional noise complaints, and making the Airport less efficient, more dangerous, less safe, and less usable by the public at large (FAA Exhibit 1, Item 1, p. 20).

**Respondent's Position**

The County answers that Timberview failed to identify any development that the County has approved "adjacent to or in the immediate vicinity of DTS," and that "those areas are within the City of Destin, which has exclusive land use authority" and thus outside of the County's authority (FAA Exhibit 1, Item 6, p. 20). Okaloosa also conducted a 14 CFR Part 150 noise study, and the FAA approved the Noise Exposure Map in 2013 (FAA Exhibit 1, Item 5, p. 5).

**Director's Determination**

The record substantiates that the City, not the County, has the responsibility for development immediately around the Airport. Furthermore, Okaloosa took reasonable measures to oppose residential development or other incompatible land uses (FAA Exhibit 1, Item 5, p. 5). Finally, with the County's support and assistance, the City of Destin has adopted an Airport Noise Overlay District that limits certain kinds of development in the areas near the airport, including residential development, within a defined DNL 65 dB contour (FAA Exhibit 1, Item 9, pp. 2-3; FAA Exhibit 1, Item 9, Exhibit 2). Under 14 CFR § 16.23(k), "the burden of proof is on the complainant to show noncompliance." Timberview has not provided the Director "reliable, probative, and substantial evidence" supporting its allegation that Okaloosa is in noncompliance with this grant assurance (14 CFR § 16.31(b)(2)). Therefore, the Director dismisses allegations concerning Grant Assurance 21, *Compatible Land Use*.

### 3. Grant Assurance 29

**Complainant's Position**

Timberview alleges that Okaloosa violated Grant Assurance 29, *Airport Layout Plan*, when "it failed to maintain an up-to-date ALP and has allowed alterations, operations, and development Timberview believes to be in conflict with the ALP." Timberview also alleges that the County "created a condition that diversely affects safety, efficiency, or utility of the Airport, i.e. by permitting the unparalleled and explosive growth in adjacent neighborhoods and areas since the Airport was initially constructed directly resulting in the complaints of noise and flight paths, impact which should have been reasonably anticipated by Okaloosa County." (FAA Exhibit 1, Item 1, p. 23).

**Respondent's Position**

The County answered that "Timberview's complaint fails to state a claim under Assurance 29" (FAA Exhibit 1, Item 6, pp. 22-23).

**Director's Determination**

The record shows that the ALP is current, and Timberview does not provide evidence of airport development that is inconsistent with the FAA-approved ALP. Under 14 CFR § 16.23(k), "the burden of proof is on the complainant to show noncompliance." Timberview has not provided the Director "reliable, probative, and substantial evidence" supporting its allegation that Okaloosa is in noncompliance with this grant assurance (14 CFR § 16.31(b)(2)). Therefore, the Director dismisses allegations concerning Grant Assurance 29, *Airport Layout Plan*.

### 4. Grant Assurance 38

**Complainant's Position**

Timberview alleges that Okaloosa violated Grant Assurance 38, *Hangar Construction*, when the County terminated commercial tour flights, thereby preventing Timberview from making a return on the investment it had made in the 37 year lease for Hangar 7-1. Timberview contends

that this action dramatically reduced the time for Timberview's amortization of the leased hangar space (FAA Exhibit 1, Item 1, pp. 23-24).

**Respondent's Position**

The County responded that "Timberview's Assurance 38 claim fails to identify any agreement with Timberview for the construction of a hangar or that Okaloosa refused to enter into such an agreement." (FAA Exhibit 1, Item 6, p. 2).

Grant Assurance 38, *Hangar Construction*, states that an airport sponsor may grant to an aircraft owner a long-term lease to construct his or her own hangar, subject to reasonable terms and conditions the sponsor may impose (FAA Exhibit 1, Item 13). Timberview clearly stated that it leased the hangar from a tenant for 37 years (FAA Exhibit 1, Item 1, p. 2). Timberview did not provide any evidence that it constructed its own hangar although Okaloosa provided that Timberview did obtain a stake in ownership of Hangar 7-1 in 2020 (FAA Exhibit 1, Item 8, p. 3). Furthermore, Okaloosa claims that it terminated only Timberview's 2017 Agreement and not the hangar lease as Timberview claims (FAA Exhibit 1, Item 8, Exhibit 4, p. 3).

**Director's Determination**

Although Timberview obtained an ownership stake in Hangar 7-1, the record contains no evidence that Timberview entered into an agreement with Okaloosa to construct a hangar, or that it was denied the ability to enter into a long-term lease to construct a hangar. Grant Assurance 38 pertains only to the rights of an aircraft owner with respect to entering into a long-term lease to construct a hangar, it does not provide the type of protection on return on investment which Complainant seeks. Under 14 CFR § 16.23(k), "the burden of proof is on the complainant to show noncompliance." Timberview has not provided the Director "reliable, probative, and substantial evidence" supporting its allegation that Okaloosa is in noncompliance with this grant assurance (14 CFR § 16.31(b)(2)). Therefore, the Director dismisses this allegation concerning Grant Assurance 38, *Hangar Construction*.

**D.    State Court Action**

Timberview filed an action for breach of contract and tortious interference of contract against the County in Florida state court. Okaloosa provided an Okaloosa County Circuit Court Order Denying Plaintiff's Motion for Temporary Injunction, dated July 5, 2022 (FAA Exhibit 1, Item 21). Okaloosa also recognizes that "state law issues do not bind the FAA with respect to Part 16 adjudications" but that because of "the Court's unequivocal construction of the 2017 Operating Agreement and findings of fact central to Timberview's Part 16 Complaint, the County believes the Order will assist the FAA's consideration of this matter" (FAA Exhibit 1, Item 21, p. 2). Timberview did not respond.

The Director reviewed the Order. Although a contract may be valid under state law, it may be in violation of the applicable Federal obligations. Even where a state court ruling has found contracts between an airport tenant and the airport sponsor to be valid and enforceable, a state court ruling cannot limit the FAA's ability and responsibility to adjudicate grant assurance

matters. (*See Platinum Aviation and Platinum Jet Center BMI* v. *Bloomington-Normal Airport Authority*, FAA Docket No. 16-06-09, Director's Determination, p. 18 (June 4, 2007)). Finally, the state court did not even rule on an aviation law claim (FAA Exhibit 1, Item 21). Accordingly, regardless of the state court ruling, the FAA will continue this Part 16 investigation whether the sponsor is in compliance with its Federal obligations.

## E.      **Discussion of Remaining Allegations**

The Director will evaluate the Complainant's remaining allegations concerning Grant Assurance 1, *General Federal Requirements*; Grant Assurance 19, *Operation and Maintenance*; and Grant Assurance 22, *Economic Nondiscrimination*. As stated above, this case presents three issues:

1.  Whether the County violated Grant Assurance 1, *General Federal Requirements*, through ANCA, by denying Timberview the opportunity to commercially operate at the Airport.

2.  Whether the County violated Grant Assurance 19, *Operation and Safety*, by denying Timberview the opportunity to operate commercially at the Airport.

3.  Whether the County violated Grant Assurance 22, *Economic Nondiscrimination*, by not approving the draft Agreement with Timberview.

**ISSUE 1.**      **Whether the County violated Grant Assurance 1, *General Federal Requirements*, through ANCA, by denying Timberview the opportunity to commercially operate at the Airport.**

### Complainant's Position

Timberview claims that Okaloosa violated Grant Assurance 1, *General Federal Requirements*, "when it refused to make the airport available to Timberview, an act of unjust discrimination." (FAA Exhibit 1, Item 1, pp. 17-18). Timberview argues that the County violated ANCA by unilaterally imposing uncoordinated and inconsistent restrictions on helicopters operating at the Airport (FAA Exhibit 1, Item 1, p. 18).

### Respondent's Position

The County responds that it has not imposed a noise or access restriction subject to ANCA (FAA Exhibit 1, Item 6, p. 15). The County further asserts that it has "the authority independent of the Airport Noise and Capacity Act to restrict operations to address safety concerns or to enforce lease and other contractual obligations with individual operators." (FAA Exhibit 1, Item 5, p. 12). The County also asserts that "any allegation regarding compliance with the Airport Noise and Capacity Act is beyond the FAA's jurisdiction under Part 16." (FAA Exhibit 1, Item 5, p. 12). The County also requested that the Director not consider ANCA in this matter because there is a pending appeal in the Federal court (FAA Exhibit 1, Item 6, p. 17).

**Director's Determination**

Okaloosa claims that the "FAA has the exclusive authority over aviation safety, aircraft flight, aircraft noise, and airspace management" (FAA Exhibit 1, Item 11, Item 1, p. 3). The Director affirms that the FAA's role in regulating aviation and aviation safety is extensive and essentially plenary in terms of the agency's statutory, regulatory and policy responsibilities. FAA's safety responsibility includes regulation of the safety of aircraft takeoffs and landings.

County airport staff presented an exhibit called "Chronological History of Timberview Issues at DTS since 2016" (Chronological History) to the Okaloosa Board of County Commissioners (County Board) at a public meeting on June 15, 2021 (FAA Exhibit 1, Item 7, Exhibit 4). This is the same meeting where the County Board provided its 60 day notice to Timberview that it was terminating the 2017 Agreement.

Although the title of the exhibit related to Timberview, the airport staff included compliance issues involving other tenants and helicopter owners in the Chronological History. Airport staff included specific allegations and dates concerning Timberview's alleged noncompliance with Okaloosa's operational restrictions for nighttime or limits to specific times during the day. These allegations of non-compliant flight restrictions related to nighttime or time of day restrictions at DTS are apparent triggers with ANCA and are found in the Chronological History on the dates of 12-31-2020, 5-11-2021, and 5-12-2021 (FAA Exhibit 1, Item 1, Exhibit 10, pp. 756-758).

Timberview's attorney also sent a letter dated June 24, 2021 to the County Board criticizing the June 15, 2021 presentation (FAA Exhibit 1, Item 1, Exhibit 13). Okaloosa's counsel responded by a letter dated July 7, 2021, in which it accused Timberview of not being a good neighbor (FAA Exhibit 1, Item 1, Exhibit 13).

Okaloosa's counsel further articulated Timberview's helicopter incompatibility with the residential nature of the community and encouraged minimization of impacts through flight operational requirements in the same letter. These responses include:

> Timberview does not deny that its helicopters operate at low altitudes, particularly above the ground and buildings between the Airport and the beach. Although Timberview focuses on altitudes above water, the issue is altitudes above homes and people, as well as maintaining an altitude over or near the beaches that will allow a safe landing in the event of a power failure. Staff understands that the altitudes may be at the direction of the DTS Tower, but that does not make them acceptable to County residents or compatible with the residential nature of the area, or even safe when the entire environment is taken into consideration. In particular, the Tower's assignment of altitudes for Timberview's operations may maintain safety in the airspace, but the altitudes are very low over congested and developed areas raising safety concerns for people on the ground that need to be addressed. The County supports the efforts of the DTS Tower and the FAA to develop routes and altitudes with public involvement to take all of those safety concerns into account that will be set forth in a new Letter of Agreement between Timberview and the DTS Tower, and incorporated into the new Operating Agreement.

Increased Volume of Community Complaints. Timberview does not dispute the truthfulness that complaints about Timberview's operations have increased in recent months as its flight activity has increased. Timberview instead attempts to deflect attention from the impact its operations have by noting a general policy of encouraging tourist development to accommodate record levels of tourism. That is insulting to area residents and visitors, and a gross misstatement of the TDD (Tourism Development Department) report's intent. As statements from residents and tourist-oriented businesses in Destin have made clear, the impacts from Timberview's operations have a negative impact on visitors and diminish the Destin experience for many visitors. The TDD report did not imply, as Timberview suggests, that promoting tourism somehow justifies allowing activities that disrupt the quality of life of thousands of residents and visitors. Staff intends to work with Timberview, DTS Tower staff, and the FAA to ensure that all stakeholders have input on routes and flight procedures that minimize the impact of Timberview's operations on area residents and visitors while maintaining safety.

Operations After Sunset. Timberview does not deny that it has conducted operations after sunset despite having agreed not to do so in the Operating Agreement. Instead, Timberview claims that some of those flights were fireworks video flights that were not prohibited. However, the Operating Agreement applies to all of Timberview's operations, not just tour operations as Timberview asserts. There is no distinction between the types of flights. That has always been the County's position as demonstrated by Timberview's acknowledgment that the County insisted that the video flights be included in the calculation of Timberview's fees. The current Operating Agreement prohibits Timberview flights after sunset. Timberview states that it does not fly "after dark." It is important to clarify that "sunset" occurs earlier than "dark," so an operation that does not occur at dark may still occur after sunset. With respect to the specific flights referenced, Staff relied on the reports from the DTS Tower, which tracks the official time of sunset, as the entity with control over airspace around the Airport. Staff has not been provided the video Timberview refers to and has no reason to doubt the accuracy of the report from the DTS Tower. (FAA Exhibit 1, Item 1, Exhibit 13)

Shortly afterward, Okaloosa's counsel followed up with a letter to Timberview dated July 9, 2021, requiring it to accept certain flight operational requirements as part of the Draft Agreement (FAA Exhibit 1, Item 1, Exhibit 13). The letter explained:

[A]t our June 24 meeting you agreed to provide proposed language regarding (1) access to [Automatic Dependent Surveillance-Broadcast] ADSB or similar flight data for Timberview's operations at DTS and (2) a cap on hourly operations from DTS. The draft Operating Agreement has place-holders for that language and we look forward to reviewing your proposed language on those matters.

Finally, with respect to a new Letter of Agreement with the Tower, our position remains that the Letter of Agreement must be completed prior to finalizing a new Operating Agreement. Further, we continue to believe that any new Letter of Agreement must reflect public input and review. At this time, the County is not prepared to move forward with a new Operating Agreement unless a new Letter of Agreement, including proposed

helicopter routes and procedures, is presented to the public by the FAA and the public is allowed to comment. (FAA Exhibit 1, Item 1, Exhibit 13)

Okaloosa's counsel attached the Draft Agreement to the July 9, 2021 letter with revisions to Section 15. *Procedures*, stating:

> Operator shall conduct tour operations from the hours of 10:00 a.m. to sunset only. It is a condition precedent to this Agreement that Operator enter into a letter of agreement or similar agreement with the FAA, following an opportunity for public comment, establishing how VFR helicopter operations will be conducted using approved traffic patterns, areas, altitudes, routes and procedures and in accordance with FAA PART 93 rules. A copy of the current Letter of Agreement is attached and made a part of this Operating Agreement as Exhibit 5 and a replacement Letter of Agreement or similar agreement shall be provided to the County if any changes to those routes, altitudes, patterns, or procedures are made, following an opportunity for public comment. When authorized to deviate from such patterns, routes, altitudes, and procedures, Operator shall do so in a manner to avoid low altitude flight over homes adjacent to the Airport to the extent consistent with safety and instructions from air traffic control personnel. Operator shall be responsible for crowd control of its customers and guests inside and outside of the Airport's security fence and shall be required to direct traffic to ensure safety at its location. Passengers, guests and bystanders shall be under immediate constant escort at all times while on any areas of the airport's airside locations. Operator further agrees to limit the frequency of air tour operations to - operations per hour [Timberview to propose additional language]. (FAA Exhibit 1, Item 1, Exhibit 13)

Another Timberview attorney responded to Okaloosa's counsel on July 13, 2021, and suggested changes concerning the Draft Agreement dated July 9, 2021 (FAA Exhibit 1, Item 1, Exhibit 13).

The Record, however, shows Timberview still leases an airport hangar for storing and maintaining its helicopters and Okaloosa allows Timberview to operate noncommercial flights at the Airport (FAA Exhibit 1, Item 7, p. 14). Timberview also provided evidence that other helicopters operate at DTS (FAA Exhibit 1, Item 1, Exhibit 13). A Google map search shows other helicopters parked at the Airport in 2022, and there are no helicopter restrictions noted in the Airport Master Record (FAA Exhibit 1, Items 17; FAA Exhibit 1, Item 12).

Even though Timberview did not question the overall validity of the Letter of Agreement or hour and frequency restrictions, the FAA has concerns. The Director considers these examples to reasonably support Timberview's argument that Okaloosa knowingly used noise, in part, to support its commercial helicopter flight operational restrictions against Timberview in the 2017 and Draft Agreements. Furthermore, Okaloosa recognizes that there are specific requirements for establishing those restrictions, but chose not to follow the 14 CFR Part 161 requirements or obtain FAA approval (FAA Exhibit 1, Item 10, Exhibit 1).

Airport sponsors have limited proprietary authority to restrict access as a means of reducing aircraft noise impacts in order to improve compatibility with the local community. To accomplish this, airport sponsors must comply with the national program for review of airport noise and access restrictions under ANCA. ANCA requires that certain review and approval

procedures be completed before a proposed restriction that impacts Stage 2 or Stage 3 aircraft is implemented. The FAA regulation that implements ANCA is 14 CFR Part 161, Notice and Approval of Airport Noise and Access Restrictions. (*See* FAA Order 5190.6B, p. 13-13). Okaloosa counsel publicly notes that an ANCA study needs to be conducted for any access restrictions on Robinson helicopters since they are Stage 2 aircraft (FAA Exhibit 1, Item 10, Exhibit 1, p. 9).

The right of a municipal airport proprietor to control noise at local airports is "unmistakably limit[ed]" by ANCA, and unless covered by grandfather rights which, like in similar cases considered by the agency, "do not exist," and consequently the procedural requirements of ANCA are "mandatory and comprehensive." (*See Friends of East Hampton Airport, Inc., et al.* v. *Town of East Hampton*, 841 F.3d 133, 138 (2d Cir. 2016)). Local ordinances not enacted in compliance with ANCA's procedural requirements, moreover, are "federally preempted" and "any actions taken in violation of legal mandates [i.e., such as ANCA's] are, by their nature, unreasonable and arbitrary." Thus, as the Director reasoned in a prior case, "if enacted for purposes of limiting noise, all noise and access restrictions (unless grandfathered) that do not comply with ANCA's procedural requirements constitute a violation per se of Grant Assurance 22." (*See Captain Errol Forman* v. *Palm Beach County, Florida, and Palm Beach County Board of County Commissioners*, FAA Docket 16-17-13, Director's Determination, p. 15 (Feb. 22, 2019)).

Grant Assurance 22, *Economic Nondiscrimination*, implements the provisions of 49 U.S.C. § 47107(a)(1) through (6), and requires, in pertinent part, that the sponsor of a federally obligated airport make its airport available as an airport for public use on reasonable terms, and without unjust discrimination, to all types, kinds, and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport. (*See* FAA Airport Compliance Manual, p. 13-12).

In summary, the Director finds that the issues raised in this complaint are ultimately based on grant assurances and fall well within the FAA's Part 16 jurisdiction. The fact that ANCA is raised as a related or ancillary issue or defense does not divest the Agency of jurisdiction. (*See Captain Errol Forman* v. *Palm Beach County, Florida, and Palm Beach County Board of County Commissioners*, FAA Docket 16-17-13, Director's Determination, p.12 (February 22, 2019)).

The County argues that Timberview's commercial operations were terminated from the Airport, not to restrict noise, but because of violations of the Minimum Standards and terms of the 2017 Agreement. The County's argument in support of this specific claim is discussed below in Issue 3.

Consequently, the Director finds that the sponsor placing unreasonable restrictions on Timberview's commercial helicopter flight operations and preventing access to DTS is inconsistent with Grant Assurance 22, *Economic Nondiscrimination*.

**ISSUE 2.**     **Whether the County violated Grant Assurance 19, *Operation and Maintenance*, by denying Timberview the opportunity to operate commercially at the Airport.**

<u>**Complainant's Position**</u>

Timberview alleges that Okaloosa violated Grant Assurance 19, *Operation and Maintenance*, by allegedly failing to operate and maintain the Airport in a safe and serviceable condition. Timberview further stated that "it has never experienced an accident, incident, or other regulatory violation that would begin to legitimize the 'safety' complaints articulated by the County." (FAA Exhibit 1, Item 1, p. 19). Yet, Timberview's commercial operations were terminated while other sightseeing and tour operators were allowed to continue their operations.

<u>**Respondent's Position**</u>

The County responded that "Timberview does not identify a single instance where the County has allowed an unsafe operation or condition to occur." (FAA Exhibit 1, Item 6, pp. 19-20).

<u>**Director's Determination**</u>

The FAA can only make findings on clear, reliable facts. The FAA will not address issues that do not bear directly on the Respondent's Federal obligations. (*See BMI Salvage Corporation & Blueside Services, Inc.* v. *Miami-Dade County, Florida*, FAA Docket No. 16-05-16, Director's Determination, pp.11-12 (July 25, 2006)). Although Timberview alleges a violation of Grant Assurance No. 19, *Operation and Maintenance*, no substantive support was provided in the Complaint that Okaloosa was operating and maintaining the Airport in an unsafe and inefficient manner. Under 14 CFR § 16.23(k), "the burden of proof is on the complainant to show noncompliance." Timberview has not provided the Director "reliable, probative, and substantial evidence" supporting its allegation that Okaloosa is in noncompliance with this grant assurance (14 CFR § 16.31(b)(2)). The Director, therefore, dismisses this allegation.

**ISSUE 3.**     **Whether the County violated Grant Assurance 22, *Economic Nondiscrimination*, by terminating the 2017 Agreement with Timberview.**

<u>**Complainant's Position**</u>

Timberview argues that it "has continuously met all financial obligations and all other obligations of the 2017 Operating Agreement" (FAA Exhibit 1, Item 1, p. 21). However, according to Timberview, Okaloosa allows other aeronautical activities at the Airport without the restrictions that it placed on Timberview (FAA Exhibit 1, Item 1, pp. 21-22).

<u>**Respondent's Position**</u>

The County claims that Timberview's commercial operations were terminated from the Airport because of violations of the Minimum Standards and terms of the 2017 Agreement. Okaloosa claims that, over the years, the County has dealt with a large number of compliance issues with Timberview, including numerous breaches of the 2017 Agreement and DTS Minimum

Standards. Okaloosa contends that the list of compliance issues reveals a pattern of noncompliance with procedures, duty of care, and authorities (FAA Exhibit 1, Item 6, p. 9).

**Director's Determination**

1. **Sub-Issue 1 - Lease and Minimum Standards**

In 2019, Okaloosa asked the Okaloosa County Clerk of Circuit Court's Department of Inspector General (IG) to conduct an audit of Timberview's agreed-to payments for a percentage of the monthly commercial gross revenues to Okaloosa. Okaloosa made this request because it had concerns over questionable monthly gross revenue statements and payments. After the audit began, Timberview made an adjusted payment (FAA Exhibit 1, Item 1, Exhibit 3, p. 3). However, Okaloosa alleges that Timberview did not provide the IG the reconciled documentation to support the amount of the adjusted payments that it made (FAA Exhibit 1, Item 7, Exhibit 2, p. 4).

The IG issued Report INV-19-0 on February 21, 2020 (FAA Exhibit 1, Item 7, Exhibit 2). The report provided an opinion that Timberview was in noncompliance with the 2017 Agreement. It found that Timberview failed to provide requested financial documentation to support the recalculated monthly payment that it made to Okaloosa (FAA Exhibit 1, Item 7, Exhibit 2, pp. 4-5). The Record does not show whether Timberview ever provided the requested financial documents to the IG. Nevertheless, nothing in the record indicates Okaloosa terminated Timberview's operating privileges in response to the IG Report findings. Nor did Okaloosa specifically mention the underpayments in its termination letter dated June 16, 2021, which required Timberview to cure the noncompliance and provide the requisite financial documentation (FAA Exhibit 1, Item 1 Exhibit 12).

Okaloosa further claims that Timberview underpaid its monthly gross revenue payments in June and July 2021. Okaloosa stated that it did not pursue the missing revenue because the 2017 Agreement had been terminated (FAA Exhibit 1, Item 7, p. 2). The Timberview Helicopters Operating Summary was reviewed, but it did not provide any details to substantiate this specific claim (FAA Exhibit 1, Item 7, Exhibit 1). Additionally, Okaloosa's termination letter dated June 16, 2021 did not state that any underpayments were considered outstanding issues that Timberview needed to cure (FAA Exhibit 1, Item 1, Exhibit 12).

Okaloosa further claimed that it made repeated requests of Timberview to provide certificates of insurance for its helicopter fleet at the Airport (FAA Exhibit 1, Item 1, Exhibit 12). Timberview responded in a letter dated June 24, 2021, claiming that it had promptly provided all certificates of insurance for aircraft except for helicopters not based or operating out of the Airport (FAA Exhibit 1, Item 1, Exhibit 13, p. 4). The record shows that Okaloosa received the certificates of insurance when requested (FAA Exhibit 1, Item 7, p. 2). Timberview also provided exhibits demonstrating that Okaloosa contacted the insurance broker to obtain certificates of insurance rather than Timberview itself providing them to the airport staff (FAA Exhibit 1, Item 1, Exhibit 3, p. 2).

The Director notes that Timberview has a responsibility to understand and adhere to reasonable business practices established by the airport sponsor. This includes, but is not limited to, reading and understanding agreements before entering into them, negotiating agreements in a timely manner, understanding and complying with the Airport's minimum standards, and cooperating with requests from the airport management. (*See Gina Michelle Moore, individually, and d/b/a Warbird Sky Ventures*, *Inc. v. Sumner County Regional Airport Authority*, FAA Docket No. 16-07-16, Director's Determination, p. 38 (February 27, 2009)).

An airport sponsor can restrict aeronautical access on a reasonable basis. The failure to pay rent or to provide proof-of-insurance seem like substantial bases to the agreements. (*See SeaSands Air Transport, Inc.* v. *Huntsville-Madison County Airport Authority*, FAA Docket No. 16-05-17, Director's Determination (Aug. 28, 2006)). It is not imprudent for a sponsor to require resolution of outstanding financial matters prior to entering into additional financial arrangements with the same airport tenant. (*See Jimsair Aviation Services, Inc.*, v. *San Diego County Regional Airport Authority*, FAA Docket No. 16-06-8, Director's Determination, (April 12, 2007).

Grant Assurance 22(a) provides that an airport sponsor:

> will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

The record reflects that Okaloosa reasonably questioned whether Timberview was complying with the terms of the 2017 Agreement. However, the record does not show that during negotiations of the Draft Agreement – or written into the Draft Agreement itself – that Okaloosa specifically required Timberview to submit reasonable accounting documentation to support its past adjusted gross revenue payment identified in the IG Report, or for the alleged gross revenue underpayments in June or July 2021. Nor did Okaloosa provide a default notice that Timberview was held in violation with the terms of the 2017 Agreement. However, the insurance certificate requirement was resolved in the Draft Agreement. Furthermore, the Record clearly shows that Okaloosa allowed other tenants who were in noncompliance not to meet airport requirements while requiring Timberview to adhere to different practices and standards (FAA Exhibit 1, Item 7, Exhibit 4, p. 756).

The Director expects Okaloosa County to treat similarly situated tenants in similar circumstances in a fair and reasonable manner. However, the Board failed to do so when it failed to enforce the terms of its agreements with other similarly situated airport tenants while not approving the Draft Agreement. Consequently, Okaloosa's own actions support a finding that the sponsor is unreasonably discriminating against Timberview.

## 2.      Sub-Issue 2 - Flight Safety

As noted in Sub-Issue 1, Okaloosa has acknowledged the authority of the FAA to determine matters in the context of aviation safety and navigable airspace. However, the record also shows Okaloosa has exercised authority that it does not possess to deal with Timberview's operations. The Chronological History additionally shows Okaloosa received citizen reports on alleged low

flight incidents occurring outside of the Airport, including aircraft that Timberview does not fly (FAA Exhibit 1, Item 9, Exhibit 8, Item 13, and FAA Exhibit 1, Item 9, Exhibit 8, Item 14). Okaloosa also submitted a newspaper article concerning three helicopter landings at Blue Mountain Beach by an unknown operator (FAA Exhibit 1, Item 9, Exhibit 4). Furthermore, airport staff conducted an investigation into a hard landing by a helicopter at the private heliport, which is not owned or operated by Okaloosa (FAA Exhibit 1, Item 9, Exhibit 8, Item 24).

In addition, although the Okaloosa County Board did not vote to approve the Draft Agreement, the Director is concerned about several contractual provisions that Okaloosa proposed, including flight requirements. For example, Section 2. Flight Procedures, states:

> Operator and the County acknowledge that the Federal Aviation Administration ("FAA") is conducting a comprehensive review of helicopter operations in the vicinity of the Airport. That review is expected to result in new routes for helicopter tours and/or procedures for air traffic control and helicopter tour operators regarding air tour operations in the vicinity of the Airport. It is an express condition of the Agreement that Operator comply with any such routes, guidance, or direction and any Letter of Agreement or other document memorializing such routes, guidance, or direction. When authorized to deviate from such patterns, routes, altitudes, and procedures, Operator shall do so in a manner to avoid low altitude flight over homes, resorts, and beaches to the extent consistent with safety and instructions from air traffic control personnel.

Section 2 also states:

> Operator shall conduct tour operations during FAA defined Daylight hours beginning no earlier than 10:00 am local time and ending at FAA defined end of Daylight.
> (FAA Exhibit 1, Item 1, Exhibit 14, p. 2).

Additionally, Section 5: Required Reports, provides:

> Flight Data. Operator agrees to provide information regarding the location, speed, flight path, and altitude of any of its flights within 48 hours upon request by the County to the extent such data is available through Spidertracks or any replacement flight data management system that Operator may use in the future.
> (FAA Exhibit 1, Item 1, Exhibit 14, p. 3).

Okaloosa states that it "did not attempt to prescribe routes or flight procedures or otherwise displace FAA authority" and that "[t]he County took appropriate action to assure safety while the FAA completed its work. Fundamentally, the County wants to have the assurance, and to be able to assure the public, that Timberview is operating safely in light of the serious issues that have been raised and the grave risks posed by Timberview's operations." (FAA Exhibit 1, Item 6, pp. 38-39).

The FAA Southern Region, Regional Administrator, Michael C. O'Harra, sent a letter on August 19, 2021, to Destin Airport responding to Okaloosa's concerns about Timberview's alleged safety issues. Mr. O'Harra confirmed to Okaloosa that the responsible FAA Flight Standards District Office (FSDO) had assessed all Destin safety complaints within the FAA's

authority and that any findings are shared only with Timberview. Mr. O'Harra also noted that the FAA's Air Traffic Organization, Office of Aviation Safety, and Office of Airports, determined that a formal Safety Management System evaluation was not warranted at that time (FAA Exhibit 1, Item 9, Exhibit 7; FAA Exhibit 1, Item 1, Exhibit 11). Consequently, this FAA letter provides the current FAA FSDO safety assessment on Timberview.

In spite of Okaloosa's knowledge and the FAA letter concerning Timberview's safety assessment, Okaloosa negotiated operational requirements in the Draft Agreement above and beyond 14 CFR Part 91, which provides the Federal requirements for aircraft equipment and flight operations outside of the Airport. Okaloosa also required aircraft operators to adhere to canceled Letter of Agreement flight routes and times, and took pictures of a helicopter after a hard landing even though it occurred at a private helipad.

It is inappropriate for an airport sponsor or manager to negotiate or impose conditions or flight patterns beyond the Federal requirements, or to assign personnel to conduct oversight and safety evaluations despite the FAA having determined that the operator is conducting its operations in accordance with applicable Federal regulations. If the operation does not meet FAA safety standards, Okaloosa's exclusive remedy is to continue to bring that conduct to the attention of the FAA Regional Office or local FSDO, which will take the appropriate action. The record also showed no similar operational flight restrictions imposed on other similarly situated aeronautical operations or commercial operators that use DTS facilities.

Therefore, Okaloosa's actions imposing local flight operational requirements on Timberview beyond what is federally required is unreasonable. This action is in addition to the Director's findings of unreasonable access restrictions and practices identified in Sub-Issue 1. The Director further finds that Okaloosa is applying discriminatory terms and conditions in its lease terms and minimum standards against Timberview as well as unfair practices against other aeronautical users at the Airport. Therefore, the Director finds Okaloosa is in violation of Grant Assurance 22, *Economic Nondiscrimination*.

## VIII.   CONCLUSIONS AND FINDINGS

Upon consideration of the submissions, responses by the parties, the administrative record herein, applicable law and policy, and for the reasons stated above, the Director of the FAA Office Airport Compliance and Management Analysis finds and concludes:

The Respondent is not in violation of Grant Assurance 5, *Preserving Rights and Powers*; Grant Assurance 21, *Compatible Land Use*; Grant Assurance 29, *Airport Layout Plan*; or Assurance 38, *Hangar Construction*. [See Issue (1)].

The Respondent is not in violation of the Aircraft Noise and Capacity Act or Grant Assurance 1, *General Federal Requirements*.

The Respondent is not in violation of Grant Assurance 19, *Operation and Maintenance*. [See Issue (2)].

The Respondent is in violation of Grant Assurance 22, *Economic Discrimination,* for unjustly discriminating against commercial aeronautical operator Timberview by imposing unreasonable requirements not equitably applied to other similar users. This violation also is in addition to Okaloosa's unreasonable actions imposing local flight operational requirements on Timberview beyond what is federally required. Finally, Okaloosa is in violation of unreasonable access restrictions and practices that it placed on Timberview without FAA approval.

All Motions not specifically granted in this Order are denied.

## ORDER

ACCORDINGLY, it is ordered that:

1. Okaloosa County shall present a corrective action plan to this office within 30 days from the date of the Order. The plan shall explain in detail how the County intends to return the Airport to compliance with its Federal grant assurances concerning the elimination of unfair and unjust discrimination in the form of unreasonable requirements. This is in addition to Okaloosa County revoking and rescinding all unreasonable access and flight restrictions and requirements that it placed on Timberview or other users that had not been submitted or approved by the FAA.

   Pending the FAA's approval of a corrective action plan, this office will recommend to the Director, Office of Airport Planning and Programming (APP-1), to withhold approval of any applications submitted by Okaloosa County for discretionary funding for projects authorized under 49 U.S.C. § 47115.

## RIGHT OF APPEAL

This Director's Determination under FAA Docket No. 16-21-14 is an initial agency determination and does not constitute a final agency decision and order subject to judicial review under 49 U.S.C. § 46110 [See 14 CFR § 16.247(b)(2)]. A party to this proceeding adversely affected by the Director's Determination may file an appeal with the Associate Administrator within 30 days after date of service of the initial determination. If no appeal is filed within the time period specified, the Director's Determination becomes the final decision and order of the FAA without further action. A Director's Determination that becomes final because there is no administrative appeal is not judicially reviewable.  [14 CFR § 16.33.]

KEVIN WILLIS    Digitally signed by KEVIN WILLIS
Date: 2023.02.21 13:52:56 -05'00'

_____          _____
Kevin C. Willis                                           Date
Director, Office of Airport Compliance
and Management Analysis

Timberview Helicopters, Inc., Complainant,

v.

Okaloosa County, Florida, Respondent.

Docket No. 16-21-14

## INDEX OF ADMINISTRATIVE RECORD

The following items constitute the administrative record in this proceeding:

### FAA Exhibit 1

**Item 1**　　　Timberview Helicopters, Inc., filed Part 16-21-14 Complaint against Okaloosa County, FL, on October 18, 2021.

　　**Exhibit 1**　　Destin Executive Airport Layout Plan (ALP) Update Narrative Report, dated February 2019.

　　**Exhibit 2**　　Google Maps Satellite Photograph of Destin Executive Airport and community, dated 2021.

　　**Exhibit 3**　　Affidavit of Justin C. Johnson, Timberview Helicopters operator, September 10, 2021.

　　　　**Exhibit 1**　　Michael J. Schofield, Timberview attorney, letter to W. Eric Pilsk, County counsel, dated July 19, 2021, with attached documents including emails; Okaloosa County Board of Commissioners Agenda request package dated June 15, 2021; Timberview Helicopters response to request package; Termination letter of Timberview Helicopters, Inc., Operating Agreement at DTS, dated August 17, 2021

　　**Exhibit 4**　　Operating Agreement for Sightseeing Flight Operations executed between Board of County Commissioners, Okaloosa County, Florida and Timberview Helicopters, Inc., dated April 18, 2017.

　　**Exhibit 5**　　Board of County Commissioners, Okaloosa County, Florida, Minimum Standards for Full-Service Fixed Base Operations and Specialty Service Operations at Bob Sikes Airport, Destin/Ft. Walton Beach Airport, undated.

　　**Exhibit 6**　　Destin Executive Airport (DTS) and Bob Sikes Airport (CEW) Operating Policy on Aircraft Maintenance and Fueling of Personally-Owned Aircraft by Aircraft Owners and their Employees, undated.

　　**Exhibit 7**　　Hangar Lease Agreement and Ground Lease Agreement executed between Board of County Commissioners, Okaloosa County, Florida and Timberview Helicopters, Inc., dated May 1, 2016.

**Exhibit 8**    Ramp Space License Agreement executed between Lynx FBO Destin, LLC, and Timberview Helicopters, Inc., dated March 1, 2017.

**Exhibit 9**    Email from Mike Stenson, Deputy Director of Okaloosa County Airports, to Handzon.com with the subject line "F1yDTS.com" concerning changes to website and PDF attachment titled Destin Airport Noise Mitigation, dated August 26, 2014. The email also contained a compilation of other documents concerning residents' noise and safety concerns; Letter of Agreement between Air Traffic Control Tower and Timberview Helicopters dated February 22, 2019; and written emails and letters between Okaloosa County Airports and FAA Flight Standards District Office.

**Exhibit 10**    Chronological History of Timberview Issues at DTS since 2016 with pictures.

**Exhibit 11**    Michael C. O'Harra, FAA Southern Regional Administrator, letter dated August 19, 2021 to Tracy Stage, County Airports Director, addressing noise and safety concerns about Timberview Helicopter operations around the Destin area.

**Exhibit 12**    Tracy Stage, County Airports Director, letter dated June 16, 2021 to Justin Johnson, Timberview Helicopters, Inc., providing Notice of Termination of Operating Agreement with Okaloosa County Lease No. L17-0456-AP, executed April 18, 2017, effective August 16, 2021.

**Exhibit 13**    Timberview Helicopters, Inc., Composite Exhibit 13 with letters and emails between Timberview Helicopters and Okaloosa County concerning negotiating a new operating agreement, dated between June 16, 2021, and August 9, 2021.

**Exhibit 14**    Draft Operating Agreement for Commercial Flight Operations executed between Board of County Commissioners Okaloosa County, Florida to Timberview Helicopters, Inc.

**Exhibit 15**    Timberview Helicopters, Inc., Composite Exhibit 15 with board meeting agendas, transcripts, letters, and legal memorandum.

**Exhibit 16**    Timberview Helicopters, Inc., Composite Exhibit 16 with board agenda minutes and transcripts.

**Exhibit 17**    W. Eric Pilsk, Okaloosa County Airports counsel, letter dated August 17, 2021 to Michael J. Schofield, attorney for Timberview Helicopters, Inc., concerning Termination of Timberview Helicopters, Inc.'s Operating Agreement at DTS.

**Item 2**    Notice of Docketing for Timberview Helicopters Complaint as Part 16-21-14, docketed November 1, 2021.

| Item 3 | Unopposed Motion for Extension of Time to Respond to the Complaint, filed by Okaloosa County and docketed November 12, 2021. |
|---|---|
| Item 4 | Order for Extension of Time until November 30, 2021, dated and docketed November 19, 2021. |
| Item 5 | Okaloosa County Answer to the Complaint docketed November 30, 2021. |
| Item 6 | Okaloosa County Memorandum of Law in Support of Its Answer to Complaint docketed November 30, 2021. |
| Item 7 | Declaration of Allyson Oury in Support of Respondent Okaloosa County Florida's Memorandum of Law in Support of Its Answer to Complaint docketed November 30, 2021. |
| Exhibit 1 | Compilation of Timberview's monthly Operations and Total Revenue for Company and to County between January 2018 and August 2021, undated. |
| Exhibit 2 | Okaloosa County Office of Inspector General Report No. INV-19-01 issued February 21, 2020, on Timberview Helicopters Contract Compliance. |
| Exhibit 3 | Rogers Exhibit 3 Amendment of Lease L08-0326-AP M D Hangar, LLC, Hangar Lease at the Destin Executive Airport, dated August 7, 2018. |
| Exhibit 4 | Rogers Exhibit 4 Chronological History of Timberview Issues at DTS since 2016. |
| Item 8 | Declaration of Robert Chad Rogers in Support of Respondent Okaloosa County Florida's Memorandum of Law in Support of Its Answer to Complaint docketed November 30, 2021. |
| Exhibit 1 | FAA letter dated January 31, 2020, about FAA conditional approval of Airport Layout Plan. |
| Exhibit 2 | Destin Executive Airport Layout Plan dated December 2019. |
| Item 9 | Declaration of Tracy Stage in Support of Respondent Okaloosa County Florida's Memorandum of Law in Support of Its Answer to Complaint docketed November 30, 2021. |
| Exhibit 1 | Copy of City of Destin Zoning Map, dated 8/28/2021. |
| Exhibit 2 | Copy of City of Destin Land Development Code § 7.15.00 dated September 20, 2021. |
| Exhibit 3 | Richard W. Carlson, Manager, Kansas City Flight Standards District Office letter dated August 29, 2013, to Justin Johnson, President, Timberview Helicopters, concerning emergency revocation of authority to |

conduct commercial air tour operations under 14 CFR § 91.147 until corrective actions are taken by Timberview Helicopters.

**Exhibit 4**   Okaloosa County Board of Commissioners letter dated July 11, 2019, to All Bahrami, FAA Associate Administrator for Aviation Safety about safety concerns with Timberview Helicopters.

**Exhibit 5**   W. Eric Pilsk, County counsel, letter dated July 21, 2021, to Kishawn Griffin, Senior Advisor to the FAA Southern Regional Administrator, and April Rowe, Acting Technical Advisor to the FAA Southern Regional Administrator, about safety concerns with Timberview Helicopters and attached emails (some with attached pictures), videos, newspaper articles, attachments.

**Exhibit 6**   Okaloosa County August 3, 2021 Public Meeting Agenda, about Timberview Helicopter Operating Agreement.

**Exhibit 7**   FAA Regional Administrator, Southern Region, Michael C. O'Harra, letter dated September 10, 2021, to Tracy Stage, County Airports Director, about summary of virtual meeting and future action on Destin Executive Airport safety issues. Attached are news article, Timberview insurance certificates, emails (some with attached pictures).

**Exhibit 8**   Submittal email from W. Eric Pilsk, County counsel, stating the below exhibits for Tracy Stage Declaration cannot be easily attached to an email and that exhibits can be accessed using the link https://kaplankirsch.sharefile.com/d-569303e28b7f745528b68f7b46b53f290

**Item 1** Timberview Instagram, dated July 4, 2017.

**Item 2** R. Bruce, County Airports staff, sent an email to Pat Bruce, FAA inspector, dated August 2, 2017.

**Item 3** Timberview Instagram, dated June 21, 2018.

**Item 4** Timberview Instagram, dated July 4, 2018.

**Item 5** YouTube posting of Destin helicopter ride and manatee sighting, dated July 14, 2018.

**Item 6** YouTube posting of Crazy Helicopter Shoot, dated January 4, 2019.

**Item 7** Fun4 Emerald Coast Kids Instagram, dated March 30, 2019.

**Item 8** Susan Castillo Instagram, dated April 1, 2019.

**Item 9** Chip Cook, County Aviation Board Vice-Chair, email dated April 20, 2019, to Tracy Stage, Okaloosa County Airports Director, and

Pat Bruce, FAA inspector, concerning allegations concerning helicopter flights.

**Item 10** Tracey Stage, County Airports Director, email dated May 15, 2019, to Pat Bruce, FAA inspector, with attachment.

**Item 11** Attachment from Tracy Stage, County Airports Director, email dated May 15, 2019, to Pat Bruce, FAA inspector.

**Item 12** Dan Brown, US Park Service, email dated June 12, 2019, to Chip Cook and Tracy Stage, Destin Airport, forwarded US Park Service email concerning allegations of helicopter flights over US National Parks.

**Item 13** Chip Cook, County Aviation Board Vice-Chair, email dated June 14, 2019, to Pat Bruce, FAA inspector, concerning continued violations of helicopter tour operators.

**Item 14** Pat Bruce, FAA inspector, email exchange dated June 14, 2019, with Tracy Stage, County Airports Director, concerning continued violations of Helicopter Tour operators.

**Item 15** Mike Weger, President, Indian Lake Home Owners Association email with attachments dated July 26, 2019, to Pat Bruce, FAA inspector, and John Greene, FAA contractor, regarding safety inspections at Destin Airport.

**Item 16** Tracy Stage, County Airports Director, email dated August 8, 2019, to Pat Bruce, FAA inspector, Chad Rogers, and Anthony Peterson, regarding a link to a Hawaii news story on a passenger's jump from a chopper into Kaneohe Bay prompts federal probe.

**Item 17** Tracy Stage, County Airports Director, email chain dated May 25, 2020 2021, to Susan Macdonald regarding FW: Okaloosa County Violations of Governor Executive Order Number 20-91 - Destin Airport - Destin, FL.

**Item 18** Sherry Crumpler YouTube video dated October 5, 2020 regarding Timberview helicopter flight.

**Item 19** Sandra Schreck, private resident, email chain dated December 6, 2020, to Tracy Stage, County Airports Director, regarding helicopter traffic.

**Item 20** Chad Rogers, County Airports Director, email chain dated December 30, 2020, to DTS ATCT regarding Timberview Agreement - Daylight Flying Only.

**Item 21** Tracy Stage, County Airports Director, email chain with videos, dated July 1, 2021, to Susan Macdonald regarding helicopter versus parasail.

**Item 22** Tracy Stage, County Airports Director, email chain with attached email, dated May 24, 2021, to Pat Bruce, FAA inspector, regarding new message from Craig Mays, a private resident.

**Item 23** Tracy Stage, County Airports Director, email chain dated July 1, 2021, to Susan Macdonald, regarding Congressional Inquiry - Tour Helicopters.

**Item 24** Clay Perkins, FAA inspector, email chain dated June 16, 2021, to Chad Rogers, County Airports Director, regarding DTS Hard Landing complaint.

**Item 25** Tracy Stage, County Airports Director, email chain dated July 1, 2021, to Susan Macdonald, regarding FAA FSDO Attendance Request - Okaloosa County Board of County Commissioners Meeting - June 15th @8:30AM.

**Item 26** Tracy Stage, County Airports Director, email chain dated June 10, 2021, to Eric Pilsk, and others regarding Destin/Miramar Beach Helicopter Noise Complaint filed with the FAA.

**Item 27** TampaAerialMedia YouTube Video (Destin FL A Travel Guide for The Emerald Coast) dated June 20, 2021.

**Item 28** Tracy Stage, County Airports Director, email chain dated July 14, 2021, to Eric Pilsk and others, regarding FAA follow up.

**Item 29** Memorandum from Julian Eugene Cook, III - July 2021 Summary of Safety Issues with Helicopter Tour Operations.

**Item 10**    Timberview's Reply to County's Answer to Complaint, and Supplement and Case Citations, docketed December 10, 2021. Timberview counsel submittal email stated Exhibits 1 and 2 to the Reply can be accessed via the Sharefile link below at https://clarkpartingtonl.sharefile.com/d-s6b4d6ee889174bbf838754fa51aa1b4a

    **Exhibit 1**    Timberview Helicopter Operating Agreement Public Meeting PowerPoint presentation, August 3, 2021.

    **Exhibit 2**    Westlaw Legal Cases.

**Item 11**    Respondent Okaloosa County, Florida's Rebuttal in Support of Its Answer to the Complaint docketed December 20, 2021.

    **Exhibit A**    Declaration of Robert Chad Rogers in Support of Respondent Okaloosa County, Florida's Rebuttal to Complaint dated December 20, 2021.

**Item 12**   Destin Executive Airport Master Record, dated February 3, 2022.

**Item 13**   Link to FAA Airport Improvement Program Grant Assurances (2/20)
https://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-assurances-aip-2020.pdf, dated February 4, 2022.

**Item 14**   Destin Executive Airport Grant History, dated February 7, 2022.

**Item 15**   Motion to File Supplemental Material in Support of Complaint, filed by Complainant on February 22, 2022.

**Item 16**   Opposition to Complainant's Motion to File Supplemental Material in Support of Complaint, filed by Respondent and docketed March 4, 2022.

**Item 17**   https://goo.gl/maps/WMe5pbXQPNUz6jDg6, dated April 10, 2022.

**Item 18**   Link to Electronic Code of Federal Regulations, Title 14, Chapter I, Subchapter A, Part 1-Definitions and Abbreviations, dated August 2, 2021, https://www.ecfr.gov/cgi-bin/text-idx?SID=42a92f3811019a3bcab71f14144d4d92&mc=true&node=pt14.1.1&rgn=div5

**Item 19**   Notice of Extension of Time until June 17, 2022, docketed April 18, 2022.

**Item 20**   Notice of Extension of Time until August 16, 2022, docketed June 17, 2022.

**Item 21**   Court of the First Judicial Circuit in and for Okaloosa County, Florida Order Denying Plaintiff's Motion for Temporary Injunction issued July 5, 2022, filed by Respondent and docketed July 6, 2022.

**Item 22**   Timberview Helicopters' Notice of Objection to Filing of Respondent Okaloosa County, Florida's Notice of State Court Decision filed July 11, 2022, filed by Complainant and docketed July 11, 2022.

**Item 23**   Respondent Okaloosa County, Florida's Motion for Leave to File Notice of State Court Decision, docketed July 13, 2022.

**Item 24**   Notice of Extension of Time until October 18, 2022, docketed August 15, 2022.

**Item 25**   Notice of Extension of Time until December 14, 2022, docketed October 18, 2022.

**Item 26**   Notice of Extension of Time until February 10, 2023, docketed December 12, 2022.

**Item 27**   Notice of Extension of Time until March 15, 2023, docketed February 10, 2023.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2023, I caused to be emailed and/or to be placed in the Federal Express a true copy of this Director's Determination for FAA Docket No. 16-21-14 addressed to:

**For Complainant**

Clark Partington
Michael J. Schofield, Esq.
125 East lntendencia Street
Pensacola, FL  32502
mschofield@clarkpartington.com

Gary L. Evans, Esq.
George Andrew Coats, Esq.
Coats & Evans, PC
7764 Eagle Lane
Spring, TX  77379
evans@texasaviationlaw.com
coats@texasaviationlaw.com

Kimberly C. Cole
Cole & Davis, P.A.
1173 E John Sims Parkway
Niceville, FL  32578
kim@coleanddavis.com

R. Christopher Harshman, Esq.
David M. Shaby Il & Associates, APC
11949 Jefferson Blvd., Suite 104
Culver City, CA  90230
charshman@shabyandssociates.com

**For Respondent**

W. Eric Pilsk
Adam Gerchick
Kaplan Kirsch & Rockwell LLP
1634 I Street, NW, Suite 300
Washington, DC  20006
epilsk@kaplankirsch.com

Lynn Hoshihara, Esq.
Carly J. Schrader, Esq.
Gregory T. Stewart, Esq.
Nabors Giblin & Nickerson P.A.
1500 Mahan Drive Suite
Tallahassee, FL  32308
Lhoshihara@ngnlaw.com
GStewart@ngnlaw.com
CSchrader@ngnlaw.com

**Copy to:**
FAA Part 16 Airport Proceedings Docket (AGC-600)
FAA Office of Airport Management and Management Analysis (ACO-100)

_____
Natalie Curtis
Office of Airport Compliance
 and Management Analysis